**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAO SUN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CASE No.: |
| Plaintiff, | COMPLAINT |
| vs. | CLASS ACTION |
| DAQING HAN, XIAOLI YU, HONG LI, MING LI, LIAN ZHU, GUANGHUI CHENG, GUOBIN PAN, GUANGJUN LU, YUANPIN HE, MAZARS CPA LIMITED, MAZARS Scrl, WEISERMAZARS LLP, and TELESTONE TECHNOLOGIES CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Chao Sun, by his undersigned attorneys, for his Complaint against Daqing Han, Xiaoli Yu, Ming Li, Hong Li, Lian Zhu, Guanghui Cheng, Guobin Pan, Guangjun Lu, Yuanpin He, Mazars CPA Limited ("Mazars"), and Telestone Technologies Corporation ("Telestone", and collectively, the "Defendants"), alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters.

## I.  NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of all persons or entities who purchased or otherwise acquired securities of Telestone Technologies Corporation between March 31, 2010, and April 16, 2013, both dates inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Though Telestone is a Delaware corporation, its operations take place almost entirely in China. During the class period, Telestone earned more than 95% of its purported revenues from sales to China's three largest telecommunications providers – China Unicom, China Mobile, and China Telecom, popularly known as the Big 3.

3.      United States Generally Accepted Accounting Principles ("GAAP") only allow a company to recognize revenues if collectability from the customer is reasonably assured. Throughout the Class Period, both Telestone and Mazar, its auditor, represented that Telestone's financial statements were presented in accordance with GAAP. Telestone also separately stated that its policy was only to recognize revenues if collectability was reasonably assured.

4.     Telestone's purported revenues increased from $71.9 million in 2009 to $109.1 million in 2011. At the same time, its accounts receivable ballooned from $89 million to $251.5 million, or more than two years' worth of revenue.

5.     Beginning September 24, 2012, seeking an explanation for the accounts receivable, the Securities and Exchange Commission corresponded with Telestone in a series of confidential letters.

6.     In the confidential correspondence, Telestone admitted that: (a) in one of Telestone's main segments, it had only collected 0.8%, 22.9%, and 21.5%, of its 2009, 2010, and 2011 revenues, respectively; (b) Telestone's average collections period exceeds 1 year, even though payment was purportedly due upon customer's acceptance of Telestone's products or service; (c) Telestone only invoiced customers after it received payment, purportedly for tax reasons, and its China-filed tax returns claimed far less revenues than its SEC-filed financial statements; (d) it is impossible for Telestone timely to collect its receivables; (e) as of December 31, 2009, over $26.6 million of Telestone's accounts receivable were at least one year old, with the amounts increasing to $49.2 million and $66.6 million by December 31 2010 and 2011, respectively; (f) Telestone did not keep centralized records of its accounts receivable, and to obtain a purported accounting of its accounts receivable took two months' work from a ten member team.

## II.     JURSDICTION AND VENUE

7.     The claims herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b) and 78t(a))] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

8.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1331.

9.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], 28 U.S.C. § 1391(b), and 28 U.S.C. § 1391(d). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading financial and other information, occurred in substantial part in this District.

## III.    PARTIES

10.    Plaintiff Chao Sun bought Telestone stock during the class period at artificially inflated prices and was damaged thereby. His PSLRA certification is attached Exhibit 1 to this Complaint and is incorporated by reference.

11.    Telestone is an access-network solution provider serving the Chinese market. It offers homegrown access-network equipment, which includes repeaters, antennas and radio-frequency peripherals. It also offers project design, project management, installation, maintenance and other after-sales services to its customers.

12.    At all relevant times, **Defendant Daqing Han** was Telestone's CEO and the Chairman of its Board of Directors. Until May 2010, Han was also Telestone's President. Han was Telestone's founder.

13.    **Defendant Xiaoli Yu** has been Telestone's CFO since May 11, 2010.

14.    **Defendant Hong Li** ("H. Li") was Telestone's CFO until May 11, 2010.

15.    **Defendant Ming Li** ("M. Li") was a member of Telestone's Board of Directors between April 29, 2010 and December 20, 2011.

16.     **Defendant Lian** Zhu was a member of Teleston's Board of Directors from August 23, 2004 until December 20, 2011.

17.     At all relevant times, **Defendant Guanghui Cheng** was a member of Telestone's Board of Directors.

18.     **Defendant Guobin Pan** has been the president of Telestone since May 26, 2010, and has sat on its board since December 28, 2009.

19.     **Defendant Guangjun Lu** has sat on Telestone's Board since December 20, 2011.

20.     **Defendant Yuanping He** has sat on Telestone's Board since December 20, 2011.

21.     Collectively, Defendants He, Lu, Pan, Cheng, Zhu, M. Li, H. Li, Yu, and Han are the "Individual Defendants".

22.     **Defendant Mazars Scrl** ("Mazars (World)"), a Belgian partnership, is an integrated international partnership with 13,800 members led by about 750 partners. Mazars (World) is made up of various national-level entities. It is funded through contributions from its partners. Mazars (World) creates consolidated financial statements financial statements, which are approved by its Group Executive Board. Mazars (World) licenses or authorizes audit procedures or manuals or related materials, or the use of a name in connection with the provision of audit services or accounting services. Mazars (World) also has a Group Governance Council.

23.     **Defendant Mazars CPA Ltd.** ("Mazars (Hong Kong)") is a Hong Kong Mazars (World) national-level entity. A Mazars (Hong Kong) Partner sits on the Mazars

(World) Group Governance Council. Several Mazars (Hong Kong) employees are also Mazars (World) partners.

24.      **Defendant WeiserMazars LLP** ("Mazars (US)") is a Mazars (World) member firm. Seventy-four Mazars (US) partners are also partners of Mazars (World). Mazars (US) has a New Jersey office. Mazars (US) partner James Blake is a citizen of New Jersey.

25.      Collectively, Mazars (World), Mazars (Hong Kong), and Mazars (US) are the Mazars Defendants.

## IV.    DEFENDANTS' STATEMENTS.

26.      During the Class Period, Telestone purportedly earned new revenues from two sources: (a) sales of its traditional radiofrequency-based wireless products, and (b) installations of its new Wireless and Fiber-Optics Distribution System ("WFDS").

27.      The Class Period begins on March 31, 2010, with the publication of Telestone's 10-K for the year ended December 31, 2009 (the "2009 10-K"). The 2009 10-K's financial statements falsely stated that Telestone had earned revenues of $71.9 million in 2009, and that its current assets as of December 31, 2010 included accounts receivable of about $89.0 million. The 2009 10-K was signed by Defendants Han, H.Li, Chen, Zhu, Cheng, and Pan.

28.      The Mazar Defendants certified the financial statements contained in the 2009 10-K:

**Telestone Technologies Corporation**

**Report of Independent Registered Public Accounting Firm**

To the Audit Committee, Stockholders and Board of Directors
**Telestone Technologies Corporation**

6

We have audited the accompanying consolidated balance sheets of Telestone Technologies Corporation and its subsidiaries (the "Company") as of December 31, 2009 and 2008, and the related consolidated statements of operations and other comprehensive income, changes in stockholders' equity and cash flows for each of the years then ended. These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

***We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States).*** Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing auditing procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. Our audits also included examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

***In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2009 and 2008, and the results of its operations and its cash flows for each of the years then ended in conformity with accounting principles generally accepted in the United States of America.***

**Mazars CPA Limited**
*Certified Public Accountants*
Hong Kong
Date: March 31, 2010

[Bold italicized emphases added].

29.     On March 30, 2011, Telestone filed its 10-K for the year ended December 31, 2010 (the "2010 10-K"). The 2010 10-K falsely stated that Telestone's 2010 revenues were about $131.7 million, and that its current assets as of December 31, 2010 included

7

accounts receivable of about $192.4 million. The 2010 10-K was signed by Defendants

Han, Yu, M. Li, Zhu, Cheng, and Pan.

30.    The Mazar Defendants certified the financial statements contained in the

2010 10-K:

### Report of Independent Registered Public Accounting Firm

To the Board of Directors and Stockholders of
**Telestone Technologies Corporation**


We have audited the accompanying consolidated balance sheets of
Telestone Technologies Corporation and its subsidiaries (the "Company")
as of December 31, 2010 and 2009, and the related consolidated
statements of operations and other comprehensive income, changes in
stockholders' equity and cash flows for each of the years then ended.
These consolidated financial statements are the responsibility of the
Company's management. Our responsibility is to express an opinion on
these consolidated financial statements based on our audits.

*We conducted our audits in accordance with the standards of the Public
Company Accounting Oversight Board (United States).* Those standards
require that we plan and perform the audits to obtain reasonable assurance
about whether the financial statements are free of material misstatement.
The Company is not required to have, nor were we engaged to perform, an
audit of its internal control over financial reporting. Our audits included
consideration of internal control over financial reporting as a basis for
designing auditing procedures that are appropriate in the circumstances,
but not for the purpose of expressing an opinion on the effectiveness of the
Company's internal control over financial reporting. Accordingly, we
express no such opinion. Our audits also included examining, on a test
basis, evidence supporting the amounts and disclosures in the financial
statements, assessing the accounting principles used and significant
estimates made by management, as well as evaluating the overall financial
statement presentation. We believe that our audits provide a reasonable
basis for our opinion.

*In our opinion, the consolidated financial statements referred to above
present fairly, in all material respects, the financial position of the
Company as of December 31, 2010 and 2009, and the results of its
operations and its cash flows for each of the years then ended in
conformity with accounting principles generally accepted in the United
States of America.*

**/s/ Mazars CPA Limited**
*Certified Public Accountants*
Hong Kong
March 29, 2011

[Bold italicized emphases added].

31.     On March 30, 2012, Telestone filed its 10-K for the year ended December 31, 2011 (the "2011 10-K"). The 2011 10-K falsely stated that Telestone's 2011 revenues were about $109.1 million, and that its current assets as of December 31, 2010 included accounts receivable of about $251.5 million. The 2010 10-K was signed by Defendants Han, Yu, Lu, He, Cheng, and Pan.

32.     The Mazar Defendants certified the financial statements contained in the 2011 10-K:

**Report of Independent Registered Public Accounting Firm**

To the Board of Directors and Stockholders of
**Telestone Technologies Corporation**

We have audited the accompanying consolidated balance sheets of Telestone Technologies Corporation and its subsidiaries (the "Company") as of December 31, 2011 and 2010, and the related consolidated statements of operations and other comprehensive income, changes in stockholders' equity and cash flows for each of the years then ended. These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

*We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States).* Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing auditing procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we

9

express no such opinion. Our audits also included examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

*In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2011 and 2010, and the results of its operations and its cash flows for each of the years then ended in conformity with accounting principles generally accepted in the United States of America.*

**Mazars CPA Limited**
*Certified Public Accountants*
Hong Kong
March 30, 2012


## V.   DEFENDANTS' STATEMENTS WERE FALSE

33.     Each of the 10-Ks provided that

**Summary of significant accounting policies**

Revenue recognition

Net sales of equipment represent the contracted value of goods, net of value-added tax ("VAT") and returns. The Company generally recognizes product revenue when persuasive evidence of an arrangement exists, delivery occurs, equipment is received and accepted by the customer, the fee is fixed or determinable, and collectibility is probable. Service revenue is recognized when the service is performed and accepted by the customer. The Company has a policy of including handling costs incurred for finished goods, which are not significant, in the sales and marketing expenses.

34.     Similarly, GAAP permits the recognition of revenue only if the following criteria are met: (i) persuasive evidence of an arrangement exists; (ii) delivery has occurred; (iii) the vendor's fee is fixed or determinable; and (iv) collectability is probable. SEC Staff Accounting Bulletin ("SAB") No. 104. Moreover, in order for revenue to be recognized, it must be earned and realized or realizable. Concepts

Statement No. 5, *Recognition and Measurement in Financial Statements of Business Enterprises*, ¶ 83, ASC § 605-10-25-1(a).[1] Revenues are earned when the reporting entity has substantially accomplished what it must do to be entitled to the benefits represented by the revenues. *Id*. Revenues are realizable when related assets received or held are readily convertible to known amounts of cash or claims to cash. *Id*. ***If collectability is not reasonably assured, revenues should be recognized on the basis of cash received***. Concepts Statement No. 5, ¶ 84g.

35.     Telestone earned 97.1%, 98.3%, 95.4%, and 99.1% of Telestone's revenues for the years ended December 31, 2008, 2009, 2010, 2011, and 2012, respectively.

36.     For the following reasons, Telestone should not have recognized the majority of the revenues purportedly earned from contracts with the Big 3, because collectability was not reasonably assured.

a.     ***No collections from WFDS sales***: Telestone admitted in a confidential letter sent to the SEC on November 9, 2012, that as of the end of Q2 2012, Telestone had collected only a small portion of its WFDS revenues, even going back years:

|  | 2009 | 2010 | 2011 | 2012 Q1 and Q2 |
|---|---|---|---|---|
| Sales of WFDS | 1,438 | 36,665 | 29,610 | 7,374 |
| Percent of Revenues | 2.0% | 27.8% | 27.1% | 21.1% |
| WFDS Receivables Collected | 388 | 8,986 | 12,199 | 3,348 |
| Proportion of total receivable collected | 0.8% | 22.9% | 21.5% | 26.4% |

---

[1] With the issuance of FASB Statement No. 168, *The FASB Accounting Standards Codification*[TM] *and the Hierarchy of Generally Accepted Accounting Principles*, the FASB approved the Codification ("ASC") as the source of authoritative US GAAP for non-governmental entities for interim and annual periods ending after September 15, 2009. The *FASB Accounting Standards Codification*, hereinafter cited as "ASC __."

*In thousand USD

b.       ***Customers routinely disregarded their purported contractual obligations to Telestone***: In the same letter, Telestone admitted that though its contracts purportedly called for customers to pay the day the goods or services it sold or provided were accepted. Yet Telestone typically received payments more than one year after acceptance. Thus, Telestone's customers routinely ignored their contractual obligations, and collectability was not reasonably assured.

c.       ***Telestone violated PRC tax laws***: In a letter sent to the SEC on December 4, 2012, Telestone admitted that though PRC tax law required it to recognize revenues for tax purposes in the same way that it recognized them in its SEC filings, but because doing so would purportedly cause cash flow problems (having to pay taxes on "sales" from which it would not receive any funds for years, if ever), Telestone blithely invoiced customers only after they paid.

d.       ***Economic dependence on the Big 3's whims***: In a letter to the SEC sent on February 8, 2013, Telestone admitted that (a) it is "economically dependent on [the Big 3] and therefore [] ha[s] a relatively weak position in our business dealings"; that "the funds that the [Big 3] plan to invest in our joint projects may be diverted to other business projects [] prevent[ing] our trade receivables from being collected on a timely basis and also add uncertainty to the collection period."

e.       ***Overdue uncollectables***: As of December 31, 2009, over $26.6 million of Telestone's accounts receivable were at least one year old, with

12

the amounts increasing to $49.2 million and $66.6 million by December

31 2010 and 2011, respectively.

      f.      ***Chaotic accounting***: In light of Telestone's inadequate responses,

the SEC demanded that Telestone provide it with a simple schedule of

accounts receivable, by name of the customer, date of final sales contract,

amount due, contractual terms of remittance, and amounts and dates of

payments. Telestone claimed it took a dedicated ten person finance team

working two months to prepare the schedule.

**VI.    DEFENDANTS' FALSE STATEMENTS CAUSED INVESTORS' LOSSES**

      37.      Beginning in 2012, a series of corrective disclosures removed the artificial

inflation from Telestone's stock price.

      38.      On May 15, 2012, before the market opened, Telestone announced its Q1

2012 results. The press release announcing the results disclosed that accounts receivable

as of March 31, 2012 were $256.5 million and that during Q1 2012, Telestone had only

collected $12.7 million in accounts receivable. That day, Telestone's stock price fell from

$2.48 to $2.01, or 19.0%, damaging investors.

      39.      On November 19, 2012, before market open, Telestone announced its Q3

2012 results. The press release announcing the results disclosed that accounts receivable

as of September 30, 2012 were $243.9 million, and that it had collected $18.5 million

during the quarter. That day, Telestone's stock price fell from $1.62 to $1.38, or 14.8%,

damaging investors.

      40.      On April 17, 2013, Telestone announced that it would be unable to obtain

financial records from one of its wholly-owned subsidiaries. Presented with this news, the

NASDAQ halted trading in Telestone's securities. The NASDAQ later struck Telestone's listing, and its shares resumed trading on the over-the-counter market on June 3, 2013. That day, Telestone's stock price fell from its close of $0.84 on April 16, 2013, to close at $0.30, a fall of 64.2%, damaging investors.

### I. FIRST CLAIM
**Violation of Section 10(b) of
The Exchange Act and Rule 10b-5
Promulgated Thereunder Against All Defendants**

41.     Plaintiff repeat and reallege each and every allegation contained above as if fully set forth herein.

42.     During the Class Period, defendants named in this count carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Telestone's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants named in this count, and each of them, took the actions set forth herein.

43.     Defendants named in this count (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Telestone's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

44.     Defendants named in this count, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Telestone as specified herein.

45.     Defendants named in this count employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the Company's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about the Company and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

46.     Defendants named in this count had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available. Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by overstatements and misstatements of the Company's financial condition throughout the Class Period, if the Defendants named in this count did not have actual knowledge of the

misrepresentations and omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

47.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Telestone's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants named in this count, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants named in this count, but not disclosed in public statements by the Defendants named in this count during the Class Period, Plaintiff and the other members of the Class acquired Telestone common stock during the Class Period at artificially high prices, and were damaged thereby.

48.     At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Telestone's financial results, which was not disclosed by the Defendants named in this count, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Telestone's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

49.     As a direct and proximate result of the defendants named in this count's wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Telestone's securities during the Class Period.

50.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## II. SECOND CLAIM
### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants, Mazars (World), and Mazars (US)

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     Defendants named in this count acted as controlling persons of Telestone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Telestone's and/or Mazar (Hong Kong)'s operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, defendants named in this count had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading. Defendants named in this count were provided with or had unlimited access to copies of the Company reports, press releases, public filings and other statements alleged by Plaintiffs to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

17

53.    In particular, each defendant named in this count had direct and supervisory involvement in the day-to-day operations of the Company and/or Mazars (Hong Kong), and therefore is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

54.    As set forth above, the Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

55.    By virtue of their positions as controlling persons, the defendants named in this count are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

56.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including counsel fees and expert fees; and

(d)  Awarding such other and further relief as the Court may deem just and

proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: February 2, 2015                          Respectfully submitted,

                                                 **THE ROSEN LAW FIRM, P.A.**

                                                 /s/_____
                                                 Laurence M. Rosen
                                                 609 W. South Orange Avenue, Suite 2P
                                                 South Orange, NJ 07079
                                                 Telephone: (973) 313-1887
                                                 Fax: (973) 833-0399
                                                 lrosen@rosenlegal.com

                                                 Attorneys for Plaintiff