NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAO SUN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HAN, et al,<br><br>Defendants. | Civil Action No. 15-703<br><br><br>OPINION |

JOSE L. LINARES, U.S.D.J.

This matter comes before the Court upon five motions submitted by various plaintiffs to: 1) appoint lead plaintiff; and 2) appoint lead counsel. (ECF Nos. 5, 6, 7, 8, 9). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the submissions, and for the reasons stated below, the motion by Plaintiff, Bin Qu, (ECF No. 6), is **GRANTED**. Accordingly, motions by Ting Xiong, (ECF No. 5), Bruce Zurbrick, (ECF No. 7), Walter Aerts and Zhu Xi, (ECF No. 8), and Joseph Hirsch, (ECF No. 9), are **DENIED**.

## I. BACKGROUND

This is a securities fraud class action brought on behalf of all persons or entities who acquired securities of Telestone Technologies Corporation (hereinafter "Telestone") between March 31, 2010 and April 16, 2013. (Complaint, ECF No. 1, ¶1). The class seeks remedies pursuant to Sections 10 (b) and 20(a) of the Securities Exchange Act of 1934. (Id.).

1

Telestone provides wireless local-access network technologies and solutions primarily in the People's Republic of China. (Id. ¶ 11). The Complaint alleges that Telestone misrepresented that its financial statements were presented in accordance with Generally Accepted Accounting Principles ("GAAP") and that its policy was to recognize revenues only if collectability was reasonably assured. (Id. ¶ 3). The Complaint further specifies that Defendants knew or recklessly disregarded and failed to disclose that: (1) in one of the Telestone's main segments, it had only collected 0.8%, 22.9%, and 21.5%, of its 2009, 2010, and 2011 revenues, respectively; (2) the Telestone's average collections period exceeds one year, even though payments were purportedly due upon customers' acceptance of the Telestone's products or service; (3) Telestone only invoiced customers after it received payment, purportedly for tax reasons, and its China-filed tax returns claimed far less revenues than its financial statements filed with the U.S. Securities and Exchange Commission; (4) as of December 31, 2009, over $26.6 million of the Telestone's accounts receivable were at least one year old, with the amounts increasing to $49.2 million and $66.6 million by December 31, 2010 and 2011, respectively; and (5) Telestone did not keep centralized records of its accounts receivable, and to obtain a purported accounting of its accounts receivable took two months' work from a 10-member team. (Id. ¶ 6).

According to the Complaint, the market gradually learned that there may have been an issue with Telestone's revenues when its accounts receivable ballooned, which resulted in the company's stock price declining during the Class Period from $2.48 to $2.01, or 19.0%, on May 15, 2012, $1.62 to $1.38, or 14.8%, on November 19, 2012, and from $0.84 to $0.30, or 64.2%, following resumption of trading after a trading halt on June 3, 2013. (Id. ¶¶ 38-40). Plaintiffs allege that as a result of the aforementioned wrongful acts and omissions, and the precipitous decline in the market value of the Telestone's securities, Class members have suffered significant

losses and damages. Plaintiff Chao Sun therefore commenced case against Telestone on February 2, 2015. That same day, counsel for Plaintiff Sun published on *Globe Newswire* the first PSLRA notice announcing that a securities class action had been initiated against the defendants herein. (*See* Cecchi Decl., ECF No. 6 at Exhibit A).

On April 3, 2015, five motions to appoint lead plaintiff and approve lead counsel were filed by various Plaintiffs. (*See* ECF Nos. 5, 6, 7, 8, 9). Plaintiffs, Ting Xiong and Bruce Zurbrick/Zurbrick Family, each who filed the aforementioned motions, each filed notices which withdrew their respective Motions, (ECF Nos. 5, 7), and supported the appointment of Bin Qu as lead plaintiff. (Notice, ECF No. 10; Notice, ECF No. 13). Plaintiffs, Walter Aerts and Zhu Xi opposed Plaintiff, Bin Qu's Motion and argued that they in fact should be appointed lead plaintiffs (as they claim to be the presumptive lead plaintiffs) and thus their motion, (ECF No. 8), should be granted. The final moving Plaintiff, Joseph Hirsh, neither supported nor opposed any co-pending motion. In sum, the issue left for this Court is whether Bin Qu, or, Walter Aerts and Zhu Xi should serve as lead plaintiff(s).

## II. LEGAL STANDARD

The Private Securities Litigation Reform Act (hereinafter "PSLRA") sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the latter of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii). The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). In deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Hoxworth v. Blinder,Robinson & Co.*, 980 F.2d 912, 924 (3d Cir. 1992); *see also In re Nice Sys. Secs. Litig.*, 188 F.R.D. 206, 217 (D.N.J. 1999). The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. 15 U.S.C. §78u-4(a)(3)(B)(v).

### III. DISCUSSION

#### A. Largest Financial Interest

The Court first notes that it is unclear how Aerts and Xi arrived at their purported losses. Thus, it is unclear to the Court if they may qualify as the presumptive lead plaintiff(s). On the other hand, Qu clearly explains the methodology used to arrive at his losses figure, which utilized a method clearly accepted by the Third Circuit. (Brief, ECF No. 12 at 2-5). Notably, two plaintiffs who withdrew their motions for appoint as lead plaintiff, now support Qu, not Aerts and Xi. The determination of which candidate has the largest loss is by far the most important factor in determining who should be the lead plaintiff. *See Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605, 2000 U.S. Dist. LEXIS 16712, at *14 (D.N.J. Nov. 16, 2000). The presumptive lead plaintiff must be appointed unless it is proven that the movant will not satisfy the typicality and adequacy requirements of Rule 23. It is undisputed that, apart from Walter Aerts

and Zhu Xi combined, or Bin Qu, none of the other Plaintiffs have suffered the greatest loss in connection with the alleged fraud. It is also undisputed that Bin Qu suffered a greater loss than Walter Aerts individually, and Zhu Xi individually. Thus, the pointed issues before this Court are whether Walter Aerts and Zhu Xi may aggregate their losses to possibly qualify as the presumptive lead plaintiffs and whether this presumption is successfully rebutted. For the reasons that follow, the Court will appoint Bin Qu as lead Plaintiff.

**B. Adequacy and Typicality**

As indicated, of the four requirements for class certification under Rule 23(a), only two – typicality and adequacy of representation – directly address whether a lead plaintiff movant is the "most adequate plaintiff." *See Blake Partners, Inc. v. Orbcomm, Inc.*, No. CIV.A. 07-4517 (WHW), 2008 WL 2277117, at *6 (D.N.J. June 2, 2008). Rule 23(a)(4)'s requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999). "The Third Circuit explained that when assessing the adequacy of representation, courts should consider whether the proposed lead plaintiff has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Id.* (quoting *In re Cendant Corp.*, 264 F.3d at 265) (internal citation omitted). Qu easily meets the adequacy requirements. Here, Bin Qu has retained counsel with the resources, experience and expertise to efficiently and effectively prosecute this action, and his significant financial losses demonstrate that he has sufficient incentive to ensure vigorous advocacy. (*See* Cecchi Decl., Exhs. D-E).

As it relates to Aerts and Xi, the Third Circuit has explicitly rejected the conclusion reached by other courts that the PSLRA "invariably precludes a group of 'unrelated individuals' from serving as a lead plaintiff." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). However, in assessing whether a group satisfies the adequacy prong of the Rule 23 analysis, the Third Circuit incorporates an extra step in the process. That is, a court must determine whether "the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff." *Id.* Essentially, the Third Circuit disapproves of groups that are created by counsel in an effort to satisfy the largest financial loss requirement. If the court concludes that the group was created by counsel rather than class members, then "the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id.*

Even assuming *arguendo* that Walter Aerts and Zhu Xi were the presumptive lead plaintiffs, this Court cannot find that they would adequately represent the Class. Walter Aerts and Zhu Xi seek to "serve as a small, cohesive group for the purpose of overseeing the prosecution of the class action." (Brief, ECF No. 11 at 5). Each have submitted Declarations to this effect, which also purport that Aerts and Xi are aware of their responsibilities as lead plaintiff and are willing to fulfill them. (*See* ECF No. 8-6). However, Aerts and Xi do not provide any evidence that they can work cohesively as a group or why they should be permitted to. It is not apparent from the Declarations submitted that Aerts and Xi even know each other.

Among the factors to consider in determining whether the movant will "fairly and adequately" represent the interests of the class are: (i) whether the individuals in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group

6

is too large to adequately represent the Class. *In re Cendant Corp. Litig.*, 264 F.3d at 266–67. As an example, the Third Circuit explained that if a movant "group" was created by the efforts of lawyers for the purpose of ensuring that it is named lead counsel, the "group" should not be named lead plaintiff. *Id.* (*citing In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 308 (S.D.N.Y.2001) (holding that to allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation and would defeat the purpose of the Reform Act)). Of primary concern to this Court is the fact that without aggregation of Aerts' and Xi's losses (the figures calculated according to their own methodology), Xi would have suffered less losses than Qu and would be removed from qualification as the presumptive lead plaintiff. As to the first two prongs, the Declarations[1] submitted by Aerts and Xi fail to indicate a pre-existing relationship (and therefore the extent of that relationship). The final prong works in Aerts' and Xi's favor as there is just two of them, a small number of potential lead plaintiffs.

But the third prong of the factors above, namely, whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, is one this Court takes issue with. Indeed, Qu submitted substantial briefing in an effort to rebut the possible presumption that Aerts and Xi were the presumptive lead plaintiffs and specifically raised the issue of an attorney-

---

[1] Further, to sustain a group of proposed lead plaintiffs, courts have established protocols to insure that the group will be effective. Such protocols include requiring declarations or affidavits to demonstrate that the proposed lead plaintiffs can work effectively as a group. *See Local 144 Nursing Home Pension Fund v. Honeywell Int'l Inc.*, No. 00–3605, 2000 U.S. Dist. LEXIS 16712, at *13, 2000 WL 33173017, at *4–5 (D.N.J. Nov. 16, 2000) (appointing as lead plaintiff a group of five investors who submitted declarations describing past and continuing meetings between them and their counsel, and their involvement in the litigation so far); *In re Lernout & Hauspie Sec. Litig.*, 138 F.Supp.2d 39, 45 (D.Mass.2001)(appointing three lead plaintiffs where group submitted affidavits to show their ability to work together effectively). Aerts' Declaration does not mention any contact between him and Xi at all.

7

fabricated group. This point went unanswered by Aerts and Xi. The Court is mindful that once a presumptive lead plaintiff has been identified, the presumption can be rebutted if "the presumptively most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Third Circuit has emphasized that "only class members may seek to rebut the presumption, and the court should not permit or consider any arguments by defendants or non-class members." *Cendant,* 264 F.3d at 268. Additionally, "once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair [ ] and adequate [ ]' job." *Id.* (emphasis in original). Plaintiff, Bin Qu has, in this Court's view, successfully rebutted just the mere the possibility of this presumption.[2] Based upon their Declarations, this Court is constrained to find that Aerts and Xi cannot work effectively to adequately represent the interests of the class as they appear to concede that the only pre-existing relationship among them is the fact that they invested in the same Telestone securities. Further, it appears that these unrelated individuals amalgamated together for the sole purpose of obtaining lead plaintiff status. The extent of the pre-existing relationship is therefore minimal and it does not appear that there is a sufficient connection to bind them together as a unit. Also, although Aerts and Xi submitted a Declaration acknowledging the duty to represent the class, there is no evidence to suggest that they have the background or investment experience to effectively monitor the litigation.

---

[2] Bin Qu also opposes Walter Aerts and Zhu Xi's calculations of losses, an argument which need not be addressed.

In the same vein perhaps, each of the plaintiffs who withdrew their motions for lead plaintiff appointment, support Qu as lead plaintiff, not Aerts and Xi. This Court finds Bin Qu to be the presumptive lead Plaintiff and further finds he will adequately represent the interests of the class. Qu also purports claims typical of the Class. A proposed lead plaintiff's claims are typical of the class when the proposed lead plaintiff's claims and injuries arise from the same event or course of conduct that gave rise to the claims of the other class members and are premised on the same legal theory. *In re Party City Sec. Litig.*, 189 F.R.D. 91, 107 n.13 (D.N.J. 1999). The Rule 23(a)(3) typicality requirement "is to ensure that 'maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). Here, Qu's claims are typical of the claims asserted by the putative Class because as a stockholder, like all members of the Class, he suffered financial losses as a result of his transactions in Telestone securities. Like all of the members of the Class, Qu's losses arise from defendants' alleged misrepresentations, misstatements and omissions. Accordingly, Bin Qu's claims are in all respects "typical" of the claims of the Class.

**C. Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiffs' choice of counsel unless it is "necessary to protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *In re Cendant Corp.*, 264 F.3d at 273. In the present case, Bin Qu has retained Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. and Glancy Prongay & Murray

LLP – law firms with extensive experience and substantial expertise in securities litigation – to pursue this litigation on his behalf. Qu has represented he will retain these firms as plaintiff's co-lead counsel, as lead plaintiff. As reflected by the firms' résumés, (attached to the Cecchi Decl. as Exhs. D-E), this Court is assured that, by granting Bin Qu's motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court approves Bin Qu's selection of counsel.

## IV. CONCLUSION

For the reasons set forth above, Bin Qu's motion to appoint lead plaintiff and lead counsel, (ECF No. 6), is **GRANTED**, and the remaining Plaintiffs' motions are therefore **DENIED**. (ECF Nos. 5, 7, 8, 9). An appropriate Order accompanies this Opinion.

Date: May 14, 2015

Jose L. Linares
United States District Judge