**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO**
James E. Cecchi
John M. Agnello
Donald A. Ecklund
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150
(310) 201-9160

*Attorneys for Lead Plaintiff Bin Qu*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAO SUN, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:15-cv-00703-JLL-JAD |
|                  Plaintiff, | **LEAD PLAINTIFF'S OPPOSITION TO DEFENDANT MAZARS CPA LIMITED'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
|      v. | |
| DAQING HAN, XIAOLI YU, HONG LI, MING LI, LIAN ZHU, GUANGHUI CHENG, GUOBIN PAN, GUANGJUN LU, YUANPIN HE, MAZARS CPA LIMITED, MAZARS Scrl, WEISERMAZARS LLP, and TELESTONE TECHNOLOGIES CORPORATION, | |
|                 Defendants. | |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF RELEVANT FACTS .......................................................... 3

      A.    Background .................................................................................................. 3

      B.    Mazars CPA Is Reinstated as Telestone's Auditor Due to Its Willingness to
            Account for Receivables in the Manner Desired by the Company ...................... 4

      C.    Almost All of the Company's Purported Revenue Was Derived from Three
            Chinese State-Run Businesses .................................................................. 5

      D.    Mazars CPA Ignored Glaring Red Flags and Rubber-Stamped Telestone's
            Improper Recognition of Revenue .......................................................... 5

      E.    Mazars CPA Failed to Conduct a Sufficient Audit; Instead, It Improperly Relied
            on the Conclusions of Telestone's Management ................................... 7

III.  ARGUMENT .................................................................................................... 9

      A.    Applicable Standards for a Motion to Dismiss Do Not Favor Mazars CPA .......... 9

      B.    The Complaint Adequately Identifies Mazars CPA's False Statements .............. 11

      C.    The Complaint Adequately Alleges That Mazars CPA Made Materially False and
            Misleading Statements ............................................................................. 13

      D.    The Complaint Sufficiently Alleges That Mazars CPA Acted With Scienter ...... 15

            1.    Mazars CPA's Audit Was So Deficient as to Constitute No Audit .......... 17

            2.    GAAP and GAAS Violations Give Rise to a Strong Inference of
                  Scienter ............................................................................................ 19

            3.    Mazars CPA's Failure to Heed "Red Flags" Supports a Strong
                  Inference of Scienter ........................................................................ 20

            4.    The Magnitude of the Fraud Further Establishes Mazars CPA's
                  Scienter ............................................................................................ 23

5.      Viewed Holistically, Plaintiff's Allegations Raise a Strong Inference of
Scienter ............................................................................................... 24

E.      Plaintiff's Claims Are Timely as They Are Not Barred by the Statute of
Limitations ..................................................................................................... 24

IV.   CONCLUSION.......................................................................................................... 29

# TABLE OF AUTHORITIES

Cases

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
   Civ. No. 03-1519, 2012 WL 1680097 (D.N.J. 2012)................................................................ 27

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
   315 F. Supp. 2d 666 (E.D. Pa. 2004) ...................................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 10

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
   637 F.3d 169 (2d Cir. 2011) ......................................................................................... 27

*DeBenedictis v. Merrill Lynch & Co.*,
   492 F.3d 209 (3d Cir. 2007) ......................................................................................... 10

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ...................................................................................................... 24

*Ezra Charitable Trust v. Tyco Int'l, Ltd.*,
   466 F.3d 1 (1st Cir. 2006) ............................................................................................ 18

*In re Adams Golf, Inc. Sec. Litig.*,
   381 F.3d 267 (3d Cir. 2004) ......................................................................................... 15

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999) ............................................................................. 15, 16, 18

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
   741 F. Supp. 2d 511 (S.D.N.Y. 2010) .......................................................................... 20

*In re Bear Stearns Cos., Sec., Derivative, & ERISA Litig.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011)..................................................................... passim

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)........................................................................................ 16

*In re Complete Mgmt. Inc. Sec. Litig.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001) ........................................................ 17

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) .................................................................. 19

*In re Global Crossing, Ltd. Sec. Litig.*,
   322 F. Supp. 2d 319 (S.D.N.Y. 2004) ........................................................ 20

*In re Lehman Bros. Sec. & ERISA Litig.*,
   799 F. Supp. 2d 258 (S.D.N.Y. 2011) ........................................................ 14

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   910 F. Supp. 2d 561 (S.D.N.Y. 2012) ........................................................ 22

*In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*,
   MDL No. 1658 (SRC), 2011 WL 3444199 (D.N.J. 2011) ............................ 25

*In re MicroStrategy Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000) .................................................... 19, 23

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) ........................................................ 21

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ............................................................... 13, 14

*In re Royal Dutch/Shell Transport Sec. Litig.*,
   380 F. Supp. 2d 509 (D.N.J. 2005) ........................................................... 24

*In re Scottish Re Grp. Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007) .................................................... 16-17

*In re Stonepath Grp., Inc. Sec. Litig.*,
   397 F. Supp. 2d 575 (E.D. Pa. 2005) ........................................................ 18

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ............................................................... 13, 22

*In re The Baan Co. Sec. Litig.*,
   103 F. Supp. 2d 1 (D.D.C. 2000) .............................................................. 19

*In re the Leslie Fay Cos., Inc. Sec. Litig.*,
   835 F. Supp. 167 (S.D.N.Y. 1993) ........................................................... 23

*In re Vecco Instruments, Inc., Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006)...................................................................... 18, 19

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)............................................................................. 16

*Langford v. City of Atl. City*,
    235 F.3d 845 (3d Cir. 2000)............................................................................. 10

*Lapin v. Goldman Sachs Group, Inc.*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006)............................................................. 26

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005)........................................................................ 25, 26

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009)........................................................................... 16

*Matrixx Initiatives, Inc. v. Siracusano*,
    131 S. Ct. 1309 (2011)...........................................................................9-10, 15

*McCabe v. Ernst & Young, LLP*,
    494 F.3d 418 (3rd Cir. 2007)........................................................................... 25

*McLean v. Alexander*,
    599 F.2d 1190 (3d Cir. 1979)........................................................................... 23

*Merck & Co., Inc. v. Reynolds*,
    559 U.S. 633 (2010)..................................................................................... 26, 27

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
    487 F. App'x. 636 (2d Cir. 2012) .................................................................... 22

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
    79 F. Supp. 2d 494 (D.N.J. 2000) ................................................................... 13

*New Mexico State Inv. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011)......................................................................... 18

*Newman v. Warnaco Grp., Inc.*,
    335 F.3d 187 (2d Cir 2003)............................................................................. 26

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)............................................................................ 17

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ........................................................ 10

*Poling v. K. Hovnanian Enters.*,
    99 F. Supp. 2d 502 (D.N.J. 2000) ............................................... 13

*Rehm v. Eagle Fin. Corp.*,
    954 F. Supp. 1246 (N.D. Ill. 1997) ............................................. 23

*S.E.C. v. KPMG LLP*,
    412 F. Supp. 2d 349 (S.D.N.Y. 2006) .................................. 17, 23

*Shapiro v. UJB Fin. Corp.*,
    964 F.2d 272 (3d Cir. 1992) ......................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................... 10, 16, 24

*U.S. v. Arthur Young & Co.*,
    465 U.S. 805 (1984) ..................................................................... 17

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007) ......................................................... 10

Statutes

15 U.S.C. § 78u-4(b) .......................................................................... 10

15 U.S.C. § 78u-4(b)(4) ...................................................................... 24

28 U.S.C. § 1658(b) ..................................................................... 26, 27

Rules

Fed. R. Civ. P. 15(a)(2) ...................................................................... 29

Fed. R. Civ. P. 9(b) .................................................................... 10, 13

Lead Plaintiff Bin Qu ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Mazars CPA Limited's ("Mazars CPA") Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 29; the "Motion")[1].  The Motion seeks dismissal of the Amended Class Action Complaint for Violations of the Federal Securities Laws and Demand for Jury Trial (Dkt. No. 28; the "Complaint").[2]  For the reasons stated herein, Mazars CPA's motion should be denied in its entirety.

## I.     INTRODUCTION

This case is quite straightforward: Defendants[3] engaged in securities fraud between March 31, 2010 and April 16, 2013, inclusive (the "Class Period"), by issuing inflated financial results containing revenues that should have never been recognized.

Telestone represented to the public dramatic revenue from sales of its products in the People's Republic of China ("China"), while in reality, payment on these products was not reasonably assured, in part because Telestone had no recourse for its customers' failure to pay for the goods and services provided by Telestone.  Immediately recognizing revenue upon delivery of its goods and services, despite knowing that payment was not reasonably assured, clearly violated the Generally Accepted Accounting Principles ("GAAP"), Securities and Exchange Commission ("SEC") accounting guidelines, and Telestone's own stated revenue recognition policy.  Not surprisingly, the SEC ultimately determined that the Company needed to announce that certain of its previously issued financial statements should no longer be relied on, and required Telestone to amend these financial statements.

---

[1] Mazars CPA's Memorandum of Law in Support of Mazars CPA Limited's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 30) is referred herein as "Defs' Br."
[2] Unless otherwise indicated, "¶__" are citations to the Complaint.
[3] Defendants refer to Daqing Han, Xiaoli Yu, Hong Li, Ming Li, Lian Zhu, Guanghui Cheng, Guobin Pan, Guangjun Lu, Yuanpin He, Mazars CPA, Mazars Scrl, WeiserMazars LLP, and Telestone ("Telestone" or the "Company").

During the Class Period, Mazars CPA, the Company's independent outside auditor, repeatedly represented to the public, through its audit reports, contained in Telestone's annual reports (the "Audit Reports"), that the Company's financial results were prepared in accordance with GAAP.  Not so.  Instead, Mazars CPA failed to conduct a sufficient audit prior to issuing these reports as mandated by Generally Accepted Auditing Standards ("GAAS") and simply rubber-stamped Telestone's financial statements.

During the Class Period, glaring red flags should have placed Mazars CPA on notice that Telestone was potentially violating GAAP and improperly recognizing revenue, such as: (1) the Company had limited negotiating leverage with its customers and its Chinese governmental customers often ignored the terms of its contracts; (2) Telestone was unwilling to seek legal action against its Chinese customers to compel payment on purported debts owed to the Company; (3) Telestone only collected a fraction of the amounts owed to it; (4) the Company's Days Sales Outstanding and accounts receivables greatly increased during the Class Period; and (5) the Company admitted that it had material weaknesses and control deficiencies in its internal controls over financial reporting.  Mazars CPA, however, failed to heed – or even appreciate – these red flags.  Instead, Mazars CPA buried its head in the sand and continued rubber-stamping the Company's conclusions regarding the propriety of Telestone's revenue recognition.  In fact, even after the SEC articulated that the Company's revenue recognition was improper, and mandated that Telestone should only be accounting for revenues on the basis of cash received, Mazars CPA maintained its position that, even though customers had not paid for goods and services for, on average, four years, payment was reasonably assured.  This violates GAAP, GAAS, and simple common sense.

A proper audit would have uncovered that the Company lacked any reasonable hope of payment.  Indeed, Telestone lacked adequate records of its purported sales contracts.  Still, Mazars CPA continued to blindly and recklessly accept Telestone's representations of its financial results in clear violation of proper auditing procedures.  Therefore, Mazars CPA is liable for its false and misleading Audit Reports which certified that the Company's financial results complied with GAAP because Mazars CPA's purported audit was so recklessly deficient as to amount to no audit at all.

Not surprisingly, Mazars CPA lacks a valid defense for its reckless conduct in issuing materially false and misleading Audit Reports.  Instead, it trots outs various legal defenses that are belied by the facts and unsupported by the law.  For example, Mazars CPA claims that if a red flag was publicly disclosed, then it had no obligation to heed its warning.  This position is both illogical and unsupported by precedent as red flags put an auditor on notice that it has to conduct a more thorough audit, not less as Mazars CPA seems to believe.  Similarly, Mazars CPA argues that even though it failed to conduct a sufficient audit, it is not liable because it "believed" the Company's representations.   This position demonstrates a fundamental misunderstanding of its requirements and obligations as a purported independent auditor.

For the reasons set forth herein, Mazars CPA's Motion should be denied in its entirety

## II.     STATEMENT OF RELEVANT FACTS

### A.     Background

Telestone, which purports to be a leading access-network solution provider for communication networks in China, entered the U.S. capital markets via a reverse merger during the summer of 2004.   ¶¶37, 40.   According to the Company, Telestone provides electronic equipment used to provide access-network solutions to its customers.  Many of these types of

3

equipment, including WFDS™ (Wireless Fiber Distribution System) products, RFPA products, passive components and base station antenna for 2G, 3G, Broadband access and CATV (cable television) networks, are highly specialized active microwave components designed to meet the needs of its customers.  ¶38.  In addition to designing and selling products, Telestone claims that it also provides system integration services for its customers.  The primary system integration services provided are project design and engineering, specifically, the development and design of indoor (living quarters, hospital systems, and hotels) and outdoor (expressways, railways and no coverage zones) wireless signal complementary coverage solutions and their applied products. This includes the design of the required equipment, implementation, and project quality evaluation, as well as after-sale maintenance and optimization for system integration products, constructive products for engineering design projects, and wireless network optimization products.  ¶39.

### B. Mazars CPA Is Reinstated as Telestone's Auditor Due to Its Willingness to Account for Receivables in the Manner Desired by the Company

Telestone entered U.S. capital markets via a reverse merger during the summer of 2004. ¶40.  Soon thereafter, during the Company's 2007 fiscal year, the Company engaged Mazars CPA as its independent registered accounting firm.[4]  Since that time, Mazars CPA has served as the Company's independent auditor except for a six-month period from July 9, 2009 until January 14, 2010, when the Company hired the QC CPA Group, LLC to serve in this role. ¶150.  As the Company explained, Telestone switched back to Mazars CPA because:

---

[4] Defendant Mazars Scrl, a Belgian partnership, is an integrated international partnership with 13,800 members led by about 750 partners and is made up of various national-level entities. Defendant Mazars Scrl licenses or authorizes audit procedures or manuals or related materials, or the use of a name in connection with the provision of audit services or accounting services.  ¶32. Mazars CPA is the national-level entity for Hong Kong.  *Id.*

…we found out that this new auditor [QC CPA Group] was not as familiar with our business and changes some of our ordinaries receivables as long term ones.

Due to our high comfort level with our last time auditor, we switched back to Mazars and has been working to our traditional approved method of reporting receivables.

¶150.   Following Mazars CPA's reinstatement, Mazars CPA immediately began to sign-off on the Company's accounting approach to receivables; the same accounting approach with which the QC CPA Group had been so uncomfortable.

### C.   Almost All of the Company's Purported Revenue Was Derived from Three Chinese State-Run Businesses

The telecommunications industry in China is dominated by three state-run businesses: China Telecom, China Unicom, and China Mobile (together, the "Big 3").  During the Class Period, almost all of the Company's purported revenue was derived from its business with the Big 3.  Telestone earned 97.1%, 98.3%, 95.4%, and 99.1% of its revenues from the Big 3 for the years ended December 31, 2008, 2009, 2010 and 2011, respectively. As of the nine months ended September 30, 2012, 84.3% of Telestone's revenues were from transactions with the Big 3.  ¶153.

### D.   Mazars CPA Ignored Glaring Red Flags and Rubber-Stamped Telestone's Improper Recognition of Revenue

Telestone's practice throughout the Class Period was to immediately recognize revenue upon the delivery of goods and services to the Big 3.  Due to the Big 3's industry dominance and the fact that they are state-run, Telestone has admittedly limited negotiating leverage with these key clients in the bidding process.  This lack of leverage resulted in the Big 3 routinely ignoring the terms of their purported contracts.  ¶70.  For example, Telestone has admitted that its Big 3 customers have their own payment processes that are different from the terms of the contract. ¶71.  For example, according to the Company, "once a contract is signed, we receive 60-70% of

our receivables within 4 to 9 months and another 20-30% in 9 to 12 months, … based upon the terms as stipulated in our contracts."  However, in spite of these purported contracts, after 2009 Telestone only collected approximately 14% to 16% of its billed and outstanding gross trade receivables each year.  ¶74.  This demonstrates that there was not an agreement between Telestone and its Big 3 customers on the terms of the contract.

As a result of this non-payment and Telestone's failure to have its clients abide by the purported contract terms, the Company's Days Sales Outstanding ("DSOs") and accounts receivable drastically increased during the Class Period.  ¶¶79-80.[5]  While these metrics ballooned during the Class Period, Telestone admitted that it was unwilling and unable to bring legal action against these companies to compel payment.  Since the Big 3 were not honoring the terms of the contracts as to when payments were to be made, Telestone was granting its customers a payment concession.  ¶75.  Additionally, the significant increase in Telestone's accounts receivable and DSOs during 2011 and 2012 was indicative of deterioration in the Big 3's ability/willingness to pay.  ¶79

In order to recognize revenue, fundamental Generally Accepted Accounting Practices regarding the recognition of revenue,[6] as well as the Company's stated revenue recognition policy, require "persuasive evidence of an arrangement," "the seller's price to the buyer is fixed or determinable," and "collectability is reasonably assured."  As such, Telestone's recognition of revenue on these transactions with the Big 3 was a clear GAAP violation.  ¶¶63-92.  In spite of these clear violations (and others), which eventually brought about significant SEC scrutiny, the

---

[5] For example, the Company's accounts receivable more than doubled from $89 million in 2009 to more than $192 million in 2010.  Additionally, the Company's DSO, which was always more than a year, increased to 690 days in 2011, and more than 1200 days for the first two quarters of 2012.  ¶¶79-80.

[6] Staff Accounting Bulletin No. 101 ("SAB 101"), as amended by Staff Accounting Bulletin No. 104 ("SAB 104").

SEC's finding that the Company should restate its historical financial results and file an Item 4.02 Form 8-K regarding non-reliance on previously-issued financial statements and the Company's delisting, Mazars CPA rubber-stamped the Company's financial results year-after-year without conducting a proper audit that would have uncovered this fraud.

### E. Mazars CPA Failed to Conduct a Sufficient Audit; Instead, It Improperly Relied on the Conclusions of Telestone's Management

Mazars CPA attempts to use the fact that it was consistent in its continued support of Telestone's improper accounting practices as a defense against its own recklessness. However, an auditor cannot use the fact that it continued to bury its head in the sand by accepting a company's representations as a legitimate defense for its own misconduct. An auditor's audits must be reasonable, and Mazars CPA's were not.

As the Complaint outlines, under applicable guidelines auditors are required to "assess audit risk and materiality . . . in determining the nature, timing and extent of audit procedures and in evaluating the results of those procedures" and "the auditor should specifically assess the risk of material misstatement of the financial statements due to fraud." ¶130. Thereafter, if the auditor concludes that there is a heightened risk of material misstatement due to fraud or otherwise, he must take whatever steps are necessary to assure himself that the financial statements are not materially misleading. *Id.* Here, there were substantial risks of material misstatements in the Company's financial statements that Mazars CPA chose to ignore, including that the Company was paid on a very small percentage of its purported sales, that the Company's DSOs and accounts receivables were greatly increasing, that the Company's purported sales were to state-run companies that Telestone had admittedly no recourse in compelling payment from, and that the Big 3 were not honoring their purported sale contracts. *See, e.g.*, ¶¶10, 52, 71, 75-76, 79. While these were all facts that were known to Mazars CPA

throughout the Class Period (as Mazars CPA admits by arguing that they were not red flags since they were public, *see* Defs' Br. at 29-36), Mazars CPA did not conduct any additional research or investigation into these sales beyond accepting Telestone's financial results as true.

Moreover, as Mazars CPA points out in its memoranda, the Company's annual reports disclosed, "our management concluded that our disclosure controls and procedures were not effective due to control weaknesses and control deficiencies in our internal control over financial reporting." Defs' Br. at 22. When a company admits that it has improper internal controls, the auditor should perform a more thorough investigation to ensure the accuracy of the company's representations instead of simply relying on these representations. This is because "[t]o the extent the auditor remains in substantial doubt about any assertion of material significance, he or she must refrain from forming an opinion until he or she has obtained sufficient competent evidential matter to remove such substantial doubt or the auditor must express qualified opinion or a disclaimer of opinion." ¶135 (quoting PCAOB regulations). Here, Mazars CPA did not wait to obtain sufficient evidential support prior to issuing its unqualified opinion.

If Mazars CPA had conducted a sufficient audit, it would have quickly uncovered that Telestone was not in possession of all relevant sales contracts that formed the basis of Telestone's accounts receivable. On June 26, 2013, the SEC asked for the following information for each completed sale contract from Telestone:

- The name of the customer;
- The date the final sales contract was signed;
- The amount due under the contract and receivable from your customer upon signing of the final sales contract;
- The contractual terms of remittance (such as amounts due in 30 days, 90 days, 180 days as applicable);
- Amounts and dates of payments made per (tied to) final signed sales contract; and

8

- If there are amounts that have not been paid, please explain to us, by individual sales transaction, the reasons why on a contract by contract basis.

¶155.  Telestone did not have this information available.  Instead, the Company represented to the SEC that "Telestone has organized a 10 person finance working group since early September and spent 2 months trying to reclassify and comb approximately 25,000 existing project contracts and relevant accounting documents from more than 160 carrier customers that are distributed in 26 provinces and cities, which has resulted in huge workload. Due to the huge amount of information and time constraints involved, we are offering more detailed accounting records relevant to parts of your comment as follows, based on our best understanding of your requirements."  ¶157.  The fact that Telestone needed ten people to work two months to provide a simple chart containing the name of the customer, the date of the sales contract, the amount due, and the reason, if any, for non-payment, demonstrates that Mazars CPA had completely neglected its auditing responsibilities.  A reasonable audit of a company that was not being paid in a timely manner on its sales contracts would have requested and analyzed the sales contracts at issue.  Mazars CPA clearly never requested or reviewed this information.

## III.   ARGUMENT

### A.   Applicable Standards for a Motion to Dismiss Do Not Favor Mazars CPA

To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives,*

*Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011).[7]  These claims are subject to the pleading standards of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b), requiring allegations of fraud to be stated with particularity.  15 U.S.C. § 78u-4(b).  However, the PSLRA does not require a plaintiff to plead evidence, since on a Rule 12(b)(6) motion to dismiss, courts must accept all factual allegations in the complaint as true.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("*Tellabs I*"); *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007) (holding that on a Rule 12(b)(6) motion, courts must "'accept all factual allegations in the complaint as true.'") (quoting *Tellabs I*, 551 U.S. at 322); *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007).  Therefore, a complaint should not be dismissed if it contains sufficient factual matter that, if accepted as true, states a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In fact, the Third Circuit has explained that, even after *Twombly* and *Iqbal,* stating a claim "does not impose a probability requirement at the pleading stage," but instead "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  Thus, the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000).  This is not the insurmountable standard that Mazars CPA represents it to be.

Mazars CPA argues that the Complaint fails to properly plead material misrepresentations and scienter.  As discussed below, Mazars CPA's position is without merit,

---

[7] By not addressing the last four elements of a securities fraud claim, Mazars CPA concedes that Plaintiff has demonstrated a connection between the misrepresentation or omission and the purchase or sale of a security, reliance upon the misrepresentation or omission, economic loss, and loss causation.

and the Motion should be denied because the Complaint satisfies the applicable pleading standards.

**B.      The Complaint Adequately Identifies Mazars CPA's False Statements**

Mazars CPA claims that the Complaint fails to "identify specific statements attributable to Mazars CPA."  Defs' Br. at 14.  Mazars CPA's feigned confusion is belied by the simplicity of the allegations against it.  Plaintiff alleges that the Audit Reports issued by Mazars CPA for Telestone's 2009, 2010, and 2011 fiscal years, which were included in the Company's Annual Reports for these periods, were false and misleading.  *See* ¶¶124-28.  As the Complaint clearly shows, Mazars CPA was the entity that ***issued*** and ***signed*** each of these letters.  There is simply no dispute as to which entity issued these false and misleading reports (Mazars CPA).  The Company's 2009 Annual Report filed with the SEC on Form 10-K on March 31, 2010 contained a letter from Mazars CPA, which was signed by Mazars CPA, and stated:

**Report of Independent Registered Public Accounting Firm**

To the Audit Committee, Stockholders and Board of Directors
**Telestone Technologies Corporation**

We have audited the accompanying consolidated balance sheets of Telestone Technologies Corporation and its subsidiaries (the "Company") as of December 31, 2009 and 2008, and the related consolidated statements of operations and other comprehensive income, changes in stockholders' equity and cash flows for each of the years then ended. These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing auditing procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial

reporting. Accordingly, we express no such opinion. Our audits also included examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2009 and 2008, and the results of its operations and its cash flows for each of the years then ended in conformity with accounting principles generally accepted in the United States of America.

**Mazars CPA Limited**
*Certified Public Accountants*
Hong Kong
Date: March 31, 2010

¶125.  Likewise, Telestone's 2010 Annual Report filed with the SEC on Form 10-K on March 30, 2011, and Telestone's 2011 Annual Report filed with the SEC on Form 10-K on March 30, 2012 contained substantially similar letters from Mazars CPA, which were both signed by Mazars CPA.  ¶¶126-27.  As the Complaint clearly explains, Plaintiff is alleging that, among others, Audit Reports included in the 2009 Form 10-K, 2010 Form 10-K, and 2011 Form 10-K were false and misleading because: (1) Mazars CPA did not conduct its audits in accordance with PCAOB standards; (2)  Telestone's consolidated financial statements did not present fairly, in all material respects, either the financial position of Telestone and subsidiaries as of December 31, 2009, December 31, 2010, or December 31, 2011 or the results of their operations and their cash flows for each of the three years in the periods ended December 31, 2009, December 31, 2010, and December 31, 2011; and (3) Telestone's financial statements were not presented in accordance with GAAP, rendering the Audit Reports not in compliance with PCAOB standards.

¶128.  Plaintiff has certainly put Mazars CPA on notice as to which of its statements Plaintiff has alleged are false.[8]

### C.   The Complaint Adequately Alleges That Mazars CPA Made Materially False and Misleading Statements

Rule 9(b) is designed to require plaintiffs to "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral or fraudulent behavior." *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000). To demonstrate falsity with the level of particularity required under Rule 9(b), the Third Circuit requires allegations of securities fraud with all of the essential factual background that would accompany "'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)) (further citations omitted).[9]  The Complaint far exceeds this standard.

Defendant attempts to re-write the Complaint as solely limited to "group pleadings," and thus, seeks to avoid liability for its false statements and reckless conduct regarding Telestone. Defs' Br. at 2.  This strategy fails because, in reality, Plaintiff has made detailed factual allegations against Mazars CPA.  ¶¶ 124-35.  With respect to each factual statement that is alleged to be false or misleading, Plaintiff has identified who made the statement (*i.e.,* Mazars CPA), when it was made (2009-2011), and how it was disseminated to the investing public (*e.g.,*

---

[8] Furthermore, any purported confusion as to which claims and acts are alleged against Mazars CPA (as opposed to the other Mazars entities) are belied by Mazars CPA's Motion that clearly responds to the allegations against it.

[9] The Third Circuit, however, has cautioned that this pleading rule may be relaxed in certain circumstances, such as when the factual information available to the plaintiff is in the exclusive control of the defendant, and plaintiff must so allege.  *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 n.27 (D.N.J. 2000).

"clean" audits by Mazars CPA).  *See id.*  Moreover, the Complaint explains why each of these statements were false or misleading.  Specifically, the Complaint outlines that Mazars CPA's Audit Reports falsely certified that the Company's financials had been prepared in accordance with GAAP.  ¶¶124-35; *see* Sections II, D & E, *supra*.  Additionally, Mazars CPA's Audit Reports represented that Mazars CPA audited Telestone's financial reporting in accordance with the standards of the Public Company Accounting Oversight Board ("PCAOB"), which require an auditor to have a reasonable basis for its opinion and to confirm the accuracy of a company's financial statements and the effectiveness of its internal controls; while in reality, Mazars CPA simply accepted Telestone's financial results as accurate without conducting a reasonable investigation.  ¶¶124-35; *see* Sections II, D & E, *supra*;  *see also In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 304 (S.D.N.Y. 2011) (holding auditor liable under the Exchange Act where financial results were falsely certified as GAAP compliant).

As the Complaint alleges, Mazars CPA's Audit Reports were not based upon the evidence obtained during its audits or proper accounting principles but, rather, upon statements from Telestone's management.  Further, the Complaint describes the highly suspicious circumstances and indicia of fraud surrounding Telestone's financial condition, which should have triggered Mazars CPA to complete a more thorough investigation before certifying Telestone's financial results.  *See* Sections II, D & E, *supra*.  These allegations compel the conclusion that Mazars CPA recklessly issued its Auditor Reports certifying that Telestone's material misstatements of its revenues complied with GAAP.  Accordingly, Mazars CPA's Audit Reports that certified that it had acted in accordance with auditing regulations in conducting its audit and that Telestone's financial results were prepared in accordance with GAAP were false. *In re Bear Stearns Cos., Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 522 (S.D.N.Y.

2011) (finding auditor liable under Exchange Act for endorsing financial statements deemed false).

Mazars CPA is correct that a misstatement or error in a company's accounting does not necessarily mean that the company's auditor failed to perform a sufficient audit. Defs' Br. at 19-20. However, as here, the failure of an auditor to conduct a sufficient audit is a valid basis for liability.[10] Since the Complaint sufficiently alleges that Mazars CPA did not perform a sufficient audit in the face of significant known risks that called into question the accuracy of Telestone's financial results, Mazars CPA's Audit Reports were materially false and misleading.[11]

### D.     The Complaint Sufficiently Alleges That Mazars CPA Acted With Scienter

In a securities fraud action, a "plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Matrixx*, 131 S. Ct. at 1323. Defendants possess the requisite scienter under §10(b) when they act either intentionally or with deliberate recklessness. To adequately plead scienter, the Third Circuit requires plaintiffs to allege facts giving rise to a strong inference of "either reckless or conscious behavior." *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534-35 (3d Cir. 1999). "A reckless statement is one involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers

---

[10] The failure of Mazars CPA's Motion to point to any investigation or actions partaken by Mazars CPA to confirm the accuracy of Telestone's financial results speaks volumes as to the sufficiency of its audit.

[11] With good reason, Mazars CPA does not challenge the materiality of the alleged misrepresentations and omissions. This is because materiality is generally inappropriate for dismissal at the pleading stage since it is a fact-specific inquiry best left for the jury. *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 n. 11 (3d Cir. 1992), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992) ("[M]ateriality is a mixed question of law and fact, and the delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts are peculiarly for the trier of fact."); *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 274 (3d Cir. 2004) ("Materiality is ordinarily an issue left to the factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal").

or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 280 (3d Cir. 2009) (quoting *Advanta,* 180 F.3d at 535).

The inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs I*, 551 U.S. at 310, 322.  An inference of scienter is "strong" if it is "cogent and compelling" and "*at least as likely as* any plausible opposing inference." *Id.* at 324, 328 (emphasis in original).  The inference of scienter need not be more likely than a plausible opposing inference; in such an instance, the tie goes to the plaintiff. *Id.* at 324.[12]  Also "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id.* (citation omitted).   Indeed, scienter can be inferred from "circumstantial evidence." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997); *see also  accord Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (allegations of circumstantial evidence are all that is required to plead scienter).

Scienter is properly pled as to an auditor where the complaint alleges that "[t]he accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if contracted with the same facts." *In re Bear Stearns Co.*, 763 F. Supp. 2d at 510 (citing *In re*

---

[12] In fact, it is Defendant's burden to show that the Complaint's allegations give rise to an inference of innocent behavior that is ***stronger*** than the inference of deliberate or reckless misconduct.  Thus, if the inferences properly drawn from the facts alleged in the Complaint are in "equipoise," *id.* at 331 (Scalia, J., concurring), Plaintiff will have satisfied his burden to plead scienter on a Rule 12(b)(6) motion. *See id.* at 328-29.

*Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 386 (S.D.N.Y. 2007)); *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).   In essence, auditors are held liable where the "accounting practices were so deficient that the audit amounted to no audit at all."  *In re Bear Stearns*, 763 F. Supp. 2d at 511; *see also In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 334 (S.D.N.Y. 2001) ("Here, plaintiffs make the critical allegation that if Andersen were conducting any kind of audit at all, they would have seen the potential problems with the GMMS receivables and the need to investigate further.").

### 1.      Mazars CPA's Audit Was So Deficient as to Constitute No Audit

Mazars CPA argues that Plaintiff's claims must be dismissed since Mazars CPA *genuinely believed* its representations were supported by adequate information.  Defs' Br. at 26-28.  Not only is Plaintiff not required to plead or provide actual knowledge or a conscious decision by Mazars CPA to join in any fraud,[13]  but the suggestion that Mazars CPA is absolved of liability by what it "believed" ignores its duty, as an outside auditor, to attempt to ferret out the truth through the auditing process.[14]  Mazars CPA's abject failure to conduct a true audit, which would have demonstrated that its "belief" was unsupported, was highly reckless.

A defendant may not simply choose to "believe" in the most pleasant of circumstances (*i.e.*, that the representations about Telestone's revenues and accounts receivable were accurate), and "the failure to investigate further may support an inference that when the defendant

---

[13] *S.E.C. v. KPMG LLP*, 412 F. Supp. 2d 349, 378-79 (S.D.N.Y. 2006) (where audit was not supported by any reasonable basis, "the danger of misleading was so obvious that the actor must have been aware of it").

[14] *See U.S. v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984) ("By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a public responsibility transcending any employment relationship with the client. . . . [T]he independent certified public accountant cannot be content with a corporation's representations that its [financial statements] are adequate; the auditor is ethically and professionally obligated to ascertain for himself as far as possible whether the corporation's financial statements have been accurately stated.").

expressed the opinion it had no genuine belief that it had the information on which it could predicate that opinion" (*i.e.*, Mazar CPA's audits satisfied GAAP). *In re Vecco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 232 (S.D.N.Y. 2006) (citations omitted). Mazars CPA would have this Court assume that it actually performed careful audits for years and that it failed to learn of Telestone's fraud. But there is not a single fact in the Complaint – or established in any of the documents incorporated by reference in the Complaint – to support an inference that Defendant ever performed anything that could reasonably be described as an "audit." To the contrary, Mazars CPA's failure to discover what was easily discoverable, despite several years of "audits," suggests that for years Mazars CPA merely rubber-stamped what Telestone's management told it.[15] Such recklessness is present regardless of Mazars CPA's subjective "belief" about the scrutiny of its "audits" or the purported evidence on which it relied. *See generally In re Stonepath Grp., Inc. Sec. Litig.*, 397 F. Supp. 2d 575, 587 (E.D. Pa. 2005) (quoting *Advanta*, 180 F.3d at 534) ("Allowing scienter to be established through recklessness 'promotes the policy objectives of discouraging deliberate ignorance and preventing defendants from escaping liability solely because of the difficulty of proving conscious intent to commit fraud.'").

Additionally, the more likely it is that an auditor would have discovered the truth had a reasonable audit been conducted, the stronger the inference of scienter. *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011) ("*NMSIC*") (citing *Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 12 n.10 (1st Cir. 2006)). Here, if Mazars CPA had conducted a meaningful audit, it would have easily uncovered that Telestone lacked

---

[15] In fact, Mazars CPA even continued to "blindly support Telestone's position" after "the SEC had expressed extreme skepticism regarding Telestone's revenue recognition practices" and the Company's DSOs had ballooned to almost **four years**. *See, e.g.*, ¶¶9, 50, 139.

adequate back-up support in the form of its sales contracts to support its recognition of revenue. *See* ¶¶157-58.   Thus, the ease with which a fraud could have been uncovered supports an inference of scienter. *See*, *e.g., Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 685 (E.D. Pa. 2004) (claim upheld when "[t]he[] flaws were so obvious that an outside consultant identified some of them '[i]n a matter of days.'").

### 2.    GAAP and GAAS Violations Give Rise to a Strong Inference of Scienter

The simplicity or obviousness of the GAAP violations increases the probability of scienter.  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1020 (9th Cir. 2005); *In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 638 (E.D. Va. 2000) ("violations of simple rules are obvious, and an inference of scienter becomes more probable as the violations become more obvious"). The Complaint alleges that Telestone violated various accounting principles by improperly recognizing revenue.  ¶¶63-92.  The fundamental GAAP accounting rule at issue (SAB 104) here is remarkably simple: revenues cannot be recognized unless there is "persuasive evidence of an arrangement," "the seller's price to the buyer is fixed or determinable," and "collectability is reasonably assured."   ¶¶63-64.   Violations for wrongfully recognized revenue, which is "especially indicative of conscious misbehavior since such violations 'do not commonly occur inadvertently,' 'suggest[s] a conscious decision to improperly recognize revenue.'"  *In re Vecco Instruments*, 235 F.R.D. at 232.  The fact that Mazars CPA blessed Telestone's financial results, in which revenue was improperly recognized where payment was clearly not reasonably assured – a violation of one of the most basic and vital accounting principles – thus raises an inference of scienter. *In re The Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 21 (D.D.C. 2000) ("[V]iolations involving the premature or inappropriate recognition of revenue suggest a conscious choice to

recognize revenue in a manner alleged to be improper, and may therefore support a stronger inference of scienter.").

Additionally, the Complaint alleges, in detail, that by signing off on Telestone's financial results that contained clear GAAP violations, Mazars CPA violated professional accounting standards.  Moreover, the Complaint sufficiently describes how Mazars CPA's insufficient audit violated Generally Accepted Accounting Standards.  *See* ¶¶124-35.  Where there are "well-pleaded allegations that an accountant blessed financial statements that violated certain identified GAAP principles and were 'fundamentally misleading to investors,' it is inappropriate to dispose of the claims at the motion to dismiss stage."  *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 541 (S.D.N.Y. 2010) (citing *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 338-40 (S.D.N.Y. 2004)).

### 3.    Mazars CPA's Failure to Heed "Red Flags" Supports a Strong Inference of Scienter

Severe deficiencies amounting to recklessness are found where an auditor consciously disregards "red flags" that would put a reasonable auditor on notice of wrongdoing or substantially ignores GAAS.  *In re Bear Stearns*, 763 F. Supp. 2d at 511 (holding that if an auditor disregards red flags that "would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors," that will satisfy the "no audit at all" threshold).  Here, these red flags included that: (1) the Company had admitted that it had weaknesses and control deficiencies in its internal controls over financial reporting[16] (*see, e.g.*, Defs' Br. at 22); (2) Telestone had admitted that it had limited negotiating leverage with the Big 3 (*see* ¶4; Defs' Br. at 33); (3) Telestone had admitted that it was unwilling to demand

---

[16] This fact alone should have led Mazars CPA to investigate further before issuing unqualified audit opinions instead of simply relying on the word of Telestone and its executives.

payment from the Big 3 or seek legal recourse against these customers (*see, e.g.*, ¶71); (4) Telestone admitted that the enforceability of contracts in China, especially with governmental entities, is relatively uncertain (*see, e.g.*, ¶52; Defs' Br. at 34); (5) the Big 3 routinely ignored the contract terms of their purported sales agreements (*see, e.g.*, ¶¶50, 75); (6) the Company often granted payment concessions to the Big 3 (*see* ¶¶75-76); (7) the Company had abnormally long DSOs, which greatly increased during the Class Period (*see* ¶¶9, 75, 79)[17]; (8) the Company's accounts receivables greatly increased during the Class Period (*see, e.g.*, ¶80; Defs' Br. at 30)[18]; and (9) the Company consistently received payment on only a small amount of its purported sales (¶74).

Had Mazars CPA heeded these red flags, and proceeded with caution, there is no way it would have certified that Telestone's financial results complied with GAAP, particularly since Mazars CPA would have uncovered that the Company failed to maintain adequate records of its sale contracts. Moreover, red flags must be "viewed in the aggregate." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 658 (S.D.N.Y. 2007). While any one red flag might not have been

---

[17] Mazars CPA argues that the fact that Telestone's accounts receivable increased every year from 2003-2011 somehow negates the fact that the Company's unpaid receivables more than doubled from $89 million in 2009 to over $192 million in 2010 were a red flag as to the Company's revenue recognition. Defs' Br. at 29-31. This logic is faulty. The fact that the Company had historically high levels of accounts receivables should have made Mazars CPA scrutinize the Company's accounting more thoroughly, not less, especially since Telestone's accounts receivables jumped more than $100 million in a single year during the Class Period.

[18] Mazars CPA attempts to argue that the fact that the Company's DSOs were extremely high prior to the Class Period and that the "DSO figures for 2009 and 2010 were actually lower than every single DSO figure since 2004" means that "the reasonable inference from this data is that long accounts receivable turnover was a reality of Telestone's business." Defs' Br. at 30. What this argument ignores speaks volumes. In 2011, the Company's DSOs reached their highest amount ever, 690 days, which was more than 125 days greater than any period in the Company's history and 335 days greater than in 2010 (355 days for 2010 compared to 690 days for 2011). *See* Defs' Br. at 29. This certainly was a red flag that should have alerted Mazars CPA to further investigate the Company's financial results. Therefore, the most logical inference is actually that Mazars CPA purposely ignored this vital statistic and abdicated its auditing responsibilities by rubber-stamping Telestone's financial results.

sufficient to put Mazars CPA on notice, viewed in the aggregate, the proliferation of red flags alleged in the Complaint was sufficient to put even the most credulous auditor on notice.  In sum, these allegations of "red flags," coupled with the Complaint's allegations of GAAP and PCAOB violations, are sufficient to support a strong inference of scienter.  *In re Bear Stearns*, 763 F. Supp. 2d at 511.

Although Mazars CPA asserts that it is "well settled law" that publicly disclosed information cannot constitute a red flag, such an assertion is illogical, wholly without merit, and unsupported by the case law, including the case law to which Mazars CPA cites.  Defs' Br. at 3, 32.[19]  The fact that the red flags were in publicly filed documents that Mazars CPA certified demonstrates that Mazars CPA's failure to head these red flags was intentional.[20]  *See, e.g.*, *In re Suprema*, 438 F.3d at 279-81 (holding that the presence of numerous red flags, including

---

[19] In *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, a securities complaint against an independent auditor that failed to identify a company's fraudulent off-balance transfers to a wholly owned entity was dismissed because the red flags were not "so obvious that knowledge of them by the auditor [could] be presumed."  910 F. Supp. 2d 561, 568, 576-77 (S.D.N.Y. 2012).  While the red flags in *Longtop* were disclosed to the investing public, the red flags were insufficient warning signals not because they were public, but because an auditor could have reasonably concluded that the red flags were not warning signs at all, only evidence that the wholly owned entity was precisely as the company presented it to be.  *Id.* at 577.  Likewise, in *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x. 636, 640-41 (2d Cir. 2012), a securities complaint against an independent auditor that failed to identify a company's Ponzi scheme was dismissed because the auditor's ignorance of the company's red flags was not necessarily evidence that it conducted its audit recklessly.  Instead, because the red flags were plainly disclosed to the public, yet the company's fraud went undetected for more than two decades, "the most compelling inference" was that the company was proficient in "covering up [its] schemes and deceiving the SEC and other financial professionals."  In sum, although the red flags in *Longtop* and *Meridian* were public, neither case stands for the proposition that publicly disclosed information cannot constitute a red flag.

[20] Essentially, Mazars CPA is advocating a position that it had no obligation to investigate the Company's stated risks.  This runs counter to the purpose of publically traded companies being required to have independent auditors.  Moreover, if courts accepted Mazars CPA's position that any publicly disclosed fact could not be considered a red flag, then all auditors could simply escape liability by burying their heads in the sand, as Mazars CPA did here.  No courts have accepted such an illogical position.

irregularities in **_publicly filed Form 10-Ks_**, indicated that the auditors "either knew of, or willfully turned a blind eye to" the company's fraud.).

### 4.    The Magnitude of the Fraud Further Establishes Mazars CPA's Scienter

Courts have routinely held that the magnitude of the fraud can create an inference of scienter. *See, e.g.*, *In re MicroStrategy*, 115 F. Supp. 2d at 651 (finding strong inference of auditor's scienter could be inferred from magnitude and pervasiveness of MicroStrategy's GAAP violations; relative simplicity of the accounting principles violated; and importance of contracts involved); *In re the Leslie Fay Cos., Inc. Sec. Litig.*, 835 F. Supp. 167, 175 (S.D.N.Y. 1993) ("when tidal waves of accounting fraud are alleged, it may be determined that the accountant's failure to discover his client's fraud raises an inference of scienter on the face of the pleading"). It follows that the "more serious" the fraud, "the less believable are defendants' protests that they were completely unaware of [the company's] true financial status and the stronger is the inference that defendants must have known about the discrepancy." *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1256 (N.D. Ill. 1997).

From the scale and obviousness of the fraud – involving almost all of the Company's revenue and where there were substantial disclosed red flags – it can be inferred that either: (1) Mazars CPA actually knew of the fraud, in which case its Audit Reports were knowingly false; or (2) Mazars CPA did not know of the fraud, which could only happen as a result of audit procedures that were so sub-standard that the auditors would have to have known they were sub-standard. *KPMG LLP*, 412 F. Supp. 2d at 378 (quoting *McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir. 1979) ("A showing of shoddy accounting practices amounting at best to a pretended audit, or of grounds supporting a representation so flimsy as to lead to the conclusion that there was no genuine belief back of it have traditionally supported a finding of liability in

the face of repeated assertions of good faith. In such cases, the fact finder may justifiably conclude that despite those assertions the danger of misleading was so obvious that the actor must have been aware of it.").

### 5.     Viewed Holistically, Plaintiff's Allegations Raise a Strong Inference of Scienter

Mazars CPA ignores the holistic approach mandated by the Supreme Court, improperly focusing on the sufficiency of each scienter allegation standing alone.  Defs' Br. at 19-30.  *See Tellabs I*, 551 U.S. at 326.  When viewed "holistically," the inference that Mazars CPA was reckless in its audit is at least as likely as Mazars CPA's requested inference that it was reasonable in certifying Telestone's financial statements.  *Id.* at 328.  Thus, the allegations taken as a whole give rise to a strong inference of scienter.  *In re Royal Dutch/Shell Transport Sec. Litig.*, 380 F. Supp. 2d 509, 570 (D.N.J. 2005) (finding that magnitude of fraud coupled with specific GAAS and GAAP violations created strong inference of auditor's recklessness).

### E.     Plaintiff's Claims Are Timely as They Are Not Barred by the Statute of Limitations

The PLSRA requires a plaintiff to prove "that the act or omission of the defendant… caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4). Accordingly, plaintiffs must adequately allege loss causation: a causal connection between the defendant's material misrepresentation and the plaintiff's economic loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (requiring a "short and plain statement" that provides defendant "with some sort of indication of the loss and the causal connection that the plaintiff has in mind.").  This causal connection may be established by demonstrating that "a drop in the value of a security" was caused by (1) a corrective disclosure, or a series of corrective disclosures, or (2) misstated or omitted risks regarding the underlying circumstances of the

alleged fraud (*i.e.* "materialization of a concealed risk").  *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172-73, 175 (2d Cir. 2005); *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, MDL No. 1658 (SRC), 2011 WL 3444199, at *30 (D.N.J. 2011); *see also McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 429 (3rd Cir. 2007) ("'The materialization of risk approach requires plaintiffs to prove that the materialization of an undisclosed risk caused the alleged loss'… [w]e believe this approach is consistent with our loss causation jurisprudence.").   "A misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor." *Lentell*, 396 F.3d at 172-73.

Here, Telestone's concealed risks – that it was unable to enforce its contracts with the Big 3 – materialized on or about: May 15, 2012; August 14, 2012; November 19, 2012; and April 17, 2013.  ¶138.  On May 15, 2012, the Company issued a press release announcing Telestone's 2012 fiscal first quarter financial results.  ¶139.  Therein, the Company disclosed that Telestone's accounts receivable was $256.5 million, that the accounts receivable turnover period (DSOs) had increased to 1,291 days, and that during the quarter, Telestone had only collected $14 million in accounts receivable.  *Id.*  On August 14, 2012, the Company filed its Q2 2012 Form 10-Q, disclosing that Telestone's accounts receivable had further increased to $259.5 million.  ¶141. On November 19, 2012, the Company issued a press release, announcing Telestone's 2012 fiscal third quarter financial results.   Therein, the Company disclosed that Telestone's accounts receivable was $243.9 million, that DSOs were 1,232 days, and that  Telestone had only collected $18.5 million in accounts receivable during the quarter.  ¶143.  On April 17, 2013, the Company filed a Notification of Late Filing with the SEC on Form 12b-25/A, announcing that the Company was unable to obtain certain necessary financial records from its Sichuan Ruideng

subsidiary and that the Company's auditors were unable to complete the audit of the Company's consolidated financial results for the 2012 fiscal annual report.  ¶145.  The NASDAQ, subsequently, halted trading in Telestone's securities.  *Id.*  Finally, on February 19, 2014, the SEC published on the EDGAR system its correspondence with Telestone regarding the SEC's review of Telestone's financial results.  ¶60.

Although Telestone improperly recognized revenue throughout the Class Period, Mazars CPA repeatedly assured investors that Telestone's revenue recognition was in accordance with GAAP.  ¶¶125-27.  Accordingly, the full truth of Telestone's financial condition was not revealed until February 19, 2014, when the SEC published its correspondence with Telestone. ¶60.  A securities fraud complaint was, thereafter, timely filed on February 2, 2015, well within the two-year statute of limitations mandated by 28 U.S.C. § 1658(b).

A securities fraud complaint is timely if filed no more than "2 years after the discovery of the facts constituting the violation" or 5 years after the violation.  28 U.S.C. § 1658(b).  This two-year limitations period begins to run only after a plaintiff discovers, or a reasonably diligent plaintiff would have discovered, the "facts constituting the violation."  *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010).  A duty of inquiry arises if the circumstances would suggest to a reasonably diligent plaintiff that a fraud was "probable, not merely possible."  *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 193 (2d Cir 2003) (holding that significant write-downs reported in a Company's 10-K did not place plaintiffs on inquiry notice because there was no indication of any fraud that led to the write-downs).  A duty of inquiry, therefore, does not arise if warning signs of a probable fraud are accompanied by reliable words of comfort, or reassurances by the company.  *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 235-36 (S.D.N.Y. 2006).

Although "terms such as 'inquiry notice' and 'storm warnings' may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating," the limitations period does not begin to run at the point where the facts would lead a reasonably diligent plaintiff to begin investigating but, instead, only begins to run once the plaintiff discovers, or a reasonably diligent plaintiff would have discovered, "the facts constituting the violation."  *Merck*, 559 U.S. at 635, 652-53 (citing 28 U.S.C. § 1658(b)) ("…we reject 'inquiry notice' as the standard generally: We cannot reconcile it with the statute, which simply provides that 'discovery' is the event that triggers the 2-year limitations period – for all plaintiffs."); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, Civ. No. 03-1519, 2012 WL 1680097, at *5 (D.N.J. 2012) (holding that *Merck* abrogated the inquiry notice standard previously employed by the Third Circuit).  The "facts constituting the violation" are those facts that are necessary elements of a §10(b) violation, which must be adequately pled to survive a 12(b)(6) motion to dismiss.  *See City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011); *Alaska*, 2012 WL 1680097, at *6.

Although the full truth was revealed to the public on February 19, 2014, and the securities fraud claim was, thereafter, timely filed on February 2, 2015, Mazars CPA, nevertheless, asserts that the Complaint is time-barred by the two-year statute of limitations because the public "discovered" the truth over the course of the Company's announcements on: May 15, 2012; August 14, 2012; and November 19, 2012 (collectively, the "2012 Quarterly Announcements").  Defs' Br. at 39.  Although the 2012 Quarterly Announcements and the accompanying stock drops were materializations of Telestone's concealed risks, the full truth of Mazars CPA's misrepresentations regarding Telestone's compliance with GAAP was not

discovered until February 19, 2014.[21]   Mazars CPA's "evidence" to the contrary only further establishes that the underlying circumstances were concealed or misstated by Mazars CPA. Defs' Br. at 39-40.   For example, the Rosen Law Firm's press release announcing an investigation of Telestone and that law firm's subsequent decision not to file a securities fraud complaint only confirms that the public did not discover the underlying circumstances of Telestone's financial condition.  Defs' Br. at 40.  Furthermore, despite significant stock drops, plaintiff was not subject to a duty of inquiry because the stock drops, which otherwise may have acted as storm warnings, were counter-balanced with words of comfort issued by Mazars CPA. In light of the Mazars CPA's repeated assurances that Telestone's revenue recognition was in accordance with GAAP, a reasonably diligent investor would have had no reason to believe that fraud on the part of Telestone was probable, and not merely possible.

However, to the extent that the 2012 Quarterly Announcements did act as storm warnings, or otherwise placed the plaintiff on inquiry notice, neither the plaintiff, nor a reasonably diligent plaintiff, would have been capable of discovering the underlying circumstances of Telestone's financial condition.  Because Mazars CPA consistently assured the public that Telestone's revenue recognition was in accordance with GAAP, and Mazars CPA

---

[21] One could argue that April 17, 2013 was the first date that information regarding the falsity of Telestone's financial condition was revealed when the Company disclosed that it was not able to obtain certain necessary financial records needed to complete the Company's audit.  However, Mazars CPA takes the nonsensical position that the "April 17, 2013 late filing notice is entirely irrelevant to this analysis because it is not related to any of the fraud allegations in the Complaint."  Defs' Br. at 37.  Certainly, the fact that the Company was not in possession of financial records of one of its subsidiaries, demonstrating that Telestone did not have proper documentary evidence for its financial results, is relevant to Plaintiff's allegations.  Furthermore, as the Complaint alleges, this issue was not just limited to this one subsidiary, as the Company further demonstrated that it failed to maintain adequate records of its sales contracts, which supports the fact that Mazars CPA had performed an insufficient audit.   *See* ¶¶157-58. Regardless, even if the April 17, 2013 date were the appropriate start of the statute of limitations period, the Complaint was filed within two years of that date (February 2, 2015), well within the statute of limitations.

together with the Company were in the sole possession of information to the contrary, even the most diligent investor would have been unable to discover the full truth.  The statute of limitations begins to run at the point of discovery, not at the point of further investigation, and thus, any storm warnings were irrelevant.

In sum, the Complaint was timely filed within the two-year statute of limitations because (1) the underlying circumstances of Telestone's financial condition were not revealed until February 19, 2014; and (2) to the extent that the 2012 Quarterly Announcements acted as storm warnings, no reasonably diligent plaintiff could have discovered the full truth in light of Mazars CPA's own misrepresentations.

## IV.    CONCLUSION

Defendant Mazars CPA's motion to dismiss the Complaint should be denied in its entirety. If the Court dismisses any or all of the Complaint, Plaintiff respectfully requests leave to amend. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Dated:  November 17, 2015                    Respectfully submitted,

                                             CARELLA, BYRNE, CECCHI,
                                             OLSTEIN, BRODY & AGNELLO, P.C.


                                             By:  *s/ James E. Cecchi*
                                             James E. Cecchi
                                             John M. Agnello
                                             Donald A. Ecklund
                                             5 Becker Farm Road
                                             Roseland, New Jersey 07068
                                             (973) 994-1700

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

*Attorneys for Lead Plaintiff Bin Qu*