# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAO SUN, on behalf of himself and all others similarly situated, | Civil Action No. 2:15-cv-00703(JLL)(JAD) |
| Plaintiff, | **ECF Case** |
| v. | **Electronically Filed** |
| HAN, et al. | **Motion Day:** December 21, 2015 |
| Defendants. | |

# REPLY IN SUPPORT OF MAZARS CPA LIMITED'S
# MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

NORTON ROSE FULBRIGHT US LLP
Felice B. Galant
666 Fifth Avenue
New York, New York 10103
(212) 318-3000

Scott P. Drake (admitted *pro hac vice*)
Tyler H. Lipp (admitted *pro hac vice*)
2200 Ross Ave, Suite 3600
Dallas, Texas 75201
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200
scott.drake@nortonrosefulbright.com
tyler.lipp@nortonrosefulbright.com

*Attorneys for Defendant Mazars CPA Limited*

# **Table of Contents**

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................3

    I.    Plaintiff's Claim Should be Dismissed Because It Fails to Meet the Standard for Pleading Securities Fraud Against an Outside Auditor.......................................................................................................3

        A.    The Requirements for Sufficiently Pleading Scienter Against an Outside Auditor are Demanding...............................3

        B.    Mazars CPA Had a Reasonable Basis for the Treatment of the Receivables When the Auditors' Reports Were Issued. ........................................................................................5

        C.    Plaintiff's Scienter Allegations are Weakened by Virtue of Mazars CPA's Disclosures About Telestone's Internal Controls. ....................................................................................10

        D.    Plaintiff's So-Called Red Flags Cannot be Relied On as Such Since They Were Publicly Disclosed Business Risks....................................................................................................11

        E.    Plaintiff's So-Called Red Flags Cannot be Relied Upon as Such to the Extent They Occurred After the Alleged Misrepresentations. ...............................................................12

    II.    Plaintiff's Claim is Barred by the Statute of Limitations...................13

CONCLUSION.....................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re A-Power Energy Generation Sys. Sec. Litig.*,
   No. MDL 11-2302-GW(CWx), 2012 WL 1983341 (C.D. Cal. May
   31, 2012) ........................................................................................................10

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004) ...........................................................................15

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   910 F. Supp. 2d 561 (S.D.N.Y. 2012) ............................................................11

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
   487 F. App'x. 636 (2d Cir. 2012) ...................................................................11

*Nappier v. Pricewaterhouse Coopers LLP*,
   227 F. Supp. 2d 263 (D.N.J. 2002) .................................................................11

*Oaktree Capital Mgmt., L.P. v. KPMG*,
   963 F. Supp. 2d 1064 (D. Nev. 2013) ...............................................................4

*Roaring Fork Capital SBIC, L.P. v. ATC Healthcare, Inc.*,
   No. 10-CV-00338, 2011 WL 1258504 (D. Colo. Mar. 29, 2011) ..................14

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   380 F. Supp. 2d 509 (D.N.J. 2005) ..............................................................7, 8

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) .............................................................................5

*In re Vecco Instruments*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ......................................................................8

# INTRODUCTION

Plaintiff alleges securities fraud against Telestone Technologies Corporation's ("Telestone") outside auditor, Mazars CPA Limited ("Mazars CPA"), based on Telestone's recognition of revenue in its 2009, 2010, and 2011 audited financial statements. As argued in Mazars CPA's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. 30] ("Motion"), the Amended Complaint [Dkt. 28] ("Complaint" or "Compl.") should be dismissed because Plaintiff does not allege sufficient facts to support a fraud claim against Telestone, let alone meet the demanding standard for pleading outside auditor claims. Plaintiff has not alleged a fraudulent intent by Mazars CPA and instead asserts a claim based on recklessness. In support, Plaintiff alleges that nine specific red flags were present such that Mazars CPA's audit was "no audit at all." Importantly, the facts alleged by Plaintiff do not support an inference of fraud, but instead show that Telestone, and its auditor, had a reasonable basis to believe that collectability of its accounts was reasonably assured such that recognizing the revenue was appropriate under the relevant accounting standards. Notably, the Complaint and Response are devoid of any allegations regarding Mazars CPA's audit process in 2009, 2010, or 2011, and instead rely on subsequent events to support conclusory allegations of fraud.

Plaintiff alleges "numerous" and "obvious" red flags are adequate to

establish scienter while simultaneously arguing that those exact same facts are not so "numerous" and "obvious" when considered in relation to the statute of limitations. Specifically, Plaintiff alleges that Mazars CPA should have heeded the following so-called red flags, but ignores that they were all publicly known at the time or prior to the limitations period:

| **Alleged "Red Flag"** | **Date and Method of Disclosure** |
|---|---|
| Internal Control Weaknesses | 2009 10-K (3/31/2010), 2010 10-K (3/29/2011) and 2011 10-K (3/30/2012). *See* Motion at 21–22. |
| Limited Negotiating Leverage | 2010 10-K (3/29/2011) and 2011 10-K (3/30/2012). *See* Motion at 33–34. |
| Limited Legal Recourse | 2009 10-K (3/31/2010), 2010 10-K (3/29/2011) and 2011 10-K (3/30/2012). *See* Motion at 33–34. |
| Enforceability Uncertain | 2009 10-K (3/31/2010), 2010 10-K (3/29/2011) and 2011 10-K (3/30/2012). *See* Motion at 33–34. |
| Big 3 Ignored Contract Terms | 2009 10-K (3/31/2010), 2010 10-K (3/29/2011) and 2011 10-K (3/30/2012). *See* Motion at 33–34. |
| Payment Concessions | 2009 10-K (3/31/2010), 2010 10-K (3/29/2011) and 2011 10-K (3/30/2012). *See* Motion at 33–34. |
| Long DSOs | 2009 10-K (3/31/2010), 2010 10-K (3/29/2011) and 2011 10-K (3/30/2012); 2012 Form 10-Qs (5/15/2012, 8/14/2012 and 11/19/2012). *See* Motion at 29–30; Resp. at 25. |
| A/R Increase | 2009 10-K (3/31/2010), 2010 10-K (3/29/2011) and 2011 10-K (3/30/2012); 2012 Form 10-Qs (5/15/2012, 8/14/2012 and 11/19/2012). *See* Motion at 29–30; Resp. at 25. |
| Low Collections | 2012 Form 10-Qs (5/15/2012, 8/14/2012 and 11/19/2012). *See* Resp. at 25. |

With regard to loss causation, Plaintiff alleges that the allegedly concealed

risks actually materialized on May 15, 2012, August 14, 2012, November 19, 2012, and April 17, 2013. *See* Resp. at 25, Compl. ¶¶ 136–47. Given that all of the allegations that allegedly support scienter were known not just to Mazars CPA, but also to the investing public much earlier than two years prior to the filing of this case, Plaintiff's scienter and statute of limitations arguments are in conflict. If, as Plaintiff contends, the so-called red flags are sufficient to establish a §10b-5 claim, which they are not, then the claims are time barred. If, on the other hand, the publicly disclosed information did not provide a plaintiff sufficient information to file suit, then those same facts are insufficient to survive a motion to dismiss.

## ARGUMENT

### I. Plaintiff's Claim Should be Dismissed Because It Fails to Meet the Standard for Pleading Securities Fraud Against an Outside Auditor.

#### A. *The Requirements for Sufficiently Pleading Scienter Against an Outside Auditor are Demanding.*

Plaintiff does not allege that Mazars CPA intentionally engaged in fraud, so Plaintiff must plead facts sufficient to show that Mazars CPA's practices were so shoddy that they amounted to a pretend audit approximating an actual intent to aid in the fraud being perpetrated by the audited company.[1] *See* Motion at 23.

---

[1]   The Complaint does not adequately distinguish its claims as to the various Defendants, and even if Mazars CPA's Motion "clearly responds to the allegations against it," that fact does not relieve Plaintiff of his pleading burdens under Rules 12(b) and 9(b) as well as the PSLRA. *See* Motion at 14–15. Other than stating that the audit reports were issued by Mazars CPA, Plaintiff has not made any specific allegation as to Mazars CPA to distinguish it from any of the other

Plaintiff asserts that Paragraphs 124–135 of the Complaint demonstrate that "Mazars CPA simply accepted Telestone's financial results as accurate without conducting a reasonable investigation." *See* Resp. at 14. **However, the Complaint does not contain any factual details relating to the audits conducted by the outside auditors prior to the issuance of the Auditors' Reports.**[2]  Instead, the Complaint merely cites various audit and accounting standards, alleges that Telestone's financial statements contained errors, and then concludes that the alleged errors prove the Auditors' Reports were fraudulent and that Mazars CPA must have simply rubber-stamped management's conclusions without actually conducting an audit. Plaintiff offers no factual support for this far-fetched and hasty conclusion. *See, e.g. Oaktree Capital Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1089 (D. Nev. 2013) (emphasis in original) (dismissing claims and stating that "[a]bsent some additional information about the way the audits were actually performed . . . there are simply no allegations from which the court can draw a *reasonable* inference that plaintiffs have plausibly pleaded

---

defendants, including the other "Mazars Entities." Further, even if the Complaint did state a specific claim as to Mazars CPA (which it does not), it should still be dismissed because it relies on improper collective scienter. *See id.* at 15-17. Plaintiff did not address the collective scienter issue in his Response.

[2]  Plaintiff criticizes Mazars CPA for not pointing to "any investigation or actions taken by Mazars CPA." Resp. at 15, n.10. Of course, this is the pleadings stage and Mazars CPA is not required, and in fact cannot, put on evidence of its investigation. Instead, Plaintiff bears the burden of properly pleading his claims.

objective falsity with respect to [auditors'] GAAS compliance statements" and "[w]ithout knowing what [the auditors] *did*, this court finds it hard to understand how plaintiffs . . . know . . . that defendants *did not do* certain things").

Plaintiff also cites to cases suggesting that the more likely and easily discovered the fraud is, then the more likely there is a strong inference of scienter. Resp. at 18–19 (citing *Argen Classic*, where the flaws were discovered in "a matter of days."). Here, the SEC correspondence shows that the SEC did not immediately determine that Telestone's revenue recognition was improper, much less fraudulent. Instead, the SEC went back and forth with Telestone for more than a year before determining that, in its opinion, revenue should be recognized differently. *See* Motion at Ex I. There is no allegation that anyone ever quickly determined that the 2009, 2010 and 2011 10-K's were obviously flawed.

### B. *Mazars CPA Had a Reasonable Basis for the Treatment of the Receivables When the Auditors' Reports Were Issued.*

The Auditors' Reports were issued on March 31, 2010, March 29, 2011, and March 30, 2012. Accordingly, the Court should focus on whether Mazars CPA made a material false statement based on facts known as of those dates. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279 (3d Cir. 2006) (emphasis added) ("[Plaintiff] must show that [the auditor]'s judgment ***at the moment exercised*** was sufficiently egregious … .").

Plaintiff's Complaint rests on the premise that the revenue recognition

principles used by Telestone were improper and, primarily, that Telestone knew that "payment was not reasonably assured." *Compl.*, ¶¶ 129, 132; Resp. at 1.[3] Plaintiff is dismissive of arguments regarding the "beliefs" of Mazars CPA with regard to Telestone's accounting treatment, yet cites to PCAOB standards that "require an auditor to have a reasonable basis for its opinion." Resp. at 14. Plaintiff argues that Mazars CPA was reckless to such an extent rising to the level of fraud because it had no basis for the statements made in the Auditors' Reports. Plaintiff, however, completely ignores myriad factors that supported Telestone's revenue recognition in 2009, 2010, and 2011. *See* Motion at 20; Motion Ex. I at 8, 21, 22, 33, 34, 35, 38, 39, 60, and 61 (persuasive evidence of arrangement); *id.* at 8, 21, 34, 38, 39, 60, 61, and 63 (price was fixed or determinable); and *id.* at 8, 10, 19, 21, 22, 23, 24, 33, 34, 35, 38, 39, 40, 60, 61, 62, 63, 69, and 70 (collectibility was reasonably assured).

This information cannot all be repeated in detail within the page limits, but there are several key facts that supported the Auditors' Reports at the time they were issued, and the resulting inference is that Mazars CPA and Telestone had a

---

[3] Specifically, Plaintiff alleges that the revenue did not meet the standards of Staff Accounting Bulletin No. 101 ("SAB 101"), as amended by Staff Accounting Bulletin No. 104 ("SAB 104"). *Compl.*, ¶ 64. Those principles state that revenue is realized or recognized when (1) "Persuasive evidence of an arrangement exists," with the term "arrangement" meaning the final understanding between the parties as to the specific nature and terms of the agreed-upon transaction; (2) "Delivery has occurred or services have been rendered;" (3) "The seller's price to the buyer is fixed or determinable;" and (4) "Collectibility is reasonably assured." *Id.*

reasonable basis for believing that revenue recognition was proper. Specifically:

- Telestone analyzed the relevant accounting standards and provided its basis for its accounting. Motion Ex. I at 21–22, 38, 40–41, 60–63 and 69.

- Even after discussions with the SEC, Telestone's audit committee re-evaluated its revenue recognition and believed it was sound. *Id.* at 38.

- Telestone had done business with the Big 3 for approximately 15 years and had only recently experienced delays in accounts receivable, which it attributed to temporary issues with Chinese capital markets. *Id.* at 40.

- Throughout its history, Telestone always had relatively high DSOs and relatively long collection periods. Similarly, Telestone always had considerable increases in its accounts receivable. *See* Motion at 29–31.

- Mazars CPA met with Telestone's management for 4 hours in March of 2013 to evaluate the SEC's position and still concluded that Telestone's revenue recognition was appropriate. *See* Motion Ex. I at 41–42.

- Telestone did not provide discounts, refunds or adjustments after the finals sales contracts. *Id.* at 60, 61.

- Increases in Telestone's A/R occurred in 2011 and 2012 due to intensive 3G wireless network construction by its customers. *Id.* at 61.

- Actual collections increased by over 28% from 2010 to 2011. *Id.*

- Telestone's customers continued to make payments and "although they may pay late, the Big-3 carriers have historically paid all of their bills in full." *Id.* at 62–63, 69.

As set forth in the Motion, violations of GAAP, standing alone, do not support fraud against outside auditors. *See* Motion at 17–21. The cases Plaintiff relies on are easily distinguishable. Like this case, the plaintiff in *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509 (D.N.J. 2005) alleged that the auditor defendants issued misleading audit reports because the financial statements

- 7 -

allegedly violated GAAP. However, unlike this case, the *Royal Dutch / Shell* complaint alleged specific facts about the audit process. Specifically, the plaintiff alleged that the auditors had actual notice of improprieties prior to issuing the auditors' reports based on (1) their participation in a presentation in which the problematic issue was discussed; (2) their receipt of two memoranda which detailed the alleged booking improprieties; and (3) their being advised that the company's incentive compensation system could be contributing to the overbooking of reserves—all this in addition to other allegations supported by circumstantial evidence. *See id.* at 569–70. The allegations in *Royal Dutch / Shell* were far more detailed than the scant allegations here.

  Plaintiff cites *In re Vecco Instruments*, 235 F.R.D. 220, 232 (S.D.N.Y. 2006) for the blanket proposition that "[v]iolations for wrongfully recognized revenue . . . suggest[s] a conscious decision to improperly recognize revenue." Resp. at 19. However, Plaintiff omits key language from that opinion that specifically references "accounting manipulations . . . such as those alleged by plaintiffs." *See In re Vecco*, 235 F.R.D. at 232. In that case, plaintiffs specifically alleged that defendants had incentivized their employees to falsify customer sign-offs to indicate product had been delivered to customers, reversed justified accruals, and intentionally delayed mandated disclosures until subsequent quarters and to "bury" adjustments. *Id.* at 231. Here, the Complaint has no similar allegations of

deliberate or deceitful conduct.

In an attempt to fit within case law supporting his position, Plaintiff, without any evidence or documentary support, suggests that Telestone lacked sufficient sales documentation to support its accounts receivable: "If Mazars CPA had conducted a sufficient audit, it would have quickly uncovered that Telestone was not in possession of all relevant sales contracts that formed the basis of Telestone's accounts receivable." Resp. at 8. Plaintiff also argues that "Mazars CPA clearly never requested or reviewed this information." *Id.* at 9. These statements ignore the SEC correspondence and are unsupported and exaggerated conjecture.

The SEC requested a schedule of Telestone's customers and accounts receivable, and Telestone provided a lengthy table of clients and accounts receivable balances. *See* Compl., ¶ 157, Ex. I at 77–80. The full extent of the information disclosed to the SEC is unknown because portions appear to have been designated for confidential treatment. *See* Ex. I at 78–79. Telestone's response to the SEC does not show it did not have "basic information" but instead shows that it had a "huge amount of information" that took considerable time to distill down to the format requested by the SEC. *Id.* As a result, Telestone provided "***more detailed*** accounting records" to the SEC. *Id.* Plaintiff paints a picture of a company with no books or records and an auditor that did not actually audit anything, but that picture is an unsupported, baseless fiction. There is no

reasonable basis to infer that Mazars CPA never requested information from Telestone. Instead, the SEC correspondence shows that Mazars CPA had considered all of the information and determined that Telestone's belief it would collect from its customers was reasonable given its long history of having done so.

### C. *Plaintiff's Scienter Allegations are Weakened by Virtue of Mazars CPA's Disclosures About Telestone's Internal Controls.*

Plaintiff's claim is also based on the assertion that "the Auditor Reports were also false and misleading because Telestone's internal controls were not effective but were instead plagued by significant material weaknesses." *Compl.*, ¶ 128. However, none of the Auditors' Reports asserted that Telestone's internal controls were effective. *Id.* at ¶¶ 125–27. Instead, all three of the Auditors' Reports specifically stated that they expressed no opinion on the issue. *See* Motion at 21. Further, Telestone admitted problems with its internal controls. *Id.* at 22.

Plaintiff contends that Telestone's internal controls admissions show that Mazars CPA was reckless because the admissions should have prompted it to perform a more thorough investigation. This inference is implausible speculation. The reasonable inference is that Mazars CPA had performed a reasonable investigation, and, for that reason, declined to comment on Telestone's internal controls—that is what the Auditors' Reports actually say. *See Compl.*¶¶ 125–27; *see also In re A-Power Energy Generation Sys. Sec. Litig.*, No. MDL 11-2302-GW(CWx), 2012 WL 1983341, at *10 (C.D. Cal. May 31, 2012) ("It is difficult to

envision a scienter allegation sufficient to state a securities fraud claim against an auditor who explicitly issued negative internal control findings in connection with the same company whose financial results it is alleged to have manipulated or purposefully ignored in order to fool the investing public (the same investing public to whom the negative internal control findings were announced).").

### D. *Plaintiff's So-Called Red Flags Cannot be Relied On as Such Since They Were Publicly Disclosed Business Risks.*

Plaintiff repeatedly accuses Mazars CPA of burying its head in the sand, but all of the red flags identified by Plaintiff, *see* Resp. at 20, 21, were publically disclosed. These alleged risks were not concealed—they were inherent in Telestone's business model and were specifically disclosed in its Form 10-Ks. "[S]o called 'red flags', which should be deemed to have put a defendant on notice of alleged improprieties, must be closer to smoking guns than mere warning signs." *Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 278 (D.N.J. 2002) (internal citations and quotations omitted) (examining alleged red flags including accounting memoranda and a change in the company's return policy and concluding that they did not raise a strong inference of scienter).

Plaintiff's attempts to distinguish *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012) and *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x. 636, 639–40 (2d Cir. 2012) are unavailing given the ultimate outcomes of those cases. In both cases, the fact that the red flags were

- 11 -

publicly disclosed and not immediately acted upon by the regulators or investors raised an ultimately dispositive inference that they were not red flags of fraud as to the auditors. The same inference should be dispositive in this case.

### E. *Plaintiff's So-Called Red Flags Cannot be Relied Upon as Such to the Extent They Occurred After the Alleged Misrepresentations.*

Plaintiff directs the Court to several paragraphs of his Complaint which he alleges contain "red flag" admissions, *see* Resp. at 20, 21, but several of the alleged "red flag" admissions occurred well after the Auditors' Reports were issued. *See* Compl., ¶ 71 (alleged Telestone admission that the Big 3 have payment processes which differ from the contract—Sept. 2012); ¶ 52 (alleged Telestone admission that enforceability is relatively uncertain—Feb. 2013); ¶¶ 50, 75, 76 (alleged Telestone admission that the Big 3 were routinely ignoring contract terms and that Telestone was granting payment concessions—Nov. 2012). With regard to the DSOs and accounts receivable, the 2012Q1 and 2012Q2 figures cited in paragraph 75 are similarly irrelevant because they were generated after the allegedly misleading statements. A warning sign that occurred after the alleged misstatement is not a red flag at all.

Certain risks were disclosed prior to the issuance of the Auditors' Reports, but there is no allegation that Mazars CPA was ever actually on notice that these risks had come to fruition prior to the issuance of the Auditors' Reports. As noted in the Motion, so-called red flags are traditionally found where an auditor actually

learned of some fact that is obviously inconsistent with what the company was telling them or what the company was reporting to the public. There is no allegation that this occurred in this case. *See* Motion at 24, 25.

## II.   Plaintiff's Claim is Barred by the Statute of Limitations.

Plaintiff concedes that the two-year limitations period begins to run "once the plaintiff discovers, or a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation.'" Resp. at 27. "The 'facts constituting the violation' are those facts that are necessary elements of a §10(b) violation, which must be adequately pled to survive a 12(b)(6) motion to dismiss." *Id.* This lawsuit was filed on February 2, 2015. Accordingly, the claims therein are barred if Plaintiff discovered or a reasonably diligent plaintiff would have discovered the facts constituting the alleged violation prior to February 2, 2013.

In an attempt to survive dismissal, Plaintiff points to nine red flags that allegedly are sufficient "facts constituting the violation." *Id.* at 20–21. As shown above, each of these nine red flags was disclosed prior to February 2, 2013. In addition to the alleged red flags, Plaintiff specifically contends that "Telestone's concealed risks—that it was unable to enforce its contracts with the Big 3—materialized on or about May 15, 2012, August 14, 2012, November 19, 2012, and

April 17, 2013."[4]  *See* Resp. at 25.

Plaintiff responds to the limitations issue by arguing that the "full truth of Telestone's financial condition was not revealed until February 19, 2014, when the SEC published its correspondence with Telestone." *Id.* at 26. Plaintiff fails, however, to identify any facts revealed in the SEC correspondence that were not previously known. Given that the alleged red flags and loss causation disclosures were all public prior to publication of the SEC correspondence, Plaintiff cannot reasonably argue that the alleged fraud could not have been discovered prior to February 2, 2013. *See Roaring Fork Capital SBIC, L.P. v. ATC Healthcare, Inc.*, No. 10-CV-00338, 2011 WL 1258504, at *10 (D. Colo. Mar. 29, 2011) (dismissing a securities fraud case and finding that it was reasonable to assume that plaintiff could have discovered the alleged fraud based on averments that "numerous 'red flags' were patently present, that 'obvious and glaring deficiencies' existed, and that 'simple tests' could have revealed the errors").

Plaintiff argues he was not on notice because of alleged "words of comfort" from Mazars CPA. *See* Resp. at 26, 28. This argument is unsound. First, the

---

[4] Plaintiff takes issue with characterizing the April 17, 2013 late filing notice as irrelevant, but it is irrelevant to the materialization of Telestone's allegedly concealed risks, which Plaintiff (for loss causation purposes) contends were disclosed in the 2012 Quarterly Filings and evidenced by limited collections, increased DSOs, and increased accounts receivable. Plaintiff does not allege that Mazars CPA was responsible for the failure to file a 2012 10-K or that Telestone's failure to file its 10-K was related to the three Auditors' Reports.

Auditors' Reports were all issued prior to the alleged loss causation events—no "words of comfort" from Mazars CPA accompanied the 2012 Quarterly Announcements. Second, if the 2012 Quarterly Announcements were sufficient to demonstrate a problem at Telestone, the recurring nature of those announcements eliminates any reasonable reliance on any prior "words of comfort."[5]

At the risk of overusing a metaphor, Plaintiff is not permitted to "bury his head in the sand." In sum, a reasonably diligent plaintiff would have discovered the facts supporting the alleged fraud well before February 2, 2013, so Plaintiff's lawsuit should be dismissed because it is time-barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, and the reasons previously articulated in its Motion, Defendant Mazars CPA Limited respectfully requests that the Court dismiss the Complaint with prejudice.[6]

---

[5] The 2012 Quarterly Statements, the source of many of Plaintiff's allegations, were unaudited and contained no representations from Mazars CPA.

[6] Given that Plaintiff has already amended once, as well as the time-barred nature of his claims, he should not be permitted to file another amended complaint. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 246 (3d Cir. 2004) (upholding dismissal of first amended complaint with prejudice and noting that the PSLRA's unique objective of screening out lawsuits that have no factual basis would be frustrated where "there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced which would, if true, cure the defects in the pleadings under the heightened requirements of the PSLRA.").

Dated: December 4, 2015							Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By: /s/ Felice B. Galant
Felice B. Galant
666 Fifth Avenue
New York, New York 10103
Telephone:  (212) 318-3000
Facsimile: (212) 318-3400
felice.galant@nortonrosefulbright.com

Scott P. Drake (admitted *pro hac vice*)
Tyler H. Lipp (admitted *pro hac vice*)
2200 Ross Ave, Suite 3600
Dallas, Texas 75201
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200
scott.drake@nortonrosefulbright.com
tyler.lipp@nortonrosefulbright.com

*Attorneys for Defendant Mazars CPA Limited*