**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAO SUN, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.: 15-703 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| DAQING HAN, *et al.*, | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Mazars CPA Limited ("Mazars CPA" or "Defendant")'s Motion to Dismiss (ECF No. 30, "Def's. Mov. Br.") Plaintiff Bin Qu's amended putative class action complaint ("Amended Complaint") (ECF No. 28, "Compl."). Mazars CPA seeks dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and pursuant to the heighted pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). Plaintiff has opposed this Motion, and Mazars CPA has replied to that opposition. (ECF Nos. 38, "Pl's. Opp. Br." and 41, "Def's. Reply Br."). This Court has considered the Parties' submissions and rules on this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies Mazars CPA's Motion to Dismiss.

**BACKGROUND[1]**

---

[1] The facts as stated herein are taken as alleged by Plaintiff in the operative Amended Complaint. (ECF No. 28). For purposes of this Motion to Dismiss, these allegations are accepted by the Court as true. *See Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) ("The District Court, in deciding a motion [to dismiss under Rule]

1

Lead Plaintiff Bin Qu[2] brings this action individually and on behalf of a proposed class of investors who acquired securities of Telestone Technologies Corporation ("Telestone" or "the Company") between March 31, 2010 and April 16, 2013. (Compl. ¶ 1). The class seeks remedies pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. (Id.). Plaintiff alleges securities violations against Telestone, Telestone's individual officers, and against Telestone's outside auditor (the instant Moving Defendant, Mazars CPA), as well as against the allegedly related entities of Mazars Scrl and WeiserMazars LLP. (Id. ¶¶ 20-34). Plaintiff's original complaint was filed on February 2, 2015, and the operative amended complaint ("Complaint") was filed on August 17, 2015. (ECF Nos. 1, 28).

Telestone provides wireless local-access network technologies and solutions primarily in the People's Republic of China. (Compl. ¶ 2). As the Amended Complaint explains, the Company gained access to the United States market through a process known as a "reverse merger or reverse take-over ("RTO")" with a United States company that had previously declared bankruptcy. (Id. ¶ 41). A Wall Street Journal Article cited by Plaintiff explains the RTO in this way:

> In reverse mergers, a foreign company is 'bought' by a publicly traded U.S. shell company. But the foreign company assumes control and gets the shell's U.S. listing without the level of scrutiny that an initial public offering entails. Though companies from other countries also engage in reverse mergers, such deals are especially common among the Chinese. The [Public Company Accounting Oversight Board ("PCAOB")] says nearly three-quarters of the 215 Chinese companies listing in the U.S. from 2007 to early 2010 did so via reverse merger.

---

12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

[2] On May 14, 2015, this Court, for reasons explained in an accompanying Opinion (ECF No. 17), granted Plaintiff Bin Qu's Motion to serve as Lead Plaintiff (ECF No. 18).

(Id. ¶ 43, quoting Michael Rappaport, *SEC Probes China Auditors*, WALL STREET JOURNAL (June 3, 2011)).  Thus, Plaintiff alleges that by entering the United States market by way of an RTO, "Telestone was able to avoid substantial regulatory scrutiny and disclosure required in [a traditional initial public offering]." (Id. ¶¶ 40-47).  According to Plaintiff, by proceeding through "backdoor registration" into the marketplace, there is a greater likelihood that a company will "have significant accounting deficiencies or [act as] vessels of outright fraud." (Id. ¶ 46, quoting an April 4, 2011 speech by former SEC Commissioner Luis A. Aguilar).

Against this backdrop, Plaintiff explains that the telecommunications industry in China, in which Telestone is a participant, "is dominated by three state-run businesses," known as "the Big 3," who award their contracts through competitive bidding.  (Id. ¶ 4).  The vast majority of Telestone's revenues—upwards of 95 percent—come from business with the Big 3.  (Id. ¶ 4).  According to the Amended Complaint, there are significant risks to doing business with Government-run companies.  (Id. ¶¶ 4-10).  For example, Telestone's communications with the SEC acknowledged that: "the carriers have their own payment process which is always not in accordance with the terms as stipulated in contracts," which "is why [Telestone's days sales outstanding ('DSO') has continued to increase," that; "[b]ecause of the absolute monopoly position of the Big 3 carriers . . . [the Company is] unable to exercise significant influence to ask the Big 3 carriers to follow the terms as stipulated in our contracts,"; and that the Big 3 have a "practice of delaying payments." (Id. ¶¶ 49-60).

During the class period,[3] the SEC investigated Telestone's financial reporting practices. (Id. ¶¶ 49-60).  Specifically, through a series of communications, the SEC expressed its concern

---

[3] The first SEC communication referenced in the Amended Complaint is a September 24, 2012 SEC comment letter regarding Telestone's 2011 Form 10-Ks.  (Id. ¶ 50).

over the fact that Telestone appeared to be recognizing revenue on business done with the Big 3, despite Telestone's own representations as to the tenuousness of doing business with these Government-run companies. (Id. ¶¶ 49-60). The SEC also expressed concern over the lengthening of Telestone's accounts receivable turnover period from 690 days at the end of December 2011 to a "period of 1,232 days for the three months ended June 30, 2012," which the SEC viewed as "indicative of deterioration in [Telestone's] customer's credit or ability/willingness to pay." (Id. ¶¶ 50, 57). These SEC communications were made public in February 2014. (Id. ¶ 60).

Ultimately, on September 4, 2013, after its investigation into the Company's accounting and reporting practices, the SEC required that Telestone "file a Current Report on a Form 8-K announcing that certain previously issued financial statements should no longer be relied on and to amend certain financial statements." (Id. ¶¶ 2, 59). Telestone was removed from the United States marketplace on April 17, 2013, when, according to Plaintiff, "the Company disclosed that it was not able to file its annual report since it was unable to obtain the financial records from one of its subsidiaries." (Id. ¶ 14).

The gravaman of Plaintiff's Amended Complaint is that Telestone misrepresented that its financial statements were presented in accordance with Generally Accepted Accounting Principles ("GAAP") [4] and that, contrary to GAAP, it recognized revenue where the collectability of that revenue was not reasonably assured. Specifically, Plaintiff alleges that

> Telestone's business practice throughout the Class Period was to immediately recognize revenue upon the delivery of goods and services to the Big 3. This practice, however, ignored that the Big 3 refused to honor the terms of the contract by not paying Telestone

---

[4] "GAAP is 'a technical accounting term that encompasses the conventions, rules, and procedures necessary to define accepted accounting practices at a particular time.'" *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 663 n. 2 (3d Cir. 2002) (citing American Institute of Certified Public Auditing Standards No. 69, ¶ 69.02 (1992)). "[The] single unified purpose of [GAAP] . . . [is] to increase investor confidence by ensuring transparency and accuracy in financial reporting." *Gould v. Winstar Communications, Inc.*, 692 F.3d 148, 153 n.5 (2d Cir. 2012)

or by paying the Company years later at their own discretion.  Moreover, due to the Big 3's monopoly position and governmental states, [sic] Telestone admittedly was unable to do anything about this non-payment, refusing to demand payment or to seek legal recourse against these customers.

(Id. ¶ 5).

With regards to the Moving Defendant, Mazars CPA, Plaintiff alleges that "[i]n spite of the clear evidence of Telestone's customers not honoring its purported contracts with the Company, Telestone's auditors simply buried their heads in the sand and rubber-stamped the Company's conclusions regarding the propriety of its revenue recognition policy." (Id. ¶ 10). Thus, Plaintiff claims that Mazars CPA, through its Audit Reports issued during the class period, materially misrepresented to investors that Telestone's financial reports reliably represented the Company's financial status, that these financial reports were GAAP-compliant, and that the Audit Reports themselves were compliant with Generally Accepted Auditing Standards ("GAAS").[5]

According to the Amended Complaint, the market gradually learned that there may have been an issue with Telestone's revenues when its accounts receivable figures ballooned, which resulted in the Company's stock price declining significantly during the Class Period. (Id. ¶¶ 11-14, 138).  Specifically, on May 15, 2012, August 14, 2012, and November 19, 2012, Telestone issued three press releases disclosing that its accounts receivable and accounts receivable turnover period were greatly increasing. (Id. ¶ 138). Plaintiff now alleges violations of Section 10(b) of the Securities Exchange Act against all Defendants, and violations of Section 20(a) of the Act against the individual Defendants. (Id. at 81-86). Defendant Mazars CPA now moves to dismiss

---

[5] "GAAS are the standards prescribed by the Auditing Standards Board of the American Institute of Certified Public Accountants for the conduct of auditors in the performance of an examination." *In re Ikon*, 277 F.3d at 663, n. 5.

the claims against it.  (Def's. Mov. Br.).  Plaintiff has opposed this motion (ECF No. 38, "Pl's. Opp. Br."), and Mazars CPA has filed a reply to that opposition (ECF No. 41, "Def's. Reply Br.").

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a Complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). The plaintiff's short and plain statement of the claim must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

In evaluating the sufficiency of a complaint, a court must "accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S.at 545.  Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557); *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir.2005) ("[A] Court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss."). To that end, a Court considering a motion to dismiss must take account of the elements necessary to plead the claims alleged in the complaint.

6

In addition to meeting Rule 8(a)'s pleading requirements, a plaintiff alleging claims of securities fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, at a minimum, plaintiffs must plead their allegations of securities fraud with "the who, what, when, where and how: the first paragraph of any newspaper story." *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

Similarly, as per the PSLRA, a plaintiff must satisfy heightened pleading requirements and "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.,* the defendant's intention 'to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007) (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, and n. 12 (1976), and citing 15 U.S.C. § 78u–4(b)(1), (2)).

First, with regard to misleading statements and omissions of material fact, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Further, "[t]o be actionable, [the] statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1330 (3d Cir. 2002).

As to scienter, the second requirement, "with respect to each act or omission alleged to violate [Section 10(b)], [a plaintiff must] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u4(b)(2). In evaluating whether a complaint meets this requirement, a court is required to consider inferences

urged by the plaintiff as well as "competing inferences rationally drawn from the facts alleged." *Tellabs,* 551 U.S. at 314. A "strong" inference is "more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. . . . The inference . . . need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences." *Id.* at 314, 324 (internal quotations omitted). The Third Circuit permits a plaintiff to show a "strong inference" of fraud "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 276 (3d Cir. 2006) (quotations omitted).

In this context, "recklessness includes: 'highly unreasonable [conduct], involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *S.E.C. v. The Infinity Grp., Co.,* 212 F.3d 180, 192 (3d Cir. 2000) (quoting *McLean v. Alexander,* 599 F.2d 1190, 1197 (3d Cir. 1979)). Finally, a court considers the entirety of a complaint in determining "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets this standard." *Tellabs,* 551 U.S. at 323 (emphasis in original).

## DISCUSSION

Here, as to the Moving Defendant, Plaintiff seeks relief under Section 10(b) of the Securities Exchange Act of 1934. (Compl. ¶¶ 173-183). "Section 10(b) prohibits the 'use or employ, in connection with the purchase or sale of any security, . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission

8

may prescribe . . . ." *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 666 (2002) (quoting 15 U.S.C. § 78j(b)). Rule 10b-5, in turn, created a private right of action for investors harmed by materially false or misleading statements to enforce Section 10(b), and it "makes it unlawful for any person '[t]o make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security.'" *Id.* (quoting 17 C.F.R. § 240.10b-5(b)).

> To establish liability under 10(b) and 10b-5, a plaintiff must show:
>
> (1) *a material misrepresentation (or omission)*; (2) *scienter, i.e.,* a wrongful state of mind; (3) *a connection with the purchase or sale of a security*; (4) *reliance*, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation;" (5) *economic loss*; and (6) *"loss causation," i.e.,* a causal connection between the material misrepresentation and the loss.

*Dura Pharm, Inc. v. Broudo*, 544 U.S. 336 (2004) (citations omitted).

Defendant contends that Plaintiff's Amended Complaint should be dismissed because Plaintiff has failed to meet the heighted pleading standards of a securities fraud claim. Specifically, Defendant claims that Plaintiff has failed to identify the role of Mazars CPA in the alleged fraud vis a vis the other Defendants, that Plaintiff has not identified any material misrepresentations made by Mazars CPA, and that the Amended Complaint fails to adequately plead scienter. (Def's. Mov. Br. at 11-40). Lastly, Defendant contends that Plaintiff's allegations of loss causation are barred by the two-year statute of limitations. (Id. at 36-40). The Court considers each of these challenges in turn.[6]

## A. The Amended Complaint Sufficiently Identifies the Party who Allegedly Committed the Fraud

---

[6] As Defendant has not seriously disputed that Plaintiff has sufficiently plead reliance, economic loss, or loss causation, this Court need not address whether those elements are sufficiently plead.

Defendant contends that the Amended Complaint should be dismissed because it improperly relies upon group pleadings. (Def's. Mov. Br. at 14). Specifically, Mazars CPA alleges that Plaintiff "fails to specifically plead the role of Mazars CPA or identify specific statements attributable to Mazars CPA." (Id.). Defendant points to Plaintiff's use of collective phrases such as "Mazars Entities" or "Auditors" throughout the Amended Complaint. (Id. at 14).

Defendant relies upon the Third Circuit case of *Winer Family Trust v. Queen* in support of its argument that Plaintiff improperly relies upon the group pleading doctrine. (Id. at 14) (citing *Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007)). In *Winer Family Trust*, the Third Circuit was asked to consider, *inter alia*, whether former shareholders could assert liability on the part of individual directors and officers of two corporations on the basis of said individual defendants' "access to, control over, and ability to edit and withhold dissemination of [the company's] press releases and SEC filings." 503 F.3d at 334-335. The Third Circuit defined the group pleading doctrine as: "[A] judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations." *Id.* After reviewing the purposes of the PSLRA and the discussion in *Tellabs* regarding the substantially heightened pleading requirements in securities class action lawsuits, the Third Circuit held that plaintiffs could not rely upon the group pleading doctrine in a case arising under the PSLRA, because the PSLRA "requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions." *Id.* at 335-37. Thus, the Circuit held that the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA." *Id.* at 335-37.

10

Plaintiff responds that its allegations of wrongful conduct as against Mazars CPA are quite clear from the face of the Amended Complaint which includes the text of Audit Reports issued and signed by "Mazars CPA Limited," which contain the alleged false statements. (Pl's. Opp. Br. at 11-13).

This Court agrees with Plaintiff that he has sufficiently identified the misstatements allegedly made by Mazars CPA where Plaintiff has reproduced the Audit Reports signed off by "Mazars CPA Limited" which contain the alleged misstatements, and which include the dates during which the Audit Reports were issued and also identifies how the statements were disseminated to the public. (See Compl. ¶¶ 124-127). Accordingly, Mazars CPA is sufficiently on notice of the fraud allegations pled against it, and the Court therefore rejects its argument that the Amended Complaint should be dismissed on the basis that Plaintiff failed to specifically identify the party that allegedly committed the fraud.

## B. Plaintiff has Sufficiently Plead Material Misstatements or Omissions

As discussed above, to survive a motion to dismiss on claims brought under the PSLRA, the Amended Complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

Mazars CPA contends that Plaintiff has failed to allege particularized facts showing a material false statement made by Mazars CPA. (Def's. Mov. Br. at 17-21). The gravaman of Mazars CPA's argument relating to the allegedly false statement component of Plaintiff's 10(b) claim is that Plaintiff has failed to plead anything more than "a misstatement or error in the company's accounting," which errors cannot support claims against an outside auditor. (Id. at 17-19). Mazars

11

CPA also contends that "there are no allegations that the facts used by Telestone to support its revenue recognition were false." (Id. at 20).

Plaintiff responds that "with respect to each factual statement that is alleged to be false or misleading, [he] has identified who made the statement (*i.e.,* Mazars CPA), when it was made (2009-2011), and how it was disseminated to the investing public (*e.g.* 'clean' audits by Mazars CPA)." (Pl's. Opp. Br. at 13-14).

Specifically, Plaintiff alleges that Mazars CPA's Audit Reports falsely stated that: (1) Telestone's financial statements were presented "in conformity with accounting principles generally accepted in the United States of America" (Id. at 11-12; Compl. ¶¶ 125-127); (2) Telestone's annual reports "present fairly, in all material respects, the financial position of the Company" as of December 31, 2009, December 31, 2010, or December 31, 2011 as well as "the results of its operations and cash flows for each of the years then ended"; (3) Mazars CPA "conducted [their] audits in accordance with the standards of the Public Company Accounting Oversight Board (United States)" (PCAOB) (Pl's. Opp. Br. at 11-12; Compl. ¶¶ 125-127), and; (4) that "the Audit Reports were also false and misleading because Telestone's internal controls were not effective but were instead plagued by significant material weaknesses" (Compl. ¶ 128). The Court considers each of the alleged misrepresentations, in turn.

i. **Mazars CPA's Statements that Telestone's Financial Reports were Compliant with GAAP**

The gravamen of Plaintiff's claims is that Telestone failed to apply basic accounting principles of revenue recognition, thereby inflating financial reports. The Amended Complaint quotes the following language out of Telestone's Form 10-Ks, relating to the Company's own revenue recognition policy: "The Company generally recognizes product revenue when persuasive

evidence of an arrangement exists, delivery occurs, the fee is fixed or determinable, and collectability is probable." (Compl. ¶ 63). This policy tracks Generally Accepted Accounting Principles, particularly Staff Accounting Bulletins 101 and 104, which "represent practices followed by the staff in administering SEC disclosure requirements." (Id. ¶¶ 61-64). Plaintiff alleges that, in violation of these principles, Telestone reported revenue upon delivery of goods and services to its Big 3 clients, even though: (1) there was not persuasive evidence that a substantive arrangement existed as between the Big 3 and Telestone; (2) payment was not reasonably assured, and; (3) the price was not fixed or determinable. (Id. ¶ 66-75). Plaintiff points to Telestone's correspondence with the SEC to demonstrate these deficiencies.

As to the lack of persuasive evidence of an arrangement between the Big 3 and Telestone, Plaintiff cites to Telelstone's admissions to the SEC that "the [Big 3] have their own payment process which is always not in accordance with the terms as stipulated in contracts." (Id. ¶ 71). This admission, according to Plaintiff, demonstrates that Telestone's Government clients are free to stray from the agreed-upon terms, virtually rendering the contracts a nullity. (Id. ¶ 71). This admission is equally bearing on the GAAP reporting requirement that reported revenue be "fixed or determinable," where, according to Plaintiff, "a factor that impacts the determination of whether an arrangement is fixed or determinable is whether the customer has been granted extended payment terms." (Id. ¶ 73).

Lastly, Plaintiff directs the Court to Telestone's admissions bearing on the Company's ability to enforce its contracts against the Big 3, tending to show that the collection of revenue from the Big 3 was not reasonably assured. (Id. ¶¶ 78-87). Telestone informed the SEC that there exists "uncertainty" in the payment cycles of its Big 3 customers, which "therefore causes uncertainty in our cash flows." (Id. ¶ 83). The Amended Complaint also includes a chart, prepared by Telestone,

13

which tracks an increase in delay of payment (or "days sales outstanding" ("DSO")) from 358 days

in 2009 to 1,232 days in 2012 and an increase in the Company's net accounts receivable from $89

million in 2010 to over $192 million in 2011.  (Id. ¶¶ 79-80).  These increases, according to both

Plaintiff and the SEC, are indicative of Telestone's customers' ability and/or willingness to pay,

and therefore would suggest that collectability of reported revenue is "not reasonably assured," as

required under SABs 101 and 104 and the Company's own revenue collection policy.  (Id. ¶¶ 50,

57, 79).

Plaintiff alleges that based upon these "accounting irregularities," Telestone violated numerous

accounting principles in addition to SABs 101 and 104.  (Id. ¶ 91).  Specifically, Plaintiff alleges

that Telestone violated the following Statements of Concepts promulgated by the Financial

Accounting Standards Board ("FASB"):[7]

- The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" (FASB Statement of Concepts No. 1, 34);

- The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" (FASB Statement of Concepts No. 1, 40);

- The principle that "financial reporting should provide information about an enterprise's financial performance during a period" (FASB Statement of Concepts No. 1, 42);

---

[7] According to the FASB website, "[s]ince 1973, [FASB] has been the designated organization in the private sector for establishing standards of financial accounting that govern the preparation of financial reports by nongovernmental entities.  Those standards are officially recognized as authoritative by the [SEC] . . . . Such standards are important to the efficient functioning of the economy because decisions about the allocation of resources rely heavily on credible, concise, and understandable information."  FASB, *Facts About FASB*, http://www.fasb.org/jsp/FASB/Page/SectionPage&cid=1176154526495 (last visited Dec. 7, 2015).

14

- The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" (FASB Statement of Concepts No. 1, 50);

- The principle that "financial reporting should be reliable in that it represents what it purports to represent" (FASB Statement of Concepts No. 2, 58-59);

- The principle [of] "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" (FASB Statement of Concepts No. 2, 79);

- The principle that "conservativism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" (FASB Statement of Concepts No. 2, 95).

(Compl. ¶ 91).

As the alleged GAAP violations relate to Mazars CPA, Plaintiff claims that notwithstanding these violations, Mazars CPA issued Audit Reports during the class period, which represented that Telestone's financial reporting is compliant with GAAP. (Id. ¶¶ 125-127). Specifically, the Audit Reports issued in 2009-2011 state that Telestone's reporting was "in conformity with accounting principles generally accepted in the United States of America" and that "[in Mazars CPA's] opinion, the consolidated financial statements . . . present fairly, in all material respects, the financial position of the Company as of December 31, [2009, 2010 and 2011] and the results of its operations and its cash flows for each of the years then ended in conformity with accounting principles generally accepted in the United States of America." (Compl. ¶¶ 125-127).

Defendant rejects Plaintiff's logic that because Telestone's purported violation of revenue reporting principles, Mazars CPA is liable. First, Defendant argues that Plaintiff has not alleged "that the facts used by Telestone to support its revenue recognition were false. Instead, the Amended Complaint is about Telestone's application of a discretionary accounting standard to

those facts." (Def's. Mov. Br. at 20).  Defendant further argues that increases in DSO and accounts receivable periods during the period preceding the class period does not indicate the tenuousness of payment by the Big 3 clients; rather, Mazars CPA argues that a review of these numbers during the years prior to the Class Period demonstrates a similar trend, indicating that the appropriate inference to be made by the increase in these figures is that such increases are and had been "a reality of Telestone's business" that had been disclosed to the market at that time.  (Id. at 29).

While the Court has reviewed Defendant's arguments that Plaintiff has failed to plead any actual GAAP violations, the Court finds that "[a]t the pleading stage . . . , [Plaintiff is] entitled to the benefit of all reasonable inferences based on the detailed and specific allegations in [his] [C]omplaint[]." *Suprema*, 438 F.3d at 281; *see also Tellabs*, 551 U.S. at 322 ("[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the Complaint as true.").  Based upon the Amended Complaint's admissions from Telestone to the SEC, as well as the circumstantial evidence relating to the Company's increasing accounts receivables and delays in payment, the Court finds that Plaintiff has sufficiently alleged that Telestone's financial reporting was inconsistent with GAAP at the pleading stage.

Defendant further contends that Plaintiff misunderstands the objectives of an audit, which "does not guarantee that a client's accounts and financial statements are correct any more than a sanguine medical diagnosis guarantees well-being," *In re Ikon*, 277 F.3d at 673, but rather only requires that an auditor exercise due professional care.  (Def's. Mov. Br. at 18-19).  Thus, to the extent there were misstatements in the Company's reporting, Mazars CPA contends that those misstatements are not actionable.  (Id. at 19).  Similarly, Mazars CPA argues that the Audit Reports did not, by their terms, "provide absolute assurance that Telestone's financial statements were free

16

of material misstatement: each report was an 'opinion' performed by 'examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements' providing a 'reasonable basis' for the opinion." (Id. at 20).

Here, the allegations raised by Plaintiff as to Mazars' CPA rise above claims of failure to "exercise due professional care" and claims of mere "misstatements" by the Company's reporting. Plaintiff sufficiently alleges that Telestone misrepresented its financial status to its investors—it does not allege an immaterial accounting error.  To that end, Mazars CPA's statements that its Audit Reports did not "prove absolute assurances that Telelstone's financial statements were material misstatements" cannot overcome these particular allegations against it.  Accordingly, this Court finds that Plaintiff has sufficiently alleged that Mazars CPA made a material misrepresentation in its 2009, 2010, and 2011 Audit Reports, when it represented that Telestone's reporting was "in conformity with accounting principles generally accepted in the United States of America." (Id.).

## ii.    Mazars CPA's Statements Regarding the Accuracy of Telestone's Financial Reporting

Plaintiff also alleges that Mazars CPA misrepresented in its Audit Reports that Telestone's financial reports "present fairly, in all material respects, the financial position of the Company" as of December 31, 2009, December 31, 2010, or December 31, 2011 as well as "the results of its operations and cash flows for each of the years then ended." (Id.).  In light of the above discussion of Telestone's alleged inflation of revenue reporting, this Court agrees that this alleged misrepresentation, as pled, is sufficiently supported by the factual record alleged in Plaintiff's Amended Complaint.

## iii.    Mazars CPA's Statements that its Audits were PCAOB-Compliant

17

By way of a third material misstatement, Plaintiff contends that Mazars CPA's Audit Reports falsely stated that the audits were PCAOB-compliant. [8] (Compl. ¶ 129-135). According to Plaintiff, Mazars CPA violated numerous PCAOB principles and guidelines. (See Compl. ¶¶ 130-135).

For example, the Amended Complaint alleges violations of Codification of Auditing Standards Sections 312.01 and 312.16, which require an auditor to "assess audit risk and materiality . . . in determining the nature, timing and extent of audit procedures and in evaluating the results of those procedures" and provide that "in considering audit risk, 'the auditor should specifically assess the risk of material misstatements of the financial statements due to fraud.'" (Compl. ¶ 30). Similarly, Plaintiff cites to Auditing Standard Section 326, which provides that "[m]ost of the independent auditor's work in forming his or her opinion on financial statements consists of obtaining and evaluating evidential matter concerning the assertions in such financial statements" and that "[t]o the extent the auditor remains in substantial doubt about any assertion of material significance, he or she must refrain from forming an opinion until he or she has obtained sufficient competent evidential matter to remove such substantial doubt or the auditor must express qualified opinion or a disclaimer of opinion." (Id. ¶ 135).

Here, Plaintiff argues that Mazars CPA violated these standards in failing to heed the red flags (discussed in Part C, *supra*) which he alleges should have put the auditors on notice of the risks in the Company's reporting, and in merely "rubber-stamping" Telestone's financial reports.

---

[8] The PCAOB (Public Company Accounting Oversight Board), "is directed by the Sarbanes-Oxley Act of 2002 to establish auditing and related professional practice standards for registered public accounting firms to follow in the preparation and issuance of audit reports." PCAOB, Standards Tab, http://pcaobus.org/Standards/Pages/default.aspx (last visited Dec. 7, 2015).

(Pl's. Opp. Br. at 14).  Plaintiff contends that "[a] proper audit would have uncovered that the Company lacked any reasonable hope of payment." (Pl's. Off. Br. at 3).

Plaintiff also alleges that the Audit Reports were not, as they claimed, PCAOB-compliant because Reports are inconsistent with the "Objectives and Standards" of the accounting profession, which provide that:

> The Function of financial reporting is to provide information that is useful to those who make economic decisions about business enterprises and about investments in or loans to business enterprises.  Independent auditors commonly examine or review financial statements and perhaps other information, and both those who provide and those who use that information often view an independent auditor's opinion as enhancing the reliability or credibility of the information.

(Id. ¶ 131).  In light of this standard, Plaintiff alleges that by falsely certifying that Telestone's financial reports were GAAP-compliant and that the financial reports fairly represented the Company's financial health, Mazars CPA "discouraged investors from questioning the accuracy of those statements." (Id. ¶ 134).

In response, Defendant accuses Plaintiff of citing to these standards "'without an explanation of how the [D]efendant knowingly or recklessly violated those standards." (Def's. Mov. Br. at 18) (quoting *Suprema*, 438 F.3d at 280).  Indeed, Defendant argues that "[r]elying on purported GAAP violations, Plaintiff asks the Court to conclude that, as a necessary consequence, the auditors committed flagrant violations of numerous auditing standards." (Id. at 18).  Defendant again contends that Plaintiff misunderstands the objectives of an audit, which does not guarantee the accuracy of a client's financial reporting, but rather only requires that an auditor exercise due professional care.  (Def's. Mov. Br. at 18-19) (quoting *In re Ikon*, 277 F.3d at 673).  Thus, according to Mazars CPA, to the extent there were misstatements in the Company's reporting, those misstatements are not actionable as against Mazars CPA.  (Id. at 19).  Additionally, as

discussed above, Mazars CPA argues that the Audit Reports did not, by their terms, "provide absolute assurance that Telestone's financial statements were free of material misstatement: each report was an 'opinion' performed by 'examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements' providing a 'reasonable basis' for the opinion." (Id. at 20).

The Court finds that Plaintiff has sufficiently pled that Mazars CPA's statements that its Audit Reports were PCAOB-compliant were materially false and misleading. Particularly with regards to the GAAS requirements that an auditor (1) "assess audit risk and materiality . . . in determining the nature, timing and extent of audit procedures and in evaluating the results of those procedures" and that (2) "in considering audit risk, 'the auditor should specifically assess the risk of material misstatements of the financial statements due to fraud'" (Compl. ¶30), Plaintiff has identified specific "red flags" which Defendant allegedly failed to take into consideration before rendering an opinion on the reliability of Telestone's financial statements. While identified in detail below, some of these red flags include, but are not limited to, the Company's own admissions that its internal controls were weak, that it had limited negotiating power with the Big 3, and that the Big 3 clients did not comply with the terms of Telestone's contracts. Thus, Plaintiff has offered the required "detailed set of allegations as to how [Mazars CPA] violated specific GAAS standards in its audit of [Telestone], and [as discussed below, he has] identified numerous substantive indicators of fraud that were allegedly ignored altogether in the auditing process." *Suprema*, 438 F.3d at 280.

### iv.    Statements Regarding Telestone's Internal Controls

In addition to the alleged misrepresentations discussed above, the Amended Complaint provides a fourth basis as to why Mazars CPA's Audit Reports were false and misleading—

specifically, because "Telestone's internal controls were not effective but were instead plagued by significant material weaknesses." Compl. ¶ 128).

Defendant responds that contrary to the Amended Complaint's representations that the audit reports provided false assurances related to Telestone's internal controls, Mazars CPA's Audit Reports expressly state that the auditors express no opinion on the Company's internal controls:

> The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing auditing procedures that are appropriate in the circumstances, *but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion.*

(Def's. Mov. Br. at 21, Ex. I).

Because the Audit Reports expressly disclaim rendering an opinion on the effectiveness of the Company's internal controls, the Court finds that Plaintiff's fourth alleged misstatement is insufficiently pled.

## C. Plaintiff Has Sufficiently Plead Scienter as to Mazars CPA

Having found in part that the statements alleged in Plaintiff's Amended Complaint are materially false and misleading, the Court now addresses whether Plaintiff has sufficiently pled scienter as against Mazars CPA.

### i.    Plaintiff's Pleading of the "Collective Scienter"

Mazars CPA argues that Plaintiff has failed to sufficiently plead scienter under the PSLRA and Rule 9(b)'s heightened pleading requirements. (Def's. Mov. Br. at 22-35). As a preliminary matter, Mazars CPA contends that Plaintiff improperly relies on the "collective scienter" of Mazars CPA rather than pleading the scienter of "at least one individual officer who made, or participated

21

in the making of, a false or misleading statement," as Mazars CPA contends is required. (Def's. Mov. Br. at 15-16). Even if it were appropriate for Plaintiff to plead the collective (or "corporate") scienter, Mazars CPA alleges that such pleading is only appropriate under "extraordinary circumstances" not found in the Amended Complaint. (Def's. Mov. Br. at 16). Plaintiff does not directly respond to the argument that it has improperly pled the "collective scienter."

The circuits are split on the question of whether a plaintiff may meet the strict pleading requirements of the PSLRA by pleading the "collective" or "corporate" scienter. The Fifth Circuit, for example, has held that plaintiffs must plead that at least one individual acting on behalf of the corporation made a false statement with the requisite state of mind. *See Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366-67 (5th Cir. 2004). By contrast, the Second, Sixth, Seventh, and Ninth Circuits have approved the viability of the collective scienter doctrine while nonetheless upholding the strict pleading requirements of the PSLRA. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital*, 531 F.3d 190, 195 (2d Cir. 2008); *City of Monroe Employees Retirement Syst. v. Bridgestone Corp.*, 399 F.3d 651, 684, 689-90 (6th Cir. 2005); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008); *Glazer Capital Mngmt, LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008).

While the Third Circuit has not definitively decided whether a plaintiff can plead the collective scienter with regards to PSLRA claims, it has indicated that it may be possible to plead scienter against a corporation without pleading scienter against an individual.[9]   *City of Roseville Employees' Retirement Sys. v. Horizon Lines, Inc.*, 442 Fed. Appx. 672, 676-77 (3d Cir. 2011) (unpublished); *see also Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 (3d Cir. 2013).   Courts

---

[9] Likewise, this Court has previously declined to hold that a plaintiff in a Section 10(b) pleading may never meet the scienter requirement by pleading the collective scienter. *See Rahman v. Kid Brands, Inc.*, Civ. No. 11-1624, 2012 WL 762311 at *17 (D.N.J. Mar. 8, 2012) (Linares, J.), *aff'd* 736 F.3d 237, 246 (3d Cir. 2013).

have found collective scienter to satisfy the pleading standard where "the pleaded facts [ ] create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Dynex*, 531 F.3d at 195; *see also Tellabs*. 513 F.3d at 711 (stating that where a "dramatic announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false," a "strong inference of corporate scienter" would arise).

Here, the Audit Reports containing the allegedly material false statements were signed by "Mazars CPA Limited" as an entity. (See Compl. ¶¶ 124-127). In fact, the Audit Reports do not appear to be signed by a known, named individual auditor.[10] However, given that these Reports were presumably approved by a senior auditor and for disclosure to the public in compliance with financial reporting requirements, the Court finds that the pleaded facts and allegations as to scienter, discussed in detail below, "create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Dynex*, 531 F.3d at 195. Accordingly, the Court will not dismiss Plaintiff's claims against Mazars CPA at the juncture for failing to plead scienter as to a specific individual related to the Defendant.

### ii.    Legal Standard as to Outside Auditor Scienter

The Third Circuit has outlined the pleading standard relevant to an outside auditor. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006). In *Suprema*, the Circuit Court reversed a district court's finding that the plaintiff failed to plead scienter as to an outside auditor. 438 F.3d 256 (3d Cir. 2006). The Court explained that "[w]hen a professional opinion is issued to the investing public by those in a position to know more than the public, there is an obligation to

---

[10] At this stage of the litigation, and given that the Audit Reports were not signed by a specific auditor, it is unclear how Plaintiff would be able to identify any specific auditor.

disclose data indicating that the opinion may be doubtful." *Id.* at 279 (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir. 1985). The Court reiterated its previous holding that when that professional opinion is

> based on underlying materials which on their face or under the circumstances suggest that they cannot be relied on without further inquiry, then the failure to investigate further may support[ ] an inference that when [the defendant] expressed the opinion it had no genuine belief that it had the information on which it could predicate that opinion.

*Id.* (quoting *Eisenberg*, 766 F.2d at 776) (internal quotations omitted); *see also Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) ("Under certain circumstances, we have found allegations of recklessness to be sufficient where plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud.").

To that end, the Circuit explained that a plaintiff pleading auditor scienter may allege that (1) "an auditor either lacked a genuine belief that its representations were supported by adequate information," (2) or, that the auditor "engaged in auditing practices so shoddy that they amounted at best to a 'pretended audit.'" *Id.* at 279; *see also McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir. 1979). However, a plaintiff is required to "'show that [the auditor]'s judgment at the moment exercised was sufficiently egregious such that a reasonable accountant reviewing the facts and figures should have concluded that [the company's] financial statements were misstated and that as a result the public was likely to be misled.'" *Suprema*, 438 F.3d at 279 (quoting *In re Ikon*, 277 F.3d at 673).

In *Suprema*, the Third Circuit noted that "[a]t the pleading stage, courts have recognized that allegations of GAAS violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss." *Id.* at 279-80 (citing to First and Fourth Circuit case

24

law, as examples). "Such allegations, of course, must be pled with particularity." *Id.* For example, the Third Circuit stated that if a plaintiff cites to violations of GAAS standards to support an inference of scienter, the plaintiff must explain "how the defendant knowingly or recklessly violated those standards." *Id.* at 280 (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 712 (3d Cir. 1996)). As the Circuit previously noted, "in many cases, the most plausible means to prevail on a section 10(b) claim against an auditor without that ever-elusive 'smoking gun' document or admission will be to show how specific and not insignificant accounting violations collectively raise an inference of scienter." *In re Ikon*, 277 F.3d at 677 n. 26.

After outlining the standard to be applied to pleading outside auditor scienter, the Circuit held that the plaintiff raised sufficient inferences of auditor scienter to survive dismissal where the complaint explained how the auditors overlooked thirty "red flags" and also provided "a detailed set of allegations as to how [the auditors] violated specific GAAS standards in its audit of [the company]. *Suprema*, 438 F.3d at 280-81. Ultimately, the *Suprema* Court found that such allegations "surpass an inference of ordinary negligence; they reasonably suggest that [defendant] either knew of, or willfully turned a blind eye to, the fraud at [the Company]." *Id.* at 281.

Against this backdrop, the Court considers whether Plaintiff has sufficiently pled scienter as to its auditor, Mazars CPA.

### a. Plaintiff's Argument that Mazars CPA Conducted a "Pretended Audit"

Here, Plaintiff argues that the Amended Complaint satisfies the second, "shoddy" audit basis for alleging scienter as to an outside auditor. *Suprema*, 438 F.3d at 279. Specifically, Plaintiff claims that Mazars CPA's audit was so deficient that it amounted to no audit at all. (Pl's. Opp. Br. at 17-19). In support of this argument, Plaintiff contends that "Mazars CPA's failure to discover what was easily discoverable, despite several years of 'audits,' suggests that for years

25

Mazars CPA merely rubber-stamped what Telestone's management has told it to." (Id. at 18). Moreover, Plaintiff maintains that where, as here, a meaningful audit would have easily uncovered the Company's fraud, there is a strong inference of scienter. (Id. at 18).

In pleading auditor scienter, plaintiffs often direct the court to "red flags," or such "facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F Supp. 2d 192, 240 n. 51 (S.D.N.Y. 2004) (quotations omitted). And, as noted in *Suprema*, Courts similarly consider the extent and seriousness of the GAAP and GAAS violations alleged, as well as the severity of the alleged fraud in determining whether Plaintiff has made a sufficient inference of auditor scienter. *See, e.g., New Mexico State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089 (9th Cir. 2011) ("[J]ust as with GAAP, the more likely an auditor would have discovered the truth if a reasonable audit had been conducted, the stronger the inference of scienter."); *see also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) ("[T]he less complex the rules violated, the greater the magnitude of the irregularities, and the more frequent the violations, the stronger is the inference that conscious fraud or recklessness is the explanation for the auditor's role in the violations.").

### b. Red Flags

In his opposition brief, Plaintiff identifies nine "red flags" that he contends would have put a reasonable auditor on notice of potential fraud which, Mazars CPA allegedly failed to heed in its audits. (Pl's. Opp. Br. at 20-21). These "red flags" fall into the following three categories: (1) Telestone's admissions in SEC correspondence; (2) Telestone's admissions in its Form 10-Ks regarding the risks of doing business with the Big 3, and; (3) the Company's increasing DSOs and

26

accounts receivables.   (Id.).   The Court considers each of these red flags, and Defendant's objections to same, in turn.

### i.    *SEC Correspondence and Form 10-Ks*

The vast majority of the red flags cited to include admissions made by Telestone through its communications with the SEC, discussed above.   Specifically, Plaintiff cites to Telestone's admissions: that it had limited negotiating leverage and limited legal recourse against the Big 3 clients (Compl. ¶¶ 4, 51); that these clients routinely ignored contractual terms; that Telestone granted payment concessions to the Big 3 (Id. ¶ 75), and; that as a result of customers following their own payment processes, the Company's days sales outstanding were increasing (Id. ¶ 71).

Additionally, in Plaintiff's opposition brief, he cites to "red flags" contained in Telestone's own Form 10-Ks published during the class period.   (Pl's. Opp. Br. at 20). [11]   These public disclosures included similar admissions as those in the SEC filings.   For example, the Form 10-Ks stated that the Company's "disclosure controls and procedures were not effective due to control weaknesses and control deficiencies in our internal control over financial reporting." (Id.) (citing to Def's. Mov. Br. at 22).   Additionally, under a heading labeled "Risks Related to Our Business and Operations," Telestone stated that it "experiences delays in payments" from the Big 3 and that "these delays are largely due to our limited bargaining leverage and the resulting lack of a specific

---

[11] Although Plaintiff's Amended Complaint does not identify these particular statements made in the Company's Form 10-Ks, this Court will nevertheless consider these statements in its analysis because the Form 10-Ks are an integral part of Plaintiff's claims which are specifically referenced in the Complaint, and because the authenticity of these documents, which Defendant has attached to its Motion to Dismiss, is not disputed. *See, e.g., Tellabs*, 551 U.S. at 322 (permitting a court ruling on a motion to dismiss to consider matters of which it took judicial notice) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (quotations and citations omitted).

timetable in our sale and purchase contracts to require our customers to issue completion certificates and to perform preliminary inspections, which are pre-conditions to their initiation of payments." (Id.) (citing Def's Mov. Br. at 33).

Defendant challenges the relevance of the SEC communications to the scienter analysis. Mazars CPA states that Telestone's admissions during the SEC investigation are not "red flags" for purposes of raising inferences as to Mazars CPA's knowledge of fraud. First, those communications were only between Telestone and the SEC, and therefore knowledge of these "red flags" cannot be imputed to Mazars CPA. (Def's. Mov. Br. at 27). Secondly, Defendant argues that the SEC communications, the earliest of which is dated September 24, 2012, post-date the Audit Reports implicated in this action, and therefore say nothing of Mazars CPA's knowledge of potential fraud at the time that it issued its Audit Reports containing the alleged misstatements. (Id. at 27). Defendant reiterates the Third Circuit's statement in *Suprema* that the "plaintiff must show that [the auditor]'s judgment *at the moment exercised* was sufficiently egregious . . . ." Id. (quoting *Suprema*, 438 F.3d at 279). Thus, Mazars CPA maintains that the issue is whether there is a detailed red flag allegation based on Mazars CPA's knowledge prior to March 30, 2012—the date of the final Audit Report issued during the class period. (Id. at 26). Mazars CPA also contends that the SEC communications "establish a strong inference that Telestone had myriad reasons why it thought each of the four factors for recognizing revenue were met" and that "the only factual allegations in the [Amended] Complaint about Mazars CPA's beliefs establish that Mazars CPA *did believe* its representations were supported by adequate information." (Id. at 27).

Mazars CPA also argues that "Telestone did not, as Plaintiff alleges, make a secret of the fact that the commercial realities of doing business with the 'Big 3' state-run telecommunications business in China presented risks with regard to the timing, certainty, amount, and collectability

28

of certain payments." (Def's. Mov. Br. at 32). Defendant cites to the Company's Form 10-Ks, issued during the class period, as evidence that the same "red flags" identified by Plaintiff in the SEC communications had been disclosed to investors. (Id. at 32-35). According to Defendant, because these "red flags" were publicly disclosed, they cannot serve as a basis for raising auditor scienter. (Id.).

ii.   *The Company's Increasing DSOs and Accounts Receivables*

In addition to citing to communications between the SEC and Telestone and from Telestone to its investors, Plaintiff states that the fact that the Company's days sales outstanding period and accounts receivables increased significantly during the class period were significant red flags that the Big 3 were not held accountable for payments due on their contracts. (Pl's. Opp. Br. at 20-21).

Defendant responds that these increased figured cannot be said to be "red flags" indicating that the Company's customers did not intend to honor their contracts; rather, Mazars CPA argues that a review of these numbers during the years prior to the Class Period demonstrates a similar trend, which, according to Defendant, only indicates that such increases are and had been "a reality of Telestone's business." (Def's. Mov. Br. at 29-31).

c.   **Additional Indicia of Scienter**

In addition to Mazars CPA's alleged failure to heed the "red flags" coupled with the allegations of GAAP and GAAS violations, the Amended Complaint includes several other allegations bearing on Mazars CPA's allegedly reckless auditing practices.

Plaintiff suggests that an inference that Mazars CPA was aware of the fraud can be made on account of the "magnitude of the transactions at issue." (Compl. ¶¶ 153-154). Specifically, "[d]uring the Class Period, almost all of the Company's purported revenue was derived from

business with the Big 3." (Id. ¶ 154). Thus, Plaintiff posits that "[f]rom the scale and obviousness of the fraud—involving almost all of the Company's revenue and where there were substantial disclosed red flags—it can be inferred that either: (1) Mazars CPA actually knew of the fraud, in which case its audit reports were knowingly false; or (2) Mazars CPA did not know of the fraud, which only could happen as a result of audit procedures that were so sub-standard that the auditors would have to have known they were sub-standard." (Pl's. Opp. Br. at 23).

The Amended Complaint also addresses the engagement history between Mazars CPA and the Company. (Compl. ¶ 150). Plaintiff allegess that Telestone engaged Mazars CPA as its outside auditor through fiscal years ending December 31, 2007-2009. (Id.). On July 9, 2009, the Company hired a different firm, QC CPA Group, LLC; however, that firm resigned on January 14, 2010. (Id.). Only four days later, Telestone again engaged Mazars CPA to perform its audits. (Id.). According to a Company representative, Mazars CPA was rehired because the Company "found that this new auditor [QC CPA Group] was not as familiar with our business and changes some of our ordinaries receivables as long term ones. Due to our high comfort level with our last time auditor, we switched back to Mazars and has [sic] been working to our traditional approved method of reporting receivables." (Id. ¶ 151).

Further, Plaintiff points to Telestone's lack of adequate sales records and refusal to supply the SEC with its sales contracts as additional evidence of a grossly deficient audit. (Compl. ¶¶ 155-158). Specifically, when, on June 26, 2013, the SEC requested, *inter alia*, "a schedule of [Telestone's] accounts receivable by year from January 1, 2009 through September 30, 2012," the Company's initial response was that it was not permitted, under its non-disclosure agreements, "to release any data or material that may lead to the disclosure of customer information." (Id. ¶ 156). Several months later, Telestone further responded to the SEC's request by stating that it "has

organized a 10 person finance working group since early September and spent 2 months trying to" comb through its project contracts to prepare a chart with the requested information. (Id. ¶ 157). Based upon this response, Plaintiff contends that "[t]he fact that Telestone needed ten people to work two months to provide a simple chart containing the name of the customer, the date of the sales contract, the amount due and other contract terms, and the reason, if any, for non-payment, demonstrates that Mazars had completely negated its auditing responsibilities." (Id. ¶ 158). According to Plaintiff, the requested information was "so basic that the lack of it should have been a red flag that Mazars picked up on during its audit." (Id.).

### d.  Discussion

Before the Court considers the above arguments for and against an inference of scienter, the standard for sufficiently pleading scienter in PSLRA actions bears repeating. When considering the sufficiency of pleadings as to scienter, a court "is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs*, 551 U.S. at 326. Further, a court must also consider "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even the 'most plausible of competing inferences." 551 U.S. at 322-324. "In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326. The Third Circuit has held that a plaintiff may meet the scienter requirement as to an outsider auditor by "'show[ing] that [the auditor]'s judgment at the moment exercised was sufficiently egregious such that a reasonable accountant reviewing the facts and figures should have concluded that [the company's] financial statements were misstated and

that as a result the public was likely to be misled.'" *Suprema*, 438 F.3d at 279 (quoting *In re Ikon*, 277 F.3d at 673).

Based on a review of the Amended Complaint and the parties' arguments as to the sufficiency of the allegations therein, the Court finds that "all of the facts alleged, taken collectively, give rise to a strong inference of scienter" that is "at least as strong as any opposing inference" offered by Defendant. *Tellabs*, 551 U.S. at 322, 326; *see also Ayaya*, 564 F.3d at 273. Among other circumstantial evidence of Mazar's CPA's scienter, Plaintiff has directed the Court to: allegations of specific GAAP and GAAS violations which are supported by specific allegations of "red flags" that Mazars CPA failed to heed in conducted its audits. These "red flags" include the Company's own admissions that doing business with its main clients, from whom it retains the vast majority of its business, was highly tenuous. Specifically, in its Form 10-Ks, Telestone admitted that "it experience[s] delays in payments" from the Big 3, that it has "limited bargaining leverage" with same, and that "enforceability of contracts in China, especially with governmental entities, is relatively uncertain." (Def's. Mov. Br. at 32-34). Despite these admissions by Telestone, Plaintiff argues that Defendant failed to take the steps required of an auditor to inquire further into the financial health of its client.

The Court is unwilling to disregard these "red flags" merely because they were publicly disclosed, as Mazars CPA contends is required. Defendant has not directed this Court to any case law in the Third Circuit or elsewhere, nor is the Court aware of any cases, holding that "red flags" that are disclosed to the public cannot, as a matter of law, result in an inference of scienter.[12]   In

---

[12] The case law Defendant cites does not stand for the general proposition that public disclosures, *ipso facto*, cannot serve as red flags of fraud that would give rise to an inference of scienter. Rather, in both cases cited by Defendant, the courts found that the claimed "red flags" did not support an inference of scienter where the "red flags" were plainly disclosed to the public, including investors and the SEC, and where in spite of these disclosures, no one discovered the fraudulent scheme. *See Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 Fed. App'x. 636, 641

fact, in *Suprema*, before reversing the district court's finding that plaintiffs had not sufficiently pled auditor scienter, the Third Circuit identified a handful of the thirty "red flags" listed in the plaintiffs' complaint, which included information that would have been available to the public. *Suprema*, 438 F.3d at 280 (identifying, among other "red flags", the fact that "Suprema posted growth that was radically disproportionate to the cheese industry as a whole" and that "[a]lthough Suprema was reporting rapid growth in production, it did not report corresponding increases in its labor force and the utilization of its production facilities."). Indeed, the Third Circuit credited these "red flags" as being among the "strong indicators" of auditor scienter. *Id.* Accordingly, the Court finds Mazars CPA's argument that these "red flags" are an inadequate indicia of auditor scienter on account of their publicized nature is without merit.

Nor is the Court persuaded by Defendant's argument that the allegations of scienter are materially weak. For example, while the Court agrees with Mazars CPA that the inquiry should revolve around the "red flags" available to Mazars CPA at the time that it issued its Audit Reports, and that Plaintiff's reliance on the SEC communications are problematic because, among other issues, these admissions post-date those Reports, the Court finds that by Defendant's own representations, the same admissions were also made by Telestone in its Form 10-Ks, which were published contemporaneously with Mazars CPA's Reports. Thus, it can be inferred, based on the published Form 10-Ks, that the Company's auditor was aware of its contents.

---

(2d Cir. July 10, 2012); *In re Longtop Financial Tech. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012). For example, in *Meridian Horizon Fund, LP v. KPMG (Cayman)*, an unpublished case involving the Bernie Madoff scheme, the Second Circuit agreed with the district court's finding that "the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals." 487 Fed. App'x at 640-41. Likewise, in *In re Longtop Financial Tech. Ltd. Sec. Litig.*, the Southern District of New York stated that, "despite the disclosure . . . neither the SEC nor the investing public recognized Longtop's alleged fraud." 910 F. Supp. 2d at 577.

The Court is also cognizant of Defendant's position that there are no allegations that Mazars CPA lacked a genuine belief that its statements were truthful. (Def's. Mov. Br. at 26). However, because Plaintiff's theory of scienter is premised upon the "shoddy audit" theory, he is not required to show that Mazars CPA acted in bad faith in preparing its Audit Reports. *See Suprema*, 438 F.3d at 279 ("A showing that an auditor *either* lacked a genuine belief that its representations were supported by adequate information *or* engaged in auditing practices so shoddy that they amounted at best to a 'pretended audit' has traditionally supported a finding of liability, even in the face of assertions of good faith.") (emphasis added). In any event, Defendant points to meeting minutes included in the SEC correspondence incorporated into the Amended Complaint, stating that "Mazars believes that Telestone's revenue recognition practices were consistent with GAAP and that the Company should be able to recognize on an 'accrual basis' and not on a 'cash basis' as requested by the SEC." (Def's. Mov. Br. at 27-28) (citing Compl. ¶ 56). Defendant also contends that the lengthy back-and-forth between Telestone and the SEC, in which Telestone explained why it believed its revenue was properly recognized, demonstrates that the Company itself acted in good-faith in its financial reporting. (Id. at 27). As Mazars CPA itself explains, these communications, including the meeting minutes dated March 13, 2013, are not relevant to the issue of its scienter, or, more specifically, whether it acted recklessly in issuing clean audit reports, because they post-date the Audit Reports in question.

Lastly, while the Court recognizes Defendant's position that the increases in DSOs and accounts receivables do not raise an inference of wrongdoing, but rather are a part of the Company's business, the Court finds that Plaintiff's analysis of these numbers as indicative of the Big 3's unwillingness to satisfy its contractual obligations is an equally compelling argument giving rise to scienter.

34

In sum, at this stage in the litigation, Plaintiff's securities fraud claim against Mazars CPA survives dismissal.  Plaintiff has sufficiently pled scienter as to the auditing firm by identifying: (1) allegedly suspect increases in accounts receivables and DSOs; (2) specific "red flags" the Plaintiff argues Mazars CPA had a duty to explore prior to issuing clean audit reports; (3) specific GAAS and GAAP violations; (4) and additional circumstantial evidence that Mazars CPA was not fulfilling its due-diligence in its audits of Telestone.

### D. Plaintiff Has Not Affirmatively Pled Himself out of Court on Statute of Limitations Grounds

A securities fraud claim is timely if it is filed by the earlier of "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation. . . . ."  28 U.S.C. § 1658(b)(1).  Courts determine the onset of the statute of limitations period in one of two ways: "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 273 (3d Cir. 2013) (quoting *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010)).  In regards to a securities action filed pursuant to Section 10(b), the Supreme Court has held that "the 'facts constituting the violation' include the fact of scienter, 'a mental state embracing intent to deceive, manipulate, or defraud." *Merck*, 559 U.S. at 637 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12 (1976)).

Mazars CPA argues that Plaintiff's claim is time-barred because Plaintiff had discovered the underlying alleged fraud prior to February 2, 2013—over two years prior to the February 2, 2015 initiation of this action.  (Def's. Mov. Br. at 36-40).  Specifically, Defendant notes that the information disclosed in the Company's 2012 Quarterly Announcements relating to the increase in the Company's DSOs and accounts receivable support Plaintiff's claims of loss causation as

well as scienter. (Def's. Mov. Br. at 36). Thus, Defendant alleges that these 2012 disclosures, in addition to a 2011 investigation by Plaintiff's attorneys' law firm, suggest that Plaintiff discovered the relevant facts well over two years prior to the initiation of this action. (Id.). Further, Mazars CPA contends that Plaintiff's claim that the full truth of the Company's financial health was not revealed until the February 19, 2014 publication of the SEC communications is unavailing in light of Plaintiff's alleged failure to "identify any facts revealed in the SEC correspondence that were not previously known." (Def's Reply Br. at 14).

Plaintiff maintains that the statute of limitations did not begin to run until the February 2014 publication of the SEC communications because "a reasonably diligent investor would have had no reason to believe that fraud on the part of Telestone was probable, and not merely possible" on account of Mazars CPA's assurances that the Company's revenue recognition was in accordance with GAAP. (Pl's Opp. Br. at 28). Alternatively, Plaintiff suggests that April 17, 2013, could have been "the first date that information regarding the falsity of Telestone's financial condition was revealed when the Company disclosed that it was not able to obtain certain necessary financial records needed to complete the Company's audit." (Id. at n. 21). Notably, this is the same date that the Company was delisted from NASDAQ, and therefore the cut-off date for the class-period.

A motion to dismiss on statute of limitations grounds should be denied unless it is apparent from the face of the complaint that the claims are time-barred. *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011); *see also Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) ("Pursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.") (quotations and citations omitted). As the Third Circuit has recently stated with respect to the discovery rule:

> [W]hile a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense. This distinction comes to the fore here, where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply.

*Schmidt v. Skolas*, 770 F.3d 241, 251 (3d. Cir. 2014) (internal citations omitted) (finding the district court erred in requiring plaintiff to "affirmatively show that he exercised 'reasonable diligence' with respect to discovering his injury" at the motion to dismiss stage). Stated differently, "[i]f the [statute of limitations] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

In light of this standard, the Court finds that Plaintiff has not pled himself out of court because his allegations do not affirmatively demonstrate on the face of the Amended Complaint that his claims are necessarily time-barred. Rather, there remains a factual dispute as to the date that Plaintiff discovered or could have discovered the fraudulent conduct alleged, and the Court may "not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt*, 770 F.3d at 251. Accordingly, the Court will not dismiss Plaintiff's claims as time-barred at this time.

## CONCLUSION

For the reasons stated herein, Mazars CPA's motion to dismiss Plaintiff' Amended Complaint is hereby denied. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:   December 21, 2015

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE