## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAO SUN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DAQING HAN, XIAOLI YU, HONG LI, MING LI, LIAN ZHU, GUANGHUI CHENG, GUOBIN PAN, GUANGJUN LU, YUANPIN HE, MAZARS CPA LIMITED, MAZARS Scrl, WEISERMAZARS LLP, and TELESTONE TECHNOLOGIES CORPORATION,<br><br>Defendants. | Case No. 2:15-cv-00703-JMV-MF |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

James E. Cecchi
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Robert Prongay
Casey Sadler
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150

*Attorneys for Lead Plaintiff Bin Qu*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... i

INTRODUCTION ......................................................................................... 1

BACKGROUND .......................................................................................... 4

ARGUMENT ............................................................................................. 6

I.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
        APPROVAL ...................................................................................... 6

        A.      The Standards for Preliminary Approval ................................................ 6

        B.      The Settlement is Procedurally Fair ................................................... 8

        C.      The Proposed Settlement is Substantively Fair ......................................... 9

        D.      The Proponents of the Settlement Are Experienced In Similar Litigation .......... 10

II.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ........................ 11

        A.      The Settlement Class Meets the Requirements of Rule 23(a) ........................ 12

                1.   Numerosity ................................................................... 12

                2.   Commonality .................................................................. 13

                3.   Typicality ...................................................................... 14

                4.   Adequacy ..................................................................... 15

        B.      The Settlement Class Meets the Requirements of Rule 23(b)(3) ................... 16

                1.   Common Questions of Law and Fact Predominate ............................ 16

                2.   A Class Action Is Superior .................................................... 17

                3.   Proposed Class Counsel Satisfy Rule 23(g) ................................... 18

III.    NOTICE TO THE CLASS SHOULD BE APPROVED ................................... 18

CONCLUSION .......................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Alves v. Main,*
No. 01-789 (DMC), 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ................................................8

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) ...........................................................................................*passim*

*Bernhard v. TD Bank,*
No. 08-4392, 2009 WL 3233541 (D.N.J. Oct. 5, 2009) .......................................8, 12

*Bussie v. Allmerica Fin. Corp,*
50 F. Supp. 2d 59 (D. Mass. 1999) ................................................................10

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001) ............................................................................7

*In re Cigna Corp. Sec. Litig.,*
No. 02-8088, 2006 U.S. Dist. LEXIS 58560 (E.D. Pa. Aug. 18, 2006) .................13

*In re DaimlerChrysler AG Sec. Litig.,*
216 F.R.D. 291 (D. Del. 2003) .....................................................................14

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir. 2010).............................................................................6

*Engel v. Scully & Scully, Inc.,*
279 F.R.D. 117 (S.D.N.Y. 2011) ...................................................................12

*Evans v. Jeff D.,*
475 U.S. 717 (1986)........................................................................................7

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995).........................................................................6, 8

*Gen. Tel. Co. of the Southwest v. Falcon,*
457 U.S. 147 (1982)......................................................................................14

*Hochstadt v. Boston Scientific Corp.,*
708 F. Supp. 2d 95 (D. Mass. 2010) ...............................................................11

*In re Honeywell Int'l Inc. Sec. Litig.,*
211 F.R.D. 255 (D.N.J. 2002) .......................................................................13

*In re Initial Pub. Offering Sec. Litig.,*
243 F.R.D. 79 (S.D.N.Y. 2007) ...............................................................14, 16

*Johnston v. HBO Film Management, Inc.*,
    265 F.3d 178 (3d Cir. 2001)..................................................................................13

*Jones v. Commerce Bancorp Inc.*,
    No. 05-5600 (RBK), 2007 WL 2085357 (D.N.J. July 16, 2007)........................................7, 19

*In re LG/Zenith Rear Projection TV Class Action Litig.*,
    No. 06-5609 (JLL), 2009 U.S. Dist. LEXIS 13568 (D.N.J. Feb. 18, 2009) .....................12, 14

*In re Lucent Techs., Inc. Sec. Litig.*,
    307 F. Supp. 2d 633 (D.N.J. 2004) ........................................................................13, 15, 17

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) ..................................................................................17

*Neale v. Volvo Cars of N. Am., LLC*,
    No.10-cv-04407 (DMC)(JAD),  2011 U.S. Dist.  LEXIS  39154 (D.N.J. Apr.
    11, 2011) ......................................................................................................16

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)..................................................................................12

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012) ..................................................................................7

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)..................................................................................17, 19

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................................12

*Ramirez v. Lycatel Group*,
    No. 07-5533, 2009 U.S. Dist. LEXIS 119630 (D.N.J. Dec. 8, 2009) .....................................11

*In re Schering-Plough Corp.*,
    No. 8-397 (DMC)(JAD),  2012 U.S. Dist.  LEXIS  138078 (D.N.J. Sept. 25,
    2012) ......................................................................................................15, 16

*Smith v. Prof'l Billing & Mgm't Servs., Inc.*,
    No. 06-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) .......................................................7

*Sosna v. Iowa*,
    419 U.S. 393 (1975)..................................................................................15

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)..................................................................................13

*Sullivan v. DB Investors, Inc.*,
667 F.3d 273 (3d Cir. 2010) *(en banc)* ...................................................................6, 7

*Szczubelek v. Cendant Mortgage Corp.*,
215 F.R.D. 107 (D.N.J. 2003) ......................................................................................12

*Thomas v. NCO Fin. Sys.*,
No. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) .................................7, 9

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ...................................................................................................13

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004).............................................................................................6

**Statutes**

PSLRA ...........................................................................................................................4, 19

PSLRA, 15 U.S.C. 78u-4(a)(7) ........................................................................................19

Securities Exchange Act of 1934 Sections 10(b) and 20(a) ...........................................4

Securities Exchange Act of 1934 Section 21D(a)(7), 15 U.S.C. § 78u-4(a)(7)........................4, 19

**Other Authorities**

Federal Rules of Civil Procedure Rule 23 ..............................................................*passim*

Court-appointed Lead Plaintiff, Bin Qu ("Lead Plaintiff") individually and on behalf of the putative class in this action (the "Settlement Class"), has entered into an agreement (the "Settlement") with defendant Mazars CPA Limited ("Mazars CPA") to settle all claims in this Action against Mazars CPA for $1.25 million.[1]   Lead Plaintiff respectfully moves for an order preliminarily approving the Settlement, certifying the Settlement Class, and appointing Lead Plaintiff as class representative and the law firms of Glancy Prongay & Murray LLP and Carella, Byrne, Cecchi, Olstein, Brody & Agnello P.C. (together, "Lead Counsel"), as class counsel for purposes of the Settlement, approving the form and manner of providing notice of the Settlement to the Settlement Class, and setting a hearing at which the Court will consider final approval of the Settlement, approval of the plan of allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.   Because the Stipulation, a copy of which is attached as Exhibit 1 to the Declaration of James E. Cecchi, was negotiated at arm's length by experienced counsel and is reasonable and appropriate, Lead Plaintiff respectfully requests the Court preliminarily approve the Settlement.

## INTRODUCTION

Lead Plaintiff has reached an agreement with Mazars CPA, the auditor of Telestone Technologies Corporation ("Telestone" or the "Company"), to settle this Action in exchange for a $1.25 million cash payment (the "Settlement Amount") by Mazars CPA to be deposited into an escrow account for the benefit of the Settlement Class as further defined in the Stipulation.   By any measure, the Settlement represents an outstanding result.   If approved by the Court, the $1.25 million will provide substantial relief to Settlement Class Members.   The significant

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated February 8, 2017 (the "Stipulation").

benefit the proposed Settlement will provide the Class, if approved, is particularly noteworthy when considered against the risk that the Settlement Class might recover less (or nothing) if the action were litigated through class certification, dispositive motions, trial, and any likely appeals that would follow – a process that could last many years. By way of example only, Lead Plaintiff faces additionally risks of establishing liability, including scienter, since Mazars CPA is an auditor of Telestone, and discovery would be extremely challenging since Telestone was long ago delisted from a national exchange and all of its operations and offices are located in the People's Republic of China.

The Settlement is the direct result of the significant efforts undertaken by Lead Plaintiff and Lead Counsel in prosecuting and investigating this Action.   Among other things, Lead Plaintiff, through Lead Counsel: (i) conducted a thorough investigation into the Class's claims, including the retention of accounting and damages experts; (ii) drafted a detailed class action complaint; (iii) briefed and prevailed on Mazars CPA's Motions to Dismiss; (iv) conducted a Rule 26(f) conference and exchanged initial disclosures; (v) negotiated a joint discovery plan, a protective order, and an ESI protocol governing the production of electronic documents; (vi) drafted and exchanged extensive mediations statements; and (vii) attended a mediation facilitated by JAMS mediator Jed Melnick, Esq.

Accordingly, at the time the Settlement was reached, Lead Plaintiff and Lead Counsel had a thorough understanding of the claims asserted and the risks of continued litigation and had an understanding of the evidence supporting their claim that usually does not exist so early in comparable securities litigations.   Significantly, the Settlement was reached only after protracted, arm's length negotiations, including negotiations facilitated at mediation overseen by Mr. Melnick, a preeminent mediator with noteworthy expertise facilitating the resolution of complex

securities litigation.   As a result of negotiations that occurred during and after the mediation, the parties reached agreement on the terms set forth in the Stipulation.

Lead Plaintiff, who had lost more than $2 million on his investments in Telestone securities, closely monitored and participated in this litigation from the outset, including during the settlement negotiation process, and recommended that the Settlement be approved.   Further, Lead Counsel, who have extensive experience in prosecuting securities class actions, strongly believe that the Settlement is in the best interests of the Class.

At the final settlement hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate under all of the circumstances surrounding the Action.   At this time, however, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be disseminated to the Settlement Class and the Settlement Hearing may be scheduled.

Lead Plaintiff respectfully requests that this Court enter the [Proposed] Order Preliminarily Approving Settlement, and Providing for Notice (the "Preliminary Approval Order"), attached as an exhibit to the Stipulation of Settlement, which has been agreed upon by the Settlement Parties.  The Preliminary Approval Order, among other things, will:

(i)     Preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)    Find that the proposed Settlement Class meet all of the requirements of Rules 23(a) and 23(b)(3) and certify the Settlement Class for settlement purposes;

(iii)   Approve the form and content of the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Notice"), the Claim Form, the Summary Notice, and the Postcard Notice attached as Exhibits A-1, A-2, A-3 and A-4 to the Preliminary Approval Order, respectively;

(iv)     Find that the procedures established for distribution of the Postcard Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA; and

(v)      Schedule the Settlement Hearing and set deadlines and procedures for: disseminating notice; for objections to the Settlement, the proposed Plan of Allocation, Lead Counsel's motion for attorneys' fees and payment of litigation expenses, or Lead Plaintiff's requests for reimbursement of costs and expenses related to their representation of the Class; and submitting papers in support of final approval of the Settlement.

## BACKGROUND

On February 2, 2015, this Action was filed as a class action on behalf of purchasers of Telestone securities.  By Order dated May 14, 2015 (Dkt. No. 18), this Court appointed Bin Qu as Lead Plaintiff, and approved his selection of Glancy Prongay & Murray LLP and Carella, Byrne, Cecchi, Olstein, Brody & Agnello P.C. to serve as Lead Counsel.

On August 27, 2015, Lead Plaintiff filed the Amended Class Action Complaint for Violation of the Federal Securities Laws and Demand for Jury Trial (the "Complaint"), on behalf of purchasers of Telestone securities between March 31, 2010 and April 16, 2013, inclusive, against Daqing Han, Xiaoli Yu, Hong Li, Ming Li, Lian Zhu, Guanghui Cheng, Guobin Pan, Guangjun Lu, Yuanpin He, Mazars CPA Limited, Mazars Scrl, WeiserMazars LLP, and Telestone.   The Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  Dkt. No. 28.

On October 2, 2015, Mazars CPA filed a Motion to Dismiss the Complaint, in which it argued that the Complaint failed to allege particularized facts sufficient to demonstrate that Mazars CPA made a false statement or acted with scienter.  Additionally, Mazars CPA asserted

4

that the claims at issue were barred by the two-year statute of limitations for securities claims. *See* Dkt. No. 30. On November 17, 2015, Lead Plaintiff filed his opposition to the Motion to Dismiss, in which he argued, among other things, that the Complaint adequately identified Mazars CPA's false statement and articulated why they were false, and that the Complaint sufficiently alleged that Mazars CPA acted with scienter. Additionally, Lead Plaintiff argued that the claims were not barred by the statute of limitations. Dkt. No. 38. On December 24, 2015, Defendant Mazars CPA filed a reply brief in support of its Motion to Dismiss. Dkt. No. 41. On February 21, 2015, the Court issued an opinion and order denying Mazars CPA's Motion to Dismiss. Dkt. Nos. 43-44.[2]

On January 21, 2016, Defendant Mazars CPA filed its Answer to the Complaint. Dkt. No. 51. On February 23, 2016, this action was reassigned from Judge Jose L. Linares and Magistrate Judge Joseph A. Dickson to Judge John Michael Vazquez and Magistrate Judge Mark Falk for all further proceedings. Dkt. No. 52. On March 11, 2016, Lead Plaintiff and Mazars CPA delivered letters to the Court summarizing the relevant facts, their legal positions, and the status of the case.

Thereafter, counsel for Lead Plaintiff and Mazars CPA conducted a Rule 26(f) conference, exchanged initial disclosures, and negotiated a joint discovery plan, a protective order, and an ESI protocol governing the production of electronic documents. During these discussions, Lead Plaintiff and Mazars CPA agreed to engage in private mediation to discuss the possibility of settlement.

---

[2] On January 19, 2016, in response to a letter from Lead Counsel, the Court dismissed without prejudice Telestone, certain of Telestone's officers and directors, Mazars Scrl and Weisermazars LLP. Dkt. No. 50.

On June 10, 2016, Lead Plaintiff and Mazars CPA exchanged and submitted to the mediator, Jed D. Melnick, detailed mediation statements which addressed the issues of liability and damages. On June 22, 2016, the Settling Parties engaged in a full-day mediation at JAMS in New York City, New York. The session ended without any agreement being reached.

Over the course of the next several weeks, the Mediator conducted further discussions with the Lead Plaintiff and Mazars CPA, which culminated in an agreement in principle to settle the Action. Thereafter, the Settling Parties formalized the material terms of a settlement of this Action and proceeded to draft the Stipulation and its exhibits.

## ARGUMENT

## I. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Standards for Preliminary Approval

The settlement of complex litigation is strongly favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Stipulation of Settlements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") These principles were most recently reinforced forcefully by the Third Circuit in *Sullivan v. DB Investors, Inc.*, 667 F.3d 273, 311 (3d Cir. 2010) *(en banc)*. There, the Third Circuit sitting *en banc* recognized, especially in class actions, the "strong presumption in favor of voluntary Stipulation of Settlements." *Id.*

6

Rule 23(e) requires judicial approval for the compromise of class actions. *See Amchem,* 521 U.S. at 617; *Evans v. Jeff D.,* 475 U.S. 717, 726 (1986); *Sullivan,* 667 F.3d at 295; *In re Processed Egg Prods. Antitrust Litig.,* 284 F.R.D. 249, 259 (E.D. Pa. 2012). "Review of a proposed class action settlement consists of a two-step process: preliminary fairness approval and a subsequent fairness hearing." *Jones v. Commerce Bancorp Inc.,* No. 05-5600 (RBK), 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). When reviewing a proposed settlement in the context of preliminary approval, the Court's function is to make a "preliminary evaluation of the fairness of the settlement prior to directing that notice be given to members of the settlement class." *Id.*

Preliminary approval is granted so long as the settlement was arrived at through a fair process and the terms of the settlement are within the "range of *possible* approval." *Thomas v. NCO Fin. Sys.,* No. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) (citing *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (emphasis added). It is respectfully submitted that the Settlement satisfies the requirements for preliminary approval.

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Prof'l Billing & Mgm't Servs., Inc.,* No. 06-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007). Likewise, there is a preliminary presumption of fairness to a class action settlement under review when the court finds that: "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[3] *In re*

---

[3] Since notice to the Settlement Class has not yet been issued, this factor can only be assessed preliminarily. There are currently no known objectors to any aspect of the Settlement, and Lead

*(Cont'd)*

7

*Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001); *In re Gen. Motors Corp.*, 55 F.3d at 785.  There should be no serious dispute about whether the Settlement is the product of arm's-length negotiations and provides a substantial benefit to the Settlement Class.

If a preliminary evaluation of fairness is made, the second step is conduct a formal fairness and final approval hearing after notice has been disseminated to the Settlement Class.  *In re General Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) (distinguishing between the evaluations conducted during preliminary approval and final approval).  At this time, Lead Plaintiff respectfully requests that the Court take the first step in the settlement process and grant preliminary approval of the Settlement so that notice can be given to the Class.

### B.       The Settlement is Procedurally Fair

The negotiations that resulted in the proposed Settlement were fairly conducted by highly qualified counsel who endeavored to obtain the best possible result for their clients and the Settlement Class.  When counsel for the parties engage in diligent arm's length negotiations with the assistance of a mediator, a settlement is generally entitled to a presumption of fairness. meriting preliminary approval.  *See Bernhard v. TD Bank*, No. 08-4392, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (preliminarily approving settlement and noting that the proposed settlement, which was achieved with the assistance of a mediator, appears to be the result of serious negotiation between the parties); *see also Alves v. Main*, No. 01-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in

---

Plaintiff—a sophisticated investor who has lost more than $2 million in Telestone securities—wholly endorses the Settlement as fair, adequate and reasonable.  Class Members will be given an opportunity to voice their opinions of the Settlement in connection with the Settlement Hearing, when the Court will make its final determination of the fairness, reasonableness and adequacy of the Settlement.

settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties." (internal quotation omitted)).  Such is the case here.  The Settlement was achieved only after arm's-length negotiations – including mediation with an accomplished mediator, Mr. Melnick.

Further, while the parties did not engage in substantive discovery, significant other fact finding occurred with respect to the allegations in the Complaint, which confirm that Lead Counsel was adequately informed concerning the relative strengths and weaknesses of their case. Indeed, Lead Counsel conducted a wide-ranging and extensive investigation into Lead Plaintiff's claims against Defendants, including reviewing substantial public information concerning the factual bases for Lead Plaintiff's claims and retaining damages and accounting experts to gain further understanding on the complex accounting treatments and transactions that were the basis for the Complaint.

### C.    The Proposed Settlement is Substantively Fair

A proposed settlement is substantively fair, for preliminary approval purposes, if it falls within the "range of *possible* approval." *Thomas*, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002).  The proposed Settlement creates a very substantial cash payment of $1,250,000 in cash, which is an excellent result for the Settlement Class especially in light of the risks posed by continued litigation.  The benefit of the present proposed Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved after trial and likely appeals, and possibly years into the future.  Moreover, this is just a partial settlement with the Company's auditor.  Lead Plaintiff plans to continue litigating the Action against the remaining Telestone executives that have not been dismissed.

The claims alleged by the Settlement Class involve numerous and complex factual issues. If the Action were to proceed into discovery and eventually to class certification, summary judgment and trial, Lead Plaintiff would have had to overcome the numerous defenses asserted by Mazars CPA. Among other things, the Settlement Parties disagree about: (i) the sufficiency of Mazars CPA's audit of Telestone; (ii) whether Mazars CPA acted with the requisite mental state; (iii) whether the alleged misstatements and omissions were false or misleading; (iv) the appropriate measure of damages; (v) when the market was fully cured of the alleged misstatements and omissions; (vi) and Mazars CPA's relative fault and liability for the conduct alleged in the Complaint.

In addition, Lead Plaintiff is confident that even if they were to prevail on class certification and on liability and damages at trial, Mazars CPA would appeal these decisions and any eventual verdict. At best, the entire process would take many years to complete, and at worst, the Class may receive no recovery at all. This Settlement allows the Settlement Class to recover now, and without incurring any additional risks or costs.

**D.     The Proponents of the Settlement Are Experienced In Similar Litigation**

"The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsels, who are experienced attorneys, and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate." *Bussie v. Allmerica Fin. Corp*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999). Lead Counsel have significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. Lead Counsel has been an integral part of many settlements of this nature and in their estimation this settlement is an excellent result because it provides the Settlement Class with genuine relief under difficult legal and practical circumstances. It is Lead Counsel's informed opinion that

10

given the risks and uncertainties inherent in complex securities class action litigation, the proposed settlement is fair, reasonable and adequate and in the best interest of the Settlement Class.

Counsel for Mazars CPA similarly have extensive expertise from a long track record in securities class actions and have vigorously defended its client throughout the course of the Action. Given that the Settling Parties are represented by well-respected counsel experienced in securities class action litigation who have vigorously litigated the action, this factor supports preliminary approval of the Settlement. *See Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010).

## II. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

One of this Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997); *see also, e.g., Ramirez v. Lycatel Group*, No. 07-5533, 2009 U.S. Dist. LEXIS 119630, at **3-4 (D.N.J. Dec. 8, 2009) (preliminarily approving settlement and conditionally certifying class for settlement purposes). Rule 23(a) sets forth four prerequisites to class certification applicable to all class actions, including classes for purposes of settlement: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. Fed. R. Civ. P. 23(a); *see also Amchem Prods.*, 521 U.S. at 613. The proposed class must also meet one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23(b); *see also* Manual for Complex Litigation, §21.633 (4th ed. 2004).

The proposed "Settlement Class" is defined in the Settlement as: all persons and/or entities who purchased Telestone common stock between March 31, 2010 and April 16, 2013, inclusive (the "Class Period), and were damaged thereby. In certifying a class for settlement

purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.[4]   Although not mentioned in Rule 23, some courts have held that a certifiable class must be ascertainable – that is, the class's membership must be "defined by identifiable objective criteria." *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 128 (S.D.N.Y. 2011).   Here, as demonstrated below, certification is appropriate because the proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

**A.      The Settlement Class Meets the Requirements of Rule 23(a)**

**1.      Numerosity**

First, Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable." *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001).   Impracticability does not mean impossibility.   *See In re LG/Zenith Rear Projection TV Class Action Litig.*, No. 06-5609 (JLL), 2009 U.S. Dist. LEXIS 13568, at *11 (D.N.J. Feb. 18, 2009).     Rather, it means that joinder would be "extremely difficult or inconvenient." *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003) (citing *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993)). While there is no threshold number necessary to satisfy the numerosity requirement, courts in this Circuit generally hold that "classes of close to one hundred members are sufficient." *Bernhard*, 2009 WL 3233541, at *3.   Courts have also "recognized a presumption that the

---

[4]   Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995).   "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

numerosity requirement is satisfied when a class action involves a nationally traded security." *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2006 U.S. Dist. LEXIS 58560, at *6 (E.D. Pa. Aug. 18, 2006).

Here, Telestone had more than 12 million shares of common stock outstanding during the Class Period and its stock was actively traded on the NASDAQ Stock Market during the relevant time period. *See In re Honeywell Int'l Inc. Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002) (recognizing that numerosity is "obviously" present where the securities issuer is "a large and prominent publicly held company, and its SEC filings confirm that its shareholders number in the thousands"). Lead Plaintiff believes that beneficial holders of Telestone common stock number in the thousands and are geographically located throughout the United States, making joinder of all Class Members impractical. The numerosity requirement is therefore, easily met.

### 2. Commonality

Second, Rule 23(a)(2) requires the identification of a common contention, one "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). Moreover, courts look to the "common nucleus of operative facts" to determine predominance of common questions. *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004) (citing *Safran v. United Steelworkers of Am., AFL-CIO*, 132 F.R.D. 397, 401 (W.D. Pa. 1989)).

Here, questions which are common to the proposed Settlement Class include, among others, whether the federal securities laws were violated by Mazars CPA's acts as alleged in the Complaint and to what extent the members of the Class have sustained damages and the proper measure of damages. Federal securities cases like this one easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 85 (S.D.N.Y. 2007); *see also In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 296 (D. Del. 2003) ("questions of misrepresentation, materiality and scienter are the paradigmatic common question[s] of law or fact . . . ," and therefore, "the commonality requirement has been permissively applied in the context of securities fraud class actions").

In short, because the core complaint of all Settlement Class Members is that they purchased Telestone common stock at artificially inflated prices and suffered losses as a result of the alleged fraud, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.     Typicality

Third, Rule 23(a) requires that claims of the class representative be typical of the claims of other Settlement Class Members. *See* Fed. R. Civ. P. 23(a)(3); *see also Amchem Prods.*, 521 U.S. at 625 (common issues test readily met in securities fraud cases). As with commonality, the test for typicality is not demanding.[5] "Where class members all allegedly suffered from the same course of conduct, and the legal theories for all members are similar, typicality will generally be satisfied." *In re LG/Zenith*, 2009 U.S. Dist. LEXIS 13568, at *13-14. Moreover, the requirement is satisfied as long as the lead plaintiff, the other representatives, and the Settlement

---

[5] The Supreme Court has recognized that the commonality and typicality analyses "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

14

Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." *Lucent*, 307 F. Supp. 2d at 640.

Lead Plaintiff's claims and the claims of the prospective Settlement Class arise out of the same alleged conduct by the Mazars CPA, and the proof Lead Plaintiff would be required to present to establish its claims would also prove the claims of the rest of the Settlement Class. Therefore, Lead Plaintiff's claims are typical of the claims of the Class, and thus, Rule 23(a)(3) is satisfied.

### 4. Adequacy

Fourth, Rule 23(a)(4) requires that the class plaintiff "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by two standards. First, the representatives must not have interests that are antagonistic to the interest of other members of the class. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Lucent*, 307 F. Supp. 2d at 641. Second, class counsel must be qualified, experienced and able to conduct the litigation. *Id.* Both requirements are satisfied here for the Settlement Class.

Here, as described above, Lead Plaintiff—the proposed Settlement Class Representative—has claims which are typical of and coextensive with those of the Class. Lead Plaintiff, like all Class Members, purchased Telestone common stock at artificially inflated prices during the Class Period as a result of the alleged materially false and misleading statements, and was allegedly damaged thereby. *See In re Schering-Plough Corp.*, No. 8-397 (DMC)(JAD), 2012 U.S. Dist. LEXIS 138078, at *21 (D.N.J. Sept. 25, 2012) ("Further, when Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and seek similar damages for similar injuries, the adequacy requirement can be met.") (citations omitted). In addition, Lead Counsel have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and are qualified

and able to conduct this litigation, as the Court recognized when appointing them lead counsel for the Settlement Class.[6]  Thus, Lead Plaintiff is an adequate representative of the Settlement Class, and its counsel is qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3)

Certification under Rule 23(b)(3) requires a showing that "questions of law or fact predominate over any questions affecting only individual members," and the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3) – two requirements referred to as "predominance" and "superiority." *Amchem Prods.*, 521 U.S. at 615.  However, the manageability concerns of Rule 23(b)(3) are not at issue in settlement classes. *Id.* at 593.  Certification of the Class will serve these purposes.

#### 1.  Common Questions of Law and Fact Predominate

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Schering-Plough Corp.*, 2012 U.S. Dist. LEXIS 138078, at *22-23 (citation omitted).  Further, "[i]t requires more than a common claim . . . rather, issues common to the class must predominate over individual issues." *Neale v. Volvo Cars of N. Am., LLC*, No.10-cv-04407 (DMC)(JAD), 2011 U.S. Dist. LEXIS 39154, at *5 (D.N.J. Apr. 11, 2011) (citations omitted).  Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages. *See Initial Pub. Offering*, 243 F.R.D. at 92.  As the Supreme

---

[6]  Lead Counsel has and will continue to fairly and adequately represent the interests of the Settlement Class.  Accordingly, Lead Counsel should be appointed as lead counsel for the Settlement Class under Rule 23(g).

Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*

*Prods*, 521 U.S. at 625.

Here, the same alleged course of conduct forms the basis of all the Settlement Class Members' claims.   There are numerous common issues relating to the liability which predominate over any individualized issues.   Predominance is clearly met here given the number of common issues described above.

### 2.    A Class Action Is Superior

The Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998); *see* Fed. R. Civ. P. 23(b)(3) (listing four considerations relevant to this determination).  Here, any interests of Settlement Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism for fairly and efficiently adjudicating the claims of the large number of purchasers of Telestone common stock.   Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs.  *See Lucent*, 307 F. Supp. 2d at 641 ("Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'" (citing *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir. 1985)); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek

17

recovery is often not feasible'") (quoting *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747, at *14 (S.D.N.Y. Mar. 6, 2008)) (alterations in original).

The scope and complexity of Lead Plaintiff's claims, together with the high cost of individualized litigation, make it unlikely that the vast majority of the Settlement Class Members would be able to obtain relief without class certification. Moreover, it is clearly desirable to concentrate the claims of all Settlement Class Members in this forum, and Lead Plaintiff does not foresee any difficulties in the management of this Action as a class action. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied. Thus, there are no issues which would prevent the Court from certifying this Settlement Class for settlement purposes and appointing Lead Plaintiff as Class Representative.

### 3.    Proposed Class Counsel Satisfy Rule 23(g)

Rule 23(g) governs appointment of class counsel. Not only has Lead Counsel vigorously prosecuted this case, Lead Counsel also devoted significant time and effort achieving this highly favorable Settlement for the Settlement Class. Lead Counsel have significant experience in securities litigation and class actions, including settlements thereof, which makes these firms particularly well-suited to serve as counsel for the Settlement Class.

## III.    NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the proposed Preliminary Approval Order, Lead Plaintiff will notify Settlement Class Members of the Settlement by mailing the Postcard Notice to all Settlement Class Members who can be identified with reasonable effort. The Postcard Notice provides information to the Settlement Class regarding the Settlement Hearing, the objection and request for exclusion deadlines, and the website that contains the Notice and Claim Form. The proposed Notice has been carefully drafted to contain all necessary information. All of the information is

provided in plain language and in a format that is easily accessible to the reader. The notices clearly advise recipients of their legal rights and obligations, including that they can object to any portion of the Settlement, exclude themselves from the Settlement, or submit a Claim Form to share in their *pro rata* portion of the Settlement.

The Settlement Notice satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating the amount of the Settlement on both an aggregate and average per share basis; providing a brief statement explaining the reasons why the Settling Parties are proposing the Settlement; stating the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7). The proposed Preliminary Approval Order further requires Lead Counsel to cause the Summary Notice to be published in *Investor's Business Daily* and posted on *PR Newsire*. Lead Counsel will also post a copy of the Settlement Notice on the settlement website, *www.TelestoneSettlement.com*.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. 78u-4(a)(7). Together the Postcard Notice, Notice and Settlement Notice "provide all the required information concerning the class members' rights and obligations under the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 328 (3d Cir. 1998). The manner of providing notice, which includes the dissemination of the Postcard Notice by mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Jones*, 2007 WL

19

2085357, at \*5 ("the proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members").

In connection with preliminary approval of the Settlement, the Settling Parties are requesting that the Court establish dates by which notice of the Settlement will be distributed to Settlement Class members, dates by which shareholders may comment on the Settlement, and a date on which the Court will hold a final Settlement Hearing. The Settling Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members, and creation of Settlement website from which Notice and Claim Form can be downloaded ("Notice Date") | 20 business days after entry of Preliminary Approval Order[7] |
| Deadline for publishing the Summary Notice | 10 business days after the Notice Date |
| Deadline for filing of papers in support of approval of Settlement, Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses | 35 days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 days prior to Settlement Hearing |
| Deadline for submitting objections | 21 days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 days prior to the Settlement Hearing |
| Settlement Hearing | As convenient for the |

---

[7] As Telestone has not appeared in this action and is no longer an active entity in United States of America, the Preliminary Approval Order contains language requiring its former transfer agent, Corporate Stock Transfer, Inc. to provide its security holder lists. Lead Counsel has been in contact with this entity and has been informed that it is willing to provide this information for a fee, even though Telestone has not granted them permission to do so, as long as there is a court order requiring it to do so.

| Event | Proposed Due Date |
|---|---|
| | Court's calendar, but no earlier than 100 days after the filing of this Motion |
| Deadline for submitting claim forms | Postmarked 120 days from Notice Date |

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement and enter the accompanying proposed Preliminary Approval Order.

Dated: February 24, 2017

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
By:_____/s/ *James E. Cecchi*_____
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

GLANCY PRONGAY & MURRAY LLP

By:_____/s/ *Robert V. Prongay*_____
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150

*Co-Lead Counsel for Lead Plaintiff Bin Qu*

21