James E. Cecchi
John M. Agnello
Donald A. Ecklund
CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150

*Attorneys for Lead Plaintiff Bin Qu*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAO SUN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DAQING HAN, XIAOLI YU, HONG LI, MING LI, LIAN ZHU, GUANGHUI CHENG, GUOBIN PAN, GUANGJUN LU, YUANPIN HE, MAZARS CPA LIMITED, MAZARS Scrl, WEISERMAZARS LLP, and TELESTONE TECHNOLOGIES CORPORATION,<br><br>Defendants. | Case No. 2:15-cv-00703-JMV-MF<br><br><br>**CO-LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.      CO-LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED ................................ 3

      A.     Co-Lead Counsel are Entitled to an Award of Attorneys' Fees from the
Common Fund Recovered for the Class ..................................................... 3

      B.     The *Gunter* and *Prudential* Factors Confirm the Reasonableness of the Fee
Request .......................................................................................................... 4

            1.     The Size of the Fund Created and the Number of Persons Benefitted
Support the Requested Fee ............................................................... 5

            2.     The Absence of Objections Supports the Fee Request ..................... 6

            3.     The Skill and Efficiency of the Attorneys Involved Support the Fee
Request .......................................................................................... 6

            4.     The Complexity and Duration of the Litigation ......................... 8

            5.     The Risk of Non-Payment .............................................................. 8

            6.     The Amount of Time Spent by Counsel Supports the Fee Request .......... 9

            7.     Awards in Similar Cases ................................................................ 10

            8.     The Limited Impact of the Government Investigations Supports the Fee
Request .......................................................................................... 12

      C.     A Lodestar Cross-Check Supports the Requested Fee ......................... 12

      D.     Co-Lead Counsel's Expenses Were Reasonably And Necessarily Incurred ........ 14

II.     LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS
AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4) ....................................... 15

CONCLUSION .......................................................................................................... 17

i

# **TABLE OF AUTHORITIES**

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ......................................................................... 2

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................... 4, 9

Boeing Co. v. Van Gemert,
  444 U.S. 472 (1980) ......................................................................................... 3

*Brown v. Esmor Correctional Servs., Inc.*,
  2005 WL 1917869 (D.N.J. Aug. 10, 2005) ................................................. 11

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) .................................................................. 11

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ........................................................................... 4

*Hall v. AT&T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) ........................................... *passim*

*Hensley v Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................ 5

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................. 15

*In re Am. Bus. Fin. Services Inc. Noteholders, Litig.*,
  2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) .............................................. 14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) .................................................. 15

*In re Aremisoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002) ................................................................. 6, 14

*In re AT&T Corp., Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006) .................................................................. *passim*

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ........................................................................ 13

ii

*In re Charter Commc'ns, Inc., Sec. Litig.*,
2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005)................................................ 7

*In re Corel Corp. Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) .................................................................. 7, 11

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........................................................ 7, 10

*In re General Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................... 11

*In re Genta Sec. Litig.*,
2008 WL 2229843 (D.N.J. May 28, 2008) ............................................................... 7

*In re Greenwich Pharm. Sec. Litig.*,
1995 WL 251293 (E.D. Pa. Apr. 26, 1995) ............................................................. 11

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................................. 9, 11, 14

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
2009 WL 2137224 (E.D. Pa. July 16, 2009) ........................................................... 13

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) ......................................................................... 13

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) ............................................................. 8, 11

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008)..................................................................................... 12

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
2000 WL 1622741 (E.D. Pa. Oct. 23, 2000)............................................................ 11

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013)....................................................... 6, 8, 16

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 1998)................................................................................. 4, 13

*In re Raviscent Techs., Inc. Sec. Litig.*,
2005 WL 906361 (E.D. Pa. Apr.18, 2005) ......................................................... 5, 11

iii

*In re Remeron Direct Purchaser Antitrust Litig.*,
    2005 WL 3008808 (D.N.J. Nov. 9, 2005) ........................................................ 10, 11

*In re Remeron End-Payor Antitrust Litig.*,
    2005 WL 2230314 (D.N.J. Sept. 13, 2005) ............................................................. 14

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) .................................................... 10, 13, 15

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) .................................................................... 4, 6, 13

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ...................................................................... 14, 15

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
    2012 WL 1964451 (D.N.J. May 31, 2012) ....................................................... 6, 8, 13

*In re SmithKline Beckman Corp. Sec. Litig.*,
    751 F. Supp. 525 (E.D. Pa. 1990) ........................................................................... 14

*In re Suprema Specialties, Inc. Sec. Litig.*,
    2008 WL 906254 (D.N.J. Mar. 31, 2008) ................................................................. 9

*Lazy Oil Co. v. Wotco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ...................................................................... 14

*Lenahan v. Sears, Roebuck and Co.*,
    2006 WL 2085282 (D.N.J. July 24, 2006) ............................................................... 11

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) .................................................................. 8

*Rowe v. E.I. DuPont de Nemours and Co.*,
    2011 WL 3837106 (D.N.J. Aug. 26, 2011) .......................................................... 9, 12

*Smith v. Dominion Bridge Corp.*,
    2007 WL 1101272 (E.D. Pa. April 11, 2007) ......................................................... 11

*Stoner v. CBA Information Servs.*,
    352 F. Supp. 2d 549 (E.D. Pa. 2005) ...................................................................... 11

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ...................................................................................... 4

iv

*Varljen v. H.J. Meyers & Co.*,
  2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ........................................................ 15

## STATUTES

15 U.S.C. §78u-4(a)(4)15 ........................................................................................ 15

15 U.S.C. § 77z- 1(a)(4) .......................................................................................... 15

Court-appointed Co-Lead Counsel, Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. and Glancy Prongay & Murray LLP ("Co-Lead Counsel") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees and reimbursement of expenses.[1]  Co-Lead Counsel request that the Court grant their motion for an award of attorneys' fees in the amount of 33-1/3% of the Settlement Fund.  The requested fee is less than Co-Lead Counsel's lodestar, the amount counsel would have received at market rates for their services, and  results in a fractional multiplier on counsel's time.  Co-Lead Counsel also seek reimbursement of: (i) $42,212.73 in litigation expenses that Co-Lead Counsel reasonably and necessarily incurred in prosecuting this action, and (ii) $20,000 in total costs and expenses (including lost wages) incurred by the Court-appointed Lead Plaintiff Bin Qu, directly related to his representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## INTRODUCTION[2]

The Settlement achieved in this litigation represents an excellent result for Lead Plaintiff and the Settlement Class, particularly when juxtaposed against the significant hurdles that Lead Plaintiff would have had to overcome in order to prevail in this complex securities fraud

---

[1] All capitalized terms that are not otherwise defined herein have the same meanings as set forth in the Stipulation of Settlement dated February 8, 2017 ("Stipulation") that was filed with the Court on February 24, 2017.  Dkt. No. 64-3.

[2] The Declaration of Donald A. Ecklund in Support of: (I) Lead Plaintiff's Motion for Final Approval of the Proposed Settlement, Class Certification, and the Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Ecklund Declaration" or "Ecklund Decl."), filed concurrently herewith, is an integral part of this submission.  For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Litigation; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation for the Settlement proceeds.  All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Ecklund Declaration.

litigation against the outside auditor of Telestone Technologies Corporation ("Telestone" or the "Company").  Specifically, in undertaking this litigation, Co-Lead Counsel faced numerous challenges to establishing liability for Mazars CPA's audit statements and countering their loss causation and damages arguments.  The risk of losing was very real and the chance that the alleged damages would be significantly reduced, or eliminated, was substantial.  These risks were greatly enhanced by the fact that Co-Lead Counsel would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard of the PSLRA.  Indeed, the PSLRA – as well as a host of post-PSLRA judicial decisions concerning falsity, scienter, loss causation, and damages – have made it significantly harder for investors to bring and successfully conclude securities class actions.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J.) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."). There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. Despite these risks, Co-Lead Counsel undertook this litigation on a fully contingent basis with no guarantee of ever being paid.

Co-Lead Counsel believe that an attorney fee award of 33-1/3%, which is less than Co-Lead Counsel's lodestar, properly reflects the many significant risks undertaken by Co-Lead Counsel, as well as the excellent result achieved. The $1.25 million recovery equals approximately 7.4% of the ***maximum*** potential damages for ***all*** defendants, not just the auditor defendant for which this settlement applies. The excellent result, along with the myriad risks inherent in this litigation and lack of a multiplier on a fully contingent representation, confirms the fairness of the requested fee.

2

The costs and expenses requested by Co-Lead Counsel are also reasonable and should be approved.   Approximately 35.0% of Co-Lead Counsel's total expenses were paid to Lead Plaintiff's experts and consultants, including damages and accounting experts, whose advice was critical and necessary to Lead Plaintiff defeating Mazars CPA's motion to dismiss and achieving the Settlement that they did.   Furthermore, approximately 21.7% of Co-Lead Counsel's total expenses are mediation costs related to the hiring of Jed Melnick, Esq. and his team, who successfully oversaw the mediation process that brought about the Settlement.   These expenses and the other expenses were necessarily incurred, and they are fair and reasonable.   Additionally, the Court should award Lead Plaintiff Bin Qu, a sophisticated investor who lost more than $2 million in his investments in Telestone securities, reimbursement costs and expenses (including lost wages) for his extremely active role in overseeing this action.   Accordingly, the Court should grant the full amount of costs and expenses requested.[3]

### ARGUMENT

I.   **CO-LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED**

A.   **Co-Lead Counsel are Entitled to an Award of Attorneys' Fees from the Common Fund Recovered for the Class**

The award of attorneys' fees in this class action is governed by the common fund doctrine.   The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."   *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79

---

[3] Although the deadline for submitting objections is February 13, 2018, there have been no objections to the maximum amount of attorneys' fees (33-1/3%) and expenses ($65,000) that could be sought.   If there are any objections, Co-Lead Counsel will address them in Lead Plaintiff's reply papers following the objection deadline on February 27, 2018.

393404.1 TELESTONE

(1980).[4]   Courts have traditionally employed two methods for calculating reasonable attorneys'

fees in securities class actions: the percentage-of-recovery method or the lodestar method, with

Courts generally favoring the percentage of-recovery method.   *See Blum v. Stenson*, 465 U.S.

886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a

percentage of the fund bestowed on the class"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d

Cir. 2011) (the percentage of recovery method "'is generally favored in common fund cases

because it allows courts to award fees from the fund 'in a manner that rewards counsel for

success and penalizes it for failure.'") (citation omitted).[5]   Co-Lead Counsel respectfully seek an

award of attorneys' fees in the amount of 33-1/3% of the Settlement Fund, or $416,666.67, and

for payment of expenses of $42,212.73 reasonably incurred in the course of pursuing the claims

against defendants.   As set forth below, Co-Lead Counsel's fee request is fair, reasonable and

adequate.

**B.     The *Gunter* and *Prudential* Factors Confirm the Reasonableness of the Fee Request**

In reviewing an attorneys' fees award in a class action settlement, the Third Circuit looks

at a number of factors known as the "Gunter factors" and the "Prudential factors."   *In re AT&T

Corp., Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006). The *Gunter* factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency of
> the attorneys involved; (4) the complexity and duration of the litigation; (5) the
> risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs'
> counsel; and (7) the awards in similar cases.

---

[4]  *See also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of percentage fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation") (citation omitted).

[5]  *See also In re AT&T*, 455 F.3d at 164; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998).

*Id*. at 165. The *Prudential* factors include:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement.

*Id*. (internal citations omitted).  Analysis of the relevant factors supports the requested award.[6]

### 1.   The Size of the Fund Created and the Number of Persons Benefitted Support the Requested Fee

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award.  *Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained").  As noted above, the result achieved—the creation of a settlement fund in the amount of $1,250,000—is an excellent result for the Settlement Class that will provide Settlement Class Members with an immediate cash recovery that was achieved despite many complexities and risks, while avoiding the substantial expense, delay, risk, and uncertainty of discovery, motion practice, trial, and appeal.  Furthermore, the Settlement represents a recovery of approximately 7.4% of the total ***maximum*** damages to the Settlement Class for claims against ***all*** defendants, which compares favorably to recoveries in similar complex class litigation.  *See, e.g.*, ¶¶35-36, Ex. 5 (Cornerstone Research article reporting that the typical recovery in securities class actions for the ten years from 2007 through 2016 was generally 2.2% of provable damages for cases in the Third Circuit).[7]  It is also

---

[6] In application, it is well-established that "courts may give some of these [*Gunter/Prudential*] factors less weight in evaluating a fee award." *In re AT&T*, 455 F.3d at 166.

[7] *See also In re Raviscent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *9 (E.D. Pa. Apr.18, 2005) ("As another court in this [Circuit] has noted, a study by Professor John C. Coffee, Jr., Adolf A. Berle Professor of Law at Columbia University Law School, determined that since 1995, class action settlements have typically recovered 'between 5.5% and 6.2% of the class members' estimated losses.'").

consistent with other auditor settlements. *See* ¶37, Ex. 6 (Academic article finding that the component of the settlement paid out by auditors averaged 9% since 1996). Accordingly, this factor supports approval of Co-Lead Counsel's fee request.

**2.     The Absence of Objections Supports the Fee Request**

The reaction of the Class to the requested fee is also relevant. Courts consider "the presence or absence of substantial objections by members of the class to the settlement and/or fees requested by counsel." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *9 (D.N.J. July 29, 2013). Although the date for objections has not yet passed, there have been no objections to Co-Lead Counsel's request for attorneys' fees or expenses. ¶31, Ex. 1 at ¶17; *see Rite Aid,* 396 F.3d at 305 ("[T]he absence of substantial objections by class members to the fee requests weigh[s] in favor of approving the fee request.").

**3.     The Skill and Efficiency of the Attorneys Involved Support the Fee Request**

The skill and efficiency of counsel is "'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010) (citation omitted). Indeed, courts in this District have found that "the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Aremisoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002).

Co-Lead Counsel are nationally recognized practitioners in the fields of securities class actions and complex litigation. *See* ¶¶39-40; *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *6 (D.N.J. May 31, 2012) (Cavanaugh, J.) ("*Schering-Plough ERISA*") (noting that the skill and efficiency of attorneys with substantial experience in class action

litigation, as demonstrated by their supporting documents, favored an award of attorneys' fees); *In re Genta Sec. Litig.*, 2008 WL 2229843, at *10 (D.N.J. May 28, 2008) ("the attorneys' expertise in securities litigation favors approving the requested award for attorneys' fees"). This expertise was necessary, given the complexity of the case and the many issues on which the parties do not agree, including: (i) whether Mazars CPA violated the securities laws; (ii) whether Mazars CPA acted with scienter; (iii) the method for determining whether the price of Telestone securities was artificially inflated during the Class Period; (iv) the amount (if any) of such inflation; and (v) the amount of damages (if any) that could be recovered at trial and Mazars CPA's proportional liability.

The quality of opposing counsel is also important in evaluating the quality of the work done by Co-Lead Counsel. *Hall*, 2010 WL 4053547, at *19 ("'The quality of opposing counsel is also important in evaluating the quality of counsel's work.'") (citation omitted); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007). Here, Co-Lead Counsel was opposed by skilled counsel from Norton Rose Fulbright, a global law firm that has earned its reputation for vigorous advocacy in the defense of complex civil cases such as this. In the face of this opposition, Co-Lead Counsel was able to develop their case and secure a significant recovery for the Class. *A fortiori*, this factor supports Co-Lead Counsel's fee request.[8]

---

[8] The fact that Co-Lead Counsel achieved this Settlement for the Class "in the face of formidable legal opposition further evidences the quality of their work." *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003); *see also In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 U.S. Dist. LEXIS 14772, at *54 (E.D. Mo. June 30, 2005) ("it is reasonable for Lead Counsel and the other plaintiffs' firms be as well paid as their adversaries who did not work on a contingency basis").

### 4.     The Complexity and Duration of the Litigation

"[S]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate," and this case is no different. *Par Pharm.*, 2013 WL 3930091, at *10. It is almost three years old, and involved application of the PSLRA, class action principles, and securities laws, as well a Chinese company, and extremely complicated accounting and auditing issues. For example, the case against the auditiors focused on Mazars CPA's application of Generally Accepted Accounting Principles and auditing regulations, topics that are inherently subjective and complicated. Co-Lead Counsel hired and worked extensively with an accounting expert to analyze and understand these complex concepts as part of the process of drafting the amended complaint and opposing the motion to dismiss. These were not simple tasks, and they were further complicated by the heightened pleading standard of the PSLRA, and the fact that Lead Plaintiff was suing an auditor who – unlike defendants in many other cases – did not appear to have a clear and substantial motive to commit securities fraud. *See In re AT&T*, 455 F.3d at 170 (noting that "the difficulty of proving actual knowledge under §10(b) of the Securities Exchange Act . . . weighed in favor of approval of the fee request."). Consequently, this factor strongly supports the requested award.

### 5.     The Risk of Non-Payment

This Court and others have consistently recognized that contingency fee risk is an important factor in determining a proper fee award. *See, e.g.*, *Schering-Plough ERISA*, 2012 WL 1964451, at *7 ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (Cavanaugh, J.) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL

4730185, at *8 (D.N.J. Dec. 4, 2009) (same); *In re Suprema Specialties, Inc. Sec. Litig.*, 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (same).

Here, Co-Lead Counsel undertook this action on an entirely contingent basis and prosecuted the claims with no guarantee of compensation or recovery of any litigation expenses. This is a heavy responsibility and involves substantial risk. Co-Lead Counsel was obligated to ensure that sufficient resources were dedicated to this prosecution, and that funds were available to pay for the considerable expenses. The risk of loss was extremely high, and was increased given that the company defendant was foreign, the documents were in Chinese, and the case against the outside auditors would require substantial work with experts. Co-Lead Counsel nevertheless undertook the representation. To date, Co-Lead Counsel has received no compensation for its services.[9] This factor plainly weighs in favor of approving Co-Lead Counsel's fee request. *See Rowe v. E.I. DuPont de Nemours and Co.*, 2011 WL 3837106, at *20-*21 (D.N.J. Aug. 26, 2011) (finding that where counsel diligently prosecuted class members' claims despite the risk that counsel's significant time and efforts could go uncompensated weighed in favor of accepting counsels' fee request); *In re AT&T*, 455 F.3d at 171.

### 6.    The Amount of Time Spent by Counsel Supports the Fee Request

The efforts undertaken by Co-Lead Counsel prior to reaching the Settlement with Mazars

---

[9] It bears noting that the amount of attorneys' fees being requested is consistent with those often agreed to in non-representative litigation, where the customary fee arrangement is in the range of 30% to 40% of the recovery. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Hall*, 2010 WL 4053547, at *21 ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class commercial litigation." (citation and internal quotations omitted))

393404.1 TELESTONE

CPA were substantial.[10]  Mazars CPA asserted aggressive defenses and repeatedly expressed its belief that Lead Plaintiff could not prevail on the claims alleged.  Nevertheless, Co-Lead Counsel were able to obtain an excellent recovery for the Class.  As described in detail in the Ecklund Declaration,  this recovery is a direct and proximate result of Co-Lead Counsel's willingness to expend considerable resources and committed substantial amounts of time and money to the research, investigation and prosecution of this action.  *See* ¶¶19, 32.  As a result of their extensive efforts, Co-Lead Counsel and Lead Plaintiff had an in-depth knowledge of the strengths and weaknesses of the claims that allowed them to engage in productive settlement negotiations with Mazars CPA.  Accordingly, this factor weighs in favor of the requested fee award.  *See Datatec*, 2007 WL 4225828, at *7 ("Although discovery has not taken place in this case, in light of the amount of time spent on this matter and the number of attorneys involved, the Court concludes that the sixth factor weighs slightly in favor of approval.").

### 7.      Awards in Similar Cases

With respect to the final factor, "the court must (1) compare the award requested with other awards in comparable settlements; and (2) ensure that the award is consistent with what the attorney would have received had the fee been negotiated on the open market."  *Hall*, 2010 WL 4053547, at *21.  As to the first prong of the inquiry, numerous courts within the Third Circuit, including the District of New Jersey, have awarded fees of 33 1/3% of the recovery, even in cases involving much larger settlement funds than the instant case.  *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third"); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *12 (D.N.J. Nov.

---

[10] Co-Lead Counsel's attorneys worked on this matter for a total of 1032.35 hours. ¶¶13, 54.

9, 2005) (one-third of $75 million); *Merck ERISA*, 2010 WL 547613, at *11 (awarding 33⅓%

and noting that "awards in similar common fund cases appear analogous" and award was

"consistent with other similar cases"); *Brown v. Esmor Correctional Servs., Inc.*, 2005 WL

1917869, at *14 (D.N.J. Aug. 10, 2005) (one-third of $2.5 million); *Cullen v. Whitman Med.

Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (awarding one-third of $7.3 million and stating "the

award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of

recent decisions within this district"); *In re Corel*, 293 F. Supp. 2d at 495-98 (awarding one-third

of $7 million settlement fund, plus expenses); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL

906361, at *10 (E.D. Pa. April 18, 2005) (find award of one-third of $7 million reasonable after

cross-checking percentage of recovery to lodestar).[11]

"The requested fee of 33 1/3 % is also consistent with a privately negotiated contingent

fee in the marketplace."  *Hall* 2010 WL 4053547, at *21.  "Attorneys regularly contract for

contingent fees between 30% and 40% with their clients in non-class, commercial litigation."

*Remeron Direct Purchaser*, 2005 WL 3008808, at *16; *see also In re Orthopedic Bone Screw

Prods. Liab. Litig.*, 2000 WL 1622741, at *7 (E.D. Pa. Oct. 23, 2000) (noting that "plaintiffs'

counsel in private contingency fee cases regularly negotiate agreements providing for thirty to

---

[11]   *See also In re Interpool, Inc. Sec. Litig.*, No. 04-321 (SRC), slip op. at 2 (D.N.J. Aug. 29,
2006) (awarding 33-1/3% of $1 million fund); *Stoner v. CBA Information Servs.*, 352 F. Supp. 2d
549, 553 (E.D. Pa. 2005) (33% of $772,500); *In re Automotive Refinishing Paint Antitrust Litig.*,
Case No. 2:10-md-01426-RBS, ECF No. 136 (E.D. Pa. Oct 13, 2004) (32% of $66.75 million);
*In re Flat Glass Antitrust Litig.*, MDL No. 1200 (W.D. Pa. May 28, 2003) (33%); *In re General
Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) (one-third of $48 million); *In re
Greenwich Pharm. Sec. Litig.*, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) (one-third of $4.375
million); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *10 (E.D. Pa. April 11, 2007)
(granting fee of "33.33%" of $750,000); *Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282,
at *21 (D.N.J. July 24, 2006) (awarding fee of 30% of $15 million fund and noting that
"[a]ttorneys' fees of 30 percent are common in this Circuit"); *Ikon*, 194 F.R.D. 166, 197
(awarding fee of 30% of $111 million after only one and a half years of litigation).

forty percent of any recovery."); *Rowe*, 2011 WL 3837106, at *22 (awarding 33⅓% as "consistent with a privately negotiated contingent fee in the marketplace"). Thus, the requested fee award is strongly supported by both subparts of this final *Gunter* factor.

Finally, another factor favoring the reasonableness of Co-Lead Counsel's 33-1/3% fee request is that it was approved by the Lead Plaintiff, a sophisticated investor of the kind charged by the Court and the PSLRA with responsibility for monitoring Co-Lead Counsel. *See* Ex. 4 at ¶4; *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("We expect, however, that district courts will give serious consideration to negotiated fees because PSLRA Lead Plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable.").

###### 8.    The Limited Impact of the Government Investigations Supports the Fee Request

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement actions concerning the alleged wrongdoing, because this can indicate whether counsel should be given full credit for obtaining the value of the settlement fund for the Class. Here, outside of the Securities and Exchange Commission's correspondence with the Company regarding its periodic filings, there was no formal governmental investigations. There were no convictions, no guilty pleas, no admissions, and no restatement filed, which could create additional challenges to proving the alleged claims, as a jury could have been persuaded that the lack of charges or convictions and other significant recoveries meant no fraud was perpetrated. Thus, the benefits accruing to the Settlement Class derive soley from the efforts of Co-Lead Counsel.

##### C.    A Lodestar Cross-Check Supports the Requested Fee

Because application of the *Gunter/Prudential* factors demonstrate that the requested fee

is not "clearly excessive," a lodestar cross-check is not required. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 221 (3d Cir. 2001). However, even if the cross-check is applied, the requested fee is still fair and reasonable.

In "cross-checking" the percentage of recovery award against the lodestar, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail "mathematical precision" or "bean counting." *In re AT&T*, 455 F.3d at 169, n.6 (*quoting Rite Aid*, 396 F.3d at 306). Accordingly, "the district court may rely on summaries submitted by counsel and need not review billing records." *Id.* at 306-07.

Here, utilizing the lodestar cross-check confirms the reasonableness of Co-Lead Counsel's requested fees. Co-Lead Counsel have collectively spent 1032.35 hours in connection with the litigation, resulting in a total lodestar of $567,176.25.[12] The fee request represents a fractional multiplier of 0.735, which is inherently reasonable as it is below the frequently-awarded range of 1 to 4.[13] *See Prudential*, 148 F.3d at 341; *see also In re AT&T*, 455 F.3d at 172 (approving a 1.28 multiplier and noting the Third Circuit's prior "approv[al] of a lodestar multiplier of 2.99 in . . . a case [that] 'was neither legally nor factually complex.'") (citation omitted); *Schering-Plough ERISA*, 2012 WL 1964451, at * 8 (awarding 1.6 multiplier); *Rite Aid*, 146 F. Supp. 2d at 736 and 362 F. Supp. 2d at 589 (awarding multiplier of between 4.5 and 8.5 on 2001 settlement and multiplier of 6.96 on the 2005 settlement); *In re Lucent Techs., Inc. Sec.*

---

[12] The lodestar and expense declarations of Casey E. Sadler and James E. Cecchi are attached to the Ecklund Decl. as Exhibits 2 and 3.

[13] A fractional multiplier is a strong indicator of the fairness of a requested fee because it demonstrates that counsel are requesting less than the market rate for their time litigating the matter. *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 WL 2137224, at *17 (E.D. Pa. July 16, 2009) (finding fractional multiplier "confirms the reasonableness of the fee award in this case."); *Hall v. AT&T*, 2010 WL 4053547, at *22 ("A multiplier of less than one, as is the case here, is therefore quite reasonable for a lodestar.").

*Litig.*, 327 F. Supp. 2d 426, 443 (D.N.J. 2004) (awarding 2.13 multiplier in $517 settlement); *AremisSoft*, 210 F.R.D. at 135 (awarding 4.3 multiplier); *Ikon*, 194 F.R.D. at 195 (awarding 2.7 multiplier and noting that it was "well within the range of those awarded in similar cases"). Accordingly, the lodestar cross-check further supports Co-Lead Counsel's fee request here.

### D.      Co-Lead Counsel's Expenses Were Reasonably And Necessarily Incurred

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.  *See Ikon*, 194 F.R.D. at 192; *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 525 (E.D. Pa. 1990).   To be reimbursable, the expenses must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action."  *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 323 (W.D. Pa. 1997).

Here, Co-Lead Counsel expended $42,212.73 in out-of-pocket costs, which are divided into categories and itemized in the declarations submitted by each individual firm.  *See* ¶55; Exs. 2 & 3.  These expenses are well-documented, based on the books and records maintained by each firm, and reflect the costs of prosecuting this litigation.  They include, among other things, fees for experts; mediator fees; online factual and legal research costs; travel and lodging expenses; copying; mail; and telephone.  Reimbursement of similar expenses is routinely permitted.  *See In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) (approving reimbursement of "costs expended for purposes of prosecuting this litigation, including substantial fees for experts; … travel and lodging expenses; copying costs; and the costs of deposition transcripts"); *In re Am. Bus. Fin. Services Inc. Noteholders Litig.*, 2008 WL 4974782, at *18 (E.D. Pa. Nov. 21, 2008) (approving reimbursement of expenses for "duplication costs, online legal research, travel, meals, experts, telephone, fax services,

14

transcripts, postage, messenger, mediator, filing and court fees, service fees, [and] transportation" based on declarations of counsel); *Safety Components*, 166 F. Supp. 2d at 108.

Additionally, to date, there have been no objections to the expense application as set forth in the Notice. Ex. 1 at ¶17. The requested expenses should, therefore, be awarded. *See Rite Aid*, 146 F. Supp. 2d at 736 ("plaintiffs seek reimbursement of expenses . . . which they have detailed in their submissions to us. These out-of-pocket expenses . . . are compensable . . . they are also unobjected to and, in our judgment, reasonable").

## II.   LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)

The PSLRA authorizes the Court to allow reimbursement to a representative plaintiff for their "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 77z- 1(a)(4). Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000). Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012).

As detailed in the Ecklund Declaration, Lead Plaintiff, who lost more than two million dollars in Telestone stock, expended substantial time and effort in representing the best interests of the Class, including, among others: regularly communicating with Co-Lead Counsel by email and telephone regarding the posture and progress of the case; reviewing pleadings filed in this

action; collecting and producing documents regarding his purchases of Telestone securities, as well as other relevant documents; working with Co-Lead Counsel on locating individuals, including certain of the Individual Defendants, in the People's Republic of China; assisting in both the service of certain individual defendants and locating relevant witnesses; translating documents written in Chinese to English for the benefit of the case; and monitoring the progress of the settlement negotiations.  *See* ¶56; Ex. 4.

Lead Plaintiff spent approximately 60 hours in performing the aforementioned tasks for the benefit of the Class, and he seeks to be reimbursed $20,000 for his considerable time and effort, including lost wages.  Ex. 4.  Given his efforts on behalf of the Class, such an award is eminently reasonable.  *See Par Pharm.*, 2013 WL 3930091 (awarding Lead Plaintiff $18,000); *In re Virgin Mobile USA IPO Litig.*, No. 07-cv-05619, slip op. at 7 (D.N.J. Dec. 8, 2010) (awarding co-lead plaintiffs $29,370, $29,205, $30,000, and $25,245 respectively, for a combined total of $113,820) (Ex. 7).[14]  Moreover, the Notice advised Settlement Class Members that Lead Plaintiff may seek reimbursement from the Settlement, and no Settlement Class Member has objected to the Lead Plaintiff being reimbursed as of the date of this filing.[15]  This further supports reimbursing Lead Plaintiff for his time and lost wages prosecuting this action.

---

[14] *See also In re Transkaryotic Therapies, Inc. Sec. Litig.*, No. 03-10165-RWZ (D. Mass. June 3, 2008) (awarding two class representatives over $20,000 each as reimbursement for their time and expenses); *In re Lernout & Hauspie Sec. Litig.*, No. 00-cv-11589 (D. Mass. May 13, 2005) (awarding the two lead plaintiffs $63,840, collectively for compensation of time and expenses).

[15] Moreover, the Notice stated that Co-Lead Counsel and Lead Plaintiff may seek reimbursement of expenses not to exceed $65,000.  No Settlement Class Member objected to this potential reimbursement. Here, Co-Lead Counsel and Lead Plaintiff are seeking reimbursement of just $62,212.73, almost $3,000 less than was listed in the Notice.

## CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully request that the Court grant their fee and expense application.

Dated:   January 30, 2018                          CARELLA, BYRNE, CECCHI,
                                                   OLSTEIN, BRODY & AGNELLO, P.C.


                                                   By:  *s/ James E. Cecchi*
                                                   James E. Cecchi
                                                   John M. Agnello
                                                   Donald A. Ecklund
                                                   5 Becker Farm Road
                                                   Roseland, New Jersey 07068
                                                   (973) 994-1700

                                                   Lionel Z. Glancy
                                                   Robert V. Prongay
                                                   Casey E. Sadler
                                                   GLANCY PRONGAY & MURRAY LLP
                                                   1925 Century Park East, Suite 2100
                                                   Los Angeles, California 90067
                                                   (310) 201-9150

                                                   *Attorneys for Lead Plaintiff Bin Qu and Co-
                                                   Lead Counsel for the Class*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On January 30, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the District of New Jersey, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 30, 2018.

*s/ James E. Cecchi*
James E. Cecchi